FILED

1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:  (310) 312-2000
5  Facsimile:  (310) 312-3100

6  GREGORY O. OLANIRAN (*pro hac vice pending*)
   LUCY HOLMES PLOVNICK (*pro hac vice pending*)
7  STINSON MORRISON HECKER LLP
   1150 18th Street NW, Suite 800
8  Washington, D.C. 20036-3816
   Telephone:  (202) 785-9100
9  Facsimile:  (202) 785-9163

10 Attorneys for Defendant
   MOTION PICTURE ASSOCIATION OF
11 AMERICA, INC.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 WORLDWIDE SUBSIDY GROUP,            CASE NO.
   LLC, a Texas Limited Liability      CV08-03701  FMC  (MANx)
16 Company, dba INDEPENDENT
   PRODUCERS GROUP; WORLDWIDE          **NOTICE OF REMOVAL OF
17 SUBSIDY GROUP, LLC, a California     ACTION**
   Limited Liability Company, formerly
18 named ARTIST COLLECTIONS
   GROUP, LLC,
19
20              Plaintiffs,

21         v.

22 MOTION PICTURE ASSOCIATION
   OF AMERICA, INC., a New York
23 Corporation doing business in
   California; and DOES 1 through 10,
24 inclusive,

25              Defendants.

26

27

28

Mitchell
Silberberg &
Knupp LLP

358670.1

2008 JUN -6 AM 11: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1    PLEASE TAKE NOTICE that Defendant MOTION PICTURE

2    ASSOCIATION OF AMERICA, INC. ("Defendant") hereby removes to this Court

3    the state court action described below.

4        1.    On April 29, 2008, Plaintiffs commenced an action in the Superior

5    Court of the State of California for the County of Los Angeles, entitled,

6    "Worldwide Subsidy Group, LLC, dba Independent Producers Group, et al.,

7    Plaintiffs, v. Motion Picture Association of America, Inc.; and Does 1 through 10,

8    inclusive, Defendants" as Case No. BC389895 ("State Court Action").  A true and

9    correct copy of the Complaint is attached as Exhibit 1.  A true and correct copy of

10   the Summons is attached as Exhibit 2.

11       2.    Defendant was served with a copy of the Complaint by personal

12   service on May 8, 2008.  Defendant has not filed an Answer or any other

13   responsive document.

14       3.    To Defendant's knowledge, no other pleadings or documents have

15   been filed in the State Court Action.  Accordingly, Exhibits 1 and 2 attached hereto

16   constitute all of the process, pleadings, and orders received by Defendant in the

17   State Court Action.  See 28 U.S.C. §1446(a).

18       4.    This Notice of Removal is filed within thirty days of the date that the

19   Defendant was first served with process.  Accordingly, Defendant's removal is

20   timely pursuant to 28 U.S.C. §1446(b).  Murphy Bros., Inc. v. Michetti Pipe

21   Stringing Co., 526 U.S. 344, 349, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999).

22       5.    The Complaint is a civil action of which this Court has original

23   jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), and is one

24   which may be removed to this Court pursuant to 28 U.S.C. §1441(b).  The Los

25   Angeles County Superior Court is located within the Central District of California.

26   Accordingly, removal to the Central District of California Central Division is

27   proper.  See 28 U.S.C. §1441(a).

Mitchell
Silberberg &  28
Knupp LLP

358670.1

DB04/762224.0063/458563.3

6.      The Complaint purports to allege claims for a judicial declaration that a three-party settlement agreement involving Plaintiffs, Defendant, and the United States Librarian of Congress ("Librarian") is void, and also for rescission of a portion of the agreement.  See Exh. 1, Compl. ¶¶ 21-29 (the two part, three-party settlement agreement is hereinafter referred to as the "Contract").  Part 1 of the Contract is between Plaintiffs and Defendant.  Part 2 of the Contract is between Plaintiffs, Defendant, and the Librarian.  Although Plaintiffs make reference to the Contract throughout the Complaint, see Exh. 1, Compl. ¶¶ 1-4, 12-16, 21-29, and attached a letter to the Complaint that discusses the Contract and all three parties thereto, Exh. 1, Compl. Exh. D at 1-2, Plaintiffs failed to identify the Librarian in the Complaint as a party to the Contract.  Defendants hereby attach a copy of the Contract hereto as Exhibit 3, which Plaintiffs also failed to attach to the Complaint.[1]

6.1     Defendant is a trade association that represents the interests of motion picture, home video, and television industries domestically and worldwide.  More pertinently, Defendant represents the interests of producers and distributors of syndicated series, specials, and movies broadcast on television stations which are entitled to receive compulsory license royalties paid by cable operators and satellite carriers and collected by the United States Copyright Office ("Office") pursuant to 17 U.S.C. §§ 111 and 119 ("Royalties").  Plaintiffs are limited liability corporations organized pursuant to the laws of California and Texas, representing the interests of entities asserting claims to a portion of the Royalties.

6.2     The United States Library of Congress ("Library"), headed by the Librarian, is an agency of the legislative branch of the United States government.  The Office is a department within the Library.  At all times relevant to this case, administering the Royalties scheme, including authorizing distribution of the

---

[1] For confidentiality purposes, Defendant has redacted the amount paid to Plaintiffs under the Contract.

1    Royalties, fell within the jurisdiction of the Office. See 17 U.S.C. § 801 (1995).

2    Pursuant to the statutory scheme in effect during the relevant period, when parties

3    asserting a claim to the compulsory license royalty fund for a given year were

4    unable to reach an agreement regarding the distribution of the royalty funds, the

5    Office convened a Copyright Royalty Arbitration Panel ("CARP") to resolve the

6    dispute. See id.; see also 17 U.S.C. § 802(c) (1995).  Upon petition by one of the

7    parties to the distribution proceedings, the CARP's decision was subject to review

8    by the Librarian, who thereafter issued the final agency determination as to the

9    royalty distribution.  17 U.S.C. § 802(f) (1995).  Exclusive jurisdiction over any

10   appeal of the Librarian's decision was vested in the United States Court of Appeals

11   for the District of Columbia Circuit.  17 U.S.C. § 802(g) (1995).[2]

12        6.3    On November 1, 2000, the Office initiated a CARP proceeding to

13   arbitrate a dispute between the Plaintiffs and the Defendant regarding the

14   distribution of cable royalties collected for the 1997 royalty year. See 65 Fed. Reg.

15   65335 (2000).  The CARP's initial findings, dated April 16, 2001, were rejected by

16   the Librarian on June 5, 2001.  See 66 Fed. Reg. 66433, 66434 (2001).  The CARP

17   issued revised findings on June 20, 2001, which the Librarian again rejected.  The

18   Librarian then remanded the proceeding for consideration by a new CARP in a

19   final order dated December 26, 2001 ("Agency Determination"). See 66 Fed. Reg.

20   at 66434. Both Plaintiffs and Defendant appealed the Agency Determination to the

21   District of Columbia Circuit Court of Appeals. See Exh. 1, Compl. at ¶ 3, Compl.

22   Exh. A at 1, Compl. Exh. D at 1.  The Librarian was named as the Respondent in

23   both appellate cases.

24

_____

25   [2] Pursuant to the Copyright Royalty Distribution and Reform Act of 2004

26   ("CRDRA"), which was enacted on November 30, 2004, See P. L. 108-419
(Nov. 30, 2004), authority to order distribution of the Royalties is currently vested

27   in the Copyright Royalty Judges, a newly-created independent entity within the

28   Library. See 17 U.S.C. § 801 (2004).

    3

1      6.4    On March 31, 2004, following court-directed mediation, Plaintiffs,

2  Defendant, and the Librarian executed the Contract, in two parts, settling not only

3  the pending appellate cases, but also resolving all disputes between the parties as to

4  the 1997, 1998, and 1999 cable and satellite royalty funds.[3] See Exh. 3.  The

5  Complaint seeks a declaratory judgment that the Contract is void, and inexplicably

6  seeks to rescind only Part 2 of the Contract.  Exh. 1, Compl. at ¶¶ 21-29.

7      7.    The United States Supreme Court has held that certain disputes

8  involving "uniquely federal interests" are so important to the federal government

9  that "federal common law" related to those areas will supplant state law either

10  partially or entirely.  Boyle v. United Technologies Corp., 487 U.S. 500, 504, 108

11  S. Ct. 2510, 101 L. Ed. 2d 442 (1988).  In such disputes federal common law

12  replaces state law regardless of whether Congress has shown any intent to preempt

13  the area.  Id.   When a cause of action arises under federal common law, federal

14  question jurisdiction is appropriate under 28 U.S.C. § 1331.  See Arizona

15  Oddfellow-Rebekah Housing, Inc. v. U.S. Dept. of Housing and Urban

16  Development, 125 F.3d 771, 774 n.4 (9th Cir. 1997); see also Patrickson v. Dole

17  Food Company, 251 F.3d 795, 800 (9th Cir. 2001) (citing Illinois v. City of

18  Milwaukee, 406 U.S. 91, 100, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972)).

19      7.1    Courts utilize a two-part test for determining the applicability of

20  federal common law to a given case.  First, the matter must involve a uniquely

21  federal interest.  Boyle, 487 U.S. at 507.  Determination of whether a significant

22  federal interest exists in a dispute requires the court to ascertain whether the

23  dispute "'touches the rights and duties of the United States.'"  Id. at 506 (quoting

24  Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 33, 77 S. Ct.

25

---

26  [3] An agreement to settle a legal dispute is a contract.  United States v. ITT
Continental Banking Co., 420 U.S. 223, 238, 95 S. Ct. 926, 43 L. Ed. 2d 148

27  (1975).

28

1   119, 1 L. Ed. 2d 93 (1956)).  Second, a "significant conflict" must exist between an

2   identifiable federal policy or interest and the effect of state law.  Boyle, 487 U.S. at

3   507; see also Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 693,

4   126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006).  As discussed in detail below, both

5   Boyle factors are established in the instant matter, and afford subject matter

6   jurisdiction over this matter in this Court pursuant to 28 U.S.C. § 1331.

7         7.2    Because uniquely federal interests are implicated when the

8   government is a party to a contract, federal common law governs the contract's

9   interpretation.  Boyle, 487 U.S. at 504 ("The obligations and rights of the United

10  States under its contracts are governed exclusively by federal law."); see also

11  Clearfield Trust Co. v. United States, 318 U.S. 363, 366-67, 63 S. Ct. 573, 87

12  L.Ed. 838 (1943); Saavedra v. Donovan, 700 F.2d 496, 498 (9th Cir. 1983); Wright

13  v. Foreign Service Grievance Board, 503 F.Supp.2d 163, 173 (D.D.C. 2007).  Even

14  when a dispute over a government contract involves private parties, federal

15  common law still displaces state law if the litigation directly affects a federal

16  interest.  Id. at 507; see also Almond v. Capital Properties, Inc., 212 F.3d 20, 23-24

17  (1st Cir. 2000) (citing Price v. Pierce, 823 F.2d 1114, 1119-20 (7th Cir. 1987), cert.

18  denied, 485 U.S. 960, 108 S. Ct. 1222, 99 L.Ed. 2d 422 (1988)).

19        7.3    Notwithstanding Plaintiffs' failure to name the Librarian as a party in

20  the Complaint, the Librarian is a party to the Contract.  Therefore, uniquely federal

21  interests are implicated.  Indeed, the Librarian's rights and obligations – including

22  all actions taken by the Librarian pursuant to and in reliance upon the Contract –

23  are directly affected by the two causes of action in the Complaint.

24        7.4    First, the instant action directly affects the Librarian's interest in

25  maintaining the resolution of the two appellate cases against him that were

26  dismissed pursuant to the Contract.  The Contract required Plaintiffs and

27  Defendant to dismiss their respective appellate cases that were pending against the

28  Librarian in the District of Columbia Circuit Court of Appeals.  See Exh. 1,

Mitchell
Silberberg &
Knupp LLP

1858670.1

1    Compl. at ¶ 3; Exh. 3 at Part 2, p. 2 ¶ 3.  If the Contract is deemed void or

2    rescinded, the Librarian will be directly affected because Defendant (and perhaps

3    Plaintiffs) could seek to reinstate the appellate cases against the Librarian.

4        7.5    Second, this action directly affects the action taken by the Librarian to

5    vacate the Agency Determination and to terminate the royalty distribution

6    proceeding that gave rise to that Agency Determination.  Exh. 3 at Part 2, p. 2 ¶ 4

7    and Appendix A.  In compliance with the Contract, on April 2, 2004, the Librarian

8    entered an order vacating the Agency Determination terminating the proceeding

9    that gave rise to the appellate cases.  See Notice, 69 Fed. Reg. 2381, 23822 (2004).

10   Further, in reliance on the terminated proceeding, the Librarian distributed all cable

11   royalties held in reserve for 1997.  See id.  If the Contract is deemed void or

12   rescinded, the Librarian has an interest in addressing the status of its April 2, 2004

13   order.  Moreover, the Librarian has an interest in addressing the legality of full

14   distribution of the 1997 cable royalties.

15       7.6    Third, this action raises the question of which department within the

16   Library would have jurisdiction over a new 1997 royalty distribution proceeding if

17   the appellate cases were unsuccessful and the Agency Determination reinstated).

18   As noted above, see ¶ 6.2, with the enactment of the CRDRA in 2004, Congress

19   substantially modified the compulsory license statutory scheme that was in place at

20   the time the Contract was negotiated.  Following the enactment of the CRDRA, all

21   cable and satellite compulsory license distribution proceedings must be

22   commenced before the Copyright Royalty Judges.  See 17 U.S.C. § 801 (2004).

23   The CRDRA also contains transitional provisions which require the Librarian to

24   retain jurisdiction over any cable or satellite distribution proceeding that

25   commenced prior to the effective date of the CRDRA, and allow any appellate

26   proceeding commenced prior to its effective date to continue until such matters can

27   be terminated or resolved.  See P. L. 108-419, Sec. 6(b) (Nov. 30, 2004).  On

28   August 10, 2007, the Librarian announced the end of the CRDRA transitional

1   period by terminating all outstanding cable and satellite distribution proceedings
2   and announcing that jurisdiction over any undistributed royalties would now vest
3   in the Copyright Royalty Judges.  See 72 Fed. Reg. 45071, 45071 (2007).  Thus,
4   pursuant to the intent of the CRDRA, it would appear the Librarian has
5   relinquished its jurisdiction over cable and satellite royalty distribution
6   proceedings.

7        7.7    However, each of the copyright royalty distribution proceedings
8   referenced in the Contract (i.e., proceedings to resolve the distribution of the 1997,
9   1998, and 1999 cable and satellite royalty funds) commenced prior to the effective
10  date of the CRDRA.  Moreover, the appellate cases against the Librarian that were
11  settled in the Contract also commenced prior to the CRDRA, and were seeking
12  review of the Agency Determination under the pre-CRDRA statutory scheme.  If
13  the Contract is void or is rescinded, the Librarian will be forced to not only defend
14  the Agency Determination in two pre-CRDRA appellate cases but also, depending
15  on the outcome of those cases, exercise jurisdiction over a new 1997 cable royalty
16  distribution proceeding brought under the pre-CRDRA statutory scheme.  If there
17  has to be a royalty distribution proceeding, there is a jurisdictional question as to
18  whether the proceeding should be conducted by the Librarian through the Office,
19  which oversaw the initial royalty distribution proceeding, or the Copyright Royalty
20  Judges, who are currently authorized to do so under the CRDRA.  The Librarian
21  has an interest in determining the internal jurisdictional issues that would result
22  from having to administer a royalty distribution proceeding.

23       7.8    Consequently, the possible reinstatement of the appellate cases, the
24  status of the Librarian's April 2, 2004 order vacating the Agency Determination,
25  and internal jurisdictional issues within the Library constitute unique federal
26  interests.

27       8.     In addition to the clear implication of federal interests, a significant
28  conflict exists in this matter between federal interests and the effect of state law.

Mitchell
Silberberg &
Knupp LLP

358670.1

1   See Boyle, 487 U.S. at 507.  Plaintiffs seek to void or rescind a settlement

2   agreement with a federal agency pursuant to state law in a state forum.  Exh. 1,

3   Compl. at ¶¶ 21-29.  As the United States Supreme Court has recognized,

4   "dealings which may be 'ordinary' or 'local' as between private citizens raise

5   serious questions of national sovereignty when…transactions undertaken by the

6   Federal Government are involved."  See United States v. Little Lake Misere Land

7   Co., Inc., 412 U.S. 580, 592, 93 S. Ct. 2389, 37 L. Ed. 2d 187 (1973).  In such

8   cases, state law must give way to federal law.  See id.  Moreover, as Boyle

9   recognized, the mere possibility of a conflict and any attendant damage to federal

10  interests is sufficient to allow federal common law to displace state law.  Boyle,

11  487 U.S. at 507-08.  Here, because the Librarian is a party to the Contract,

12  significant federal interests are implicated to require the displacement of state law

13  in favor of federal common law.

14      9.      Because federal common law governs the Contract that Plaintiffs seek

15  to rescind in its Complaint, Plaintiffs' cause of action arises under federal common

16  law.  Therefore, jurisdiction is appropriate in this Court under 28 U.S.C. § 1331.

17  See Arizona Oddfellow-Rebekah Housing, Inc. v. U.S. Dept. of Housing and

18  Urban Development, 125 F.3d 771, 774 n.4 (9th Cir. 1997); see also Patrickson v.

19  Dole Food Company, 251 F.3d 795, 800 (9th Cir. 2001) (citing Illinois v. City of

20  Milwaukee, 406 U.S. 91, 100, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972)).

21      10.     Plaintiffs cannot escape the preemption of federal common law by the

22  "artful pleading" of state law contract claims.  See Rivet v. Regions Bank of

23  Louisiana, 522 U.S. 470, 474, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998).  This is

24  true even though the Complaint omits reference to the fact that the Librarian is a

25  party to the Contract and purports to base claims only on state law.  Id.; see Laws

26  v. Calmat, 852 F.2d 430, 432 (9th Cir. 1988), overruled in part Cramer v. Consol.

27  Freightways, 255 F.3d 683 (9th Cir. 2001) (the "artful pleading" doctrine requires

28  re-characterizing the alleged state law claims as arising under federal law); see

Mitchell
Silberberg &
Knupp LLP

1858670.1

1    generally <u>Schroeder v. Trans World Airlines, Inc.</u>, 702 F.2d 189, 191 (9th Cir.

2    1983) ("Artful pleading by the Plaintiff will not be allowed to conceal the true

3    nature of a complaint," when a plaintiff has attempted to avoid a federal claim by

4    relying solely on state law in the complaint).

5          11.    This Court need not and should not, at this time, determine the

6    underlying merits of Plaintiffs' claims.  This Court need and should determine only

7    that resolving these claims requires an interpretation of a federal government

8    contract, and thus arise under federal common law.  Such a determination suffices

9    to establish subject matter jurisdiction under 28 U.S.C. § 1331.  <u>See</u> <u>Arizona</u>

10   <u>Oddfellow-Rebekah Housing, Inc.</u>, <u>supra</u>, 125 F.3d at 774, n.4.

11         12.    Should the Court determine that it has subject matter jurisdiction over

12   only one count of the Complaint, Plaintiffs' other cause of action is also

13   removable.  The two claims in the Complaint arise out of the same common

14   nucleus of operative facts, and thus if one claim is preempted, both claims are

15   removable pursuant to 28 U.S.C. § 1367.  Moreover, considerations of judicial

16   economy, convenience and fairness to the litigants require that all of the claims

17   alleged in the Complaint be tried in one forum.  <u>See</u> <u>United Mine Workers v.</u>

18   <u>Gibbs</u>, 383 U.S. 715, 725-26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (pendent

19   jurisdiction exists if the state and federal claims "derive from a common nucleus of

20   operative facts" or are such that a plaintiff "would ordinarily be expected to try

21   them all in one judicial proceeding").

22         13.    Written notice of the filing of this Notice of Removal and of the

23   removal of the State Court Action is being delivered to all parties through their

24   counsel of record.  A copy of this Notice of Removal will be filed promptly with

25   the Clerk of the Superior Court, County of Los Angeles, California.

26         14.    The undersigned has read this Notice of Removal, and, to the best of

27   the undersigned's knowledge, information and belief, formed after reasonable

28   inquiry, it is well-grounded in fact, is warranted by existing law, and is not

Mitchell
Silberberg &
Knupp LLP

858670.1

1  interposed for any improper purpose, such as to harass, to cause unnecessary delay,

2  or needlessly to increase the cost of litigation.

3       Therefore, Defendant hereby removes the State Court Action from the

4  Superior Court of the State of California for the County of Los Angeles to this

5  Court.

6

7  DATED:  June 6, 2008                    GREGORY O. OLANIRAN
                                           LUCY HOLMES PLOVNICK
8                                          STINSON MORRISON HECKER LLP

9
                                           KARIN G. PAGNANELLI
10                                         MARC E. MAYER
                                           MITCHELL SILBERBERG & KNUPP LLP
11

12                                         By: _____

13                                             MARC E. MAYER
                                               Attorneys for Defendant
14                                             MOTION PICTURE ASSOCIATION
                                               OF AMERICA, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

D-78
William F. Fahey

ORIGINAL

1  PICK & BOYDSTON, LLP
   Brian D. Boydston (State Bar No. 155614)
2  1000 Wilshire Boulevard, Suite 600
   Los Angeles, CA 90017
3  (213) 624-1996
   (213)624-9073 facsimile
4
   Attorneys for Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited
5  Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY
   GROUP, LLC
6
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9            FOR COUNTY OF LOS ANGELES, CENTRAL DISTRICT
10
11
   WORLDWIDE SUBSIDY GROUP, LLC a )   CASE NO.
12 Texas Limited Liability        )               BC389895
   Company, dba INDEPENDENT       )   COMPLAINT FOR DECLARATORY
13 PRODUCERS GROUP, WORLDWIDE     )   RELIEF AND RESCISSION
   SUBSIDY GROUP, LLC a California )
14 Limited Liability Company,     )
   formerly named ARTIST          )
15 COLLECTIONS GROUP, LLC,        )
                                  )
16         Plaintiffs,            )
                                  )
17     v.                         )
                                  )
18 MOTION PICTURE ASSOCIATION OF  )
   AMERICA, INC., a New York      )
19 Corporation doing business in  )
   California, and DOES 1 through )
20 10, inclusive,                 )
                                  )
21         Defendants.            )
                                  )
22

23       Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability
24 Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC
25 a California Limited Liability Company, formerly named ARTIST
26 COLLECTIONS GROUP, LLC (hereinafter collectively referred as
27
28

                                  1

wsgvmpaa9.pl.wpd           COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

FILED
LOS ANGELES SUPERIOR COURT

APR 2 9 2008

JOHN A. CLARKE, CLERK
BY MARY GARCIA, DEPUTY

Exhibit 1
Page 11

1  "IPG")[1], as and for their Complaint alleges as follows:

2

3                          **THE AGREEMENT**

4      1.    This action concerns an agreement purportedly entered into

5  between Defendant MOTION PICTURE ASSOCIATION OF AMERICA, INC.

6  ("MPAA"), and Plaintiff IPG.  Specifically, on March 31, 2004, MPAA

7  and individuals claiming to represent IPG entered into two separate

8  agreements entitled "Settlement Agreement-Part I", and "Settlement

9  Agreement-Part II" (collectively "the Agreement").  The Agreement

10 concerned a dispute between MPAA and IPG regarding the distribution

11 of copyright royalties from the United States Copyright Office's 1997,

12 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999

13 Satellite Royalty Funds.  The Agreement purportedly resolved that

14 dispute.

15     2.    Specifically, Settlement Agreement-Part I provides that MPAA

16 will pay IPG a specifically stated sum of money for IPG claims

17 pursuant to "Phase II" of the 1997 Cable Royalty Funds upon execution

18 of Settlement Agreement-Part I, and additional sums to be calculated

19 later for IPG claims on 1997 Satellite Royalty Funds and 1998 and 1999

20

21     [1]In May of 1998, ARTIST COLLECTIONS GROUP, LLC was formed in Los

22 Angeles, California.  In March of 1999, WORLDWIDE SUBSIDY GROUP, LLC

23 was formed in Helotes, Texas.  On March 12, 2001, WORLDWIDE SUBSIDY

24 GROUP, LLC filed an Assumed Name Certificate in Bexar County, Texas,

25 whereby it represented that it would do business as INDEPENDENT

26 PRODUCERS GROUP.  On November 15, 2002, ARTIST COLLECTIONS GROUP, LLC

27 filed a Certificate of Amendment with the California Secretary of

28 State, changing its name to WORLDWIDE SUBSIDY GROUP, LLC.

                                    2

Exhibit 1
Page 12

1 Cable and Satellite Royalty Funds.  Settlement Agreement-Part I also
2 contains a confidentiality clause, an arbitration agreement, and a
3 choice of law provision regarding the law of the District of Columbia.
4        3.     Settlement Agreement-Part II provides that IPG will withdraw
5 its notices of intent to participate in the proceeding to distribute
6 the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and
7 1999 Satellite Royalty Funds and that the parties would move to
8 dismiss two appeals to the United States Court of Appeals for the
9 District of Columbia Circuit.  Settlement Agreement-Part II also
10 contained a choice of law provision regarding the law of the District
11 of Columbia, but did not contain a confidentiality clause, or an
12 arbitration agreement.
13        4.     In sum, Settlement Agreement-Part I set forth what and in
14 what manner IPG would be paid money by MPAA and Settlement Agreement-
15 Part II stated that IPG would drop its own independent royalty claims
16 and appeals.
17
18                          **LACK OF AUTHORITY**
19        5.     However, prior to the execution of the Agreement, and during
20 its negotiation, MPAA was notified by counsel for Lisa Galaz, a member
21 of IPG, that the member of IPG with whom MPAA was negotiating, Marian
22 Oshita, and the attorney that Ms. Oshita had retained, Jeffrey Bogert,
23 Esq., were not authorized to enter an agreement with MPAA on behalf
24 of IPG.  Specifically, on November 3, 2003, James C. Sun, Esq. of Pick
25 & Boydston, LLP, acting as counsel for Lisa Galaz, wrote to Gregory
26 O. Olaniran, Esq. and Michael Tucci, Esq., of Stinson Morrison Hecker,
27 LLP, counsel for MPAA and explicitly stated that neither Marian Oshita
28 nor Jeffrey Bogert had the authority to bind IPG to any settlement

                                    3

1  agreement. Specifically, Mr. Sun's letter states:

2      "Any acts undertaken by Ms. Oshita or by Ms. Oshita through

3      IPG's counsel of record, Jeffrey Bogert, which acts are not

4      authorized by [Lisa Katona Galaz], are ineffective to bind IPG

5      if the person(s) with whom Ms. Oshita and/or Mr. Bogert is/are

6      dealing with have knowledge of this lack of authority. [Texas

7      Civil Statutes, Title 32, Article 2.21.D.(1)-(2)]  By way of

8      this letter, I am placing you on notice that Ms. Oshita and Mr.

9      Bogert lack the authority to unilaterally bind IPG to any

10     settlement agreement in this matter."

11 A copy of Mr. Sun's November 3, 2003 letter is attached hereto as

12 Exhibit A.

13     6.    In addition, the mediator in the underlying dispute between

14 MPAA and IPG, Deanne Siemer, with whom the Agreement was negotiated,

15 was also placed on notice that Ms. Oshita and Mr. Bogert lacked

16 authority to enter into a settlement agreement in the underlying

17 matter. A copy of an August 8, 2003 letter from Mr. Sun to Ms. Siemer

18 is attached hereto as Exhibit B.

19     7.    In the August 8, 2003 letter to Ms. Siemer, Mr. Sun

20 explained that Ms. Oshita had only a 25% voting interest in IPG and

21 that any other additional interest Ms. Oshita might have in IPG did

22 not confer voting rights to Ms. Oshita beyond her 25% voting interest.

23 Accordingly, and because Ms. Galaz had a greater voting interest in

24 IPG- 37.5%, Ms. Siemer was advised that, ". . .IPG cannot make any

25 decisions or take any action with respect to the mediation. . .without

26 Ms. Galaz's authorization."

27     8.    That Ms. Oshita only had a 25% membership or voting interest

28 in IPG was confirmed by a jury in the Los Angeles Superior Court

4

●                              ●

1  lawsuit filed by Ms. Galaz against Ms. Oshita and IPG entitled <u>Galaz</u>
2  <u>v. Oshita, et al.</u> A copy of the Plaintiff's Judgment on Jury Verdict
3  ("the Judgment") is attached hereto as Exhibit C. At page 6, lines
4  12-19 of the Judgment, the jury determined that Ms. Oshita had only
5  an "economic interest" and not a "membership interest" in IPG beyond
6  Ms. Oshita's initial 25% interest in IPG.     Therefore, the jury
7  confirmed that, at all times relevant to the purported Agreement
8  between MPAA and IPG, Ms. Galaz had a greater membership interest in
9  IPG than Ms. Oshita did.

10      9.    Despite being placed on notice that neither Ms. Oshita nor
11  Mr. Bogert had the authority to enter into a settlement with MPAA,
12  MPAA nevertheless chose, at its own risk, to disregard this lack of
13  authority and purported to enter into the Agreement with Ms. Oshita
14  and Mr. Bogert purporting to act on behalf of IPG. Because MPAA was
15  notified that Ms. Galaz' consent was required to bind IPG to the
16  Agreement, and MPAA then chose not to obtain Ms. Galaz's consent, the
17  Agreement is void *ab initio* and is not binding upon IPG.

18      10.   Nevertheless, MPAA contends that the Agreement is valid and
19  seeks to enforce it. Specifically, on April 9, 2008, counsel for MPAA
20  wrote to counsel for IPG and demanded that IPG withdraw any claims it
21  may have with regard to United States Copyright Office's 1998 and 1999
22  Cable Royalty Funds on the grounds that such claims were barred by the
23  terms of the Agreement. A copy of that letter is attached hereto as
24  Exhibit D.

25      11.   Therefore, an actual controversy exits between MPAA and WSG
26  as to whether or not the Agreement is enforceable or void *ab initio*.

27

28

5

●                    ●

1                     <u>GROUNDS FOR RESCISSION</u>

2       12.   Settlement Agreement-Part I provided that within thirty

3   days after its execution, IPG was to forward information to MPAA

4   regarding its royalty claims, and then MPAA would evaluate them and

5   state what amount of money it would pay IPG.   If IPG disagreed with

6   MPAA's conclusion, IPG could contest such conclusion through

7   arbitration.   However, Settlement Agreement-Part I was silent on

8   what would occur if IPG failed to forward its information to MPAA

9   with regard to its specific royalty claims.

10      13.   Ultimately, MPAA seized on this uncertainty in the

11  Agreement when IPG failed to submit its information on its 1998 and

12  1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite

13  Royalty Funds within thirty days of the execution of the Agreement.

14  Specifically, on December 1, 2004, counsel for MPAA rejected IPG's

15  claims made pursuant to Settlement Agreement-Part I, on the grounds

16  that IPG had submitted its information on those claims more than 30

17  days after the execution of Settlement Agreement-Part I.   This was

18  despite the fact that IPG had nevertheless withdrawn its notices of

19  intent to participate in the proceeding to distribute the 1997,

20  1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999

21  Satellite Royalty Funds, as provided in Settlement Agreement-Part

22  II.

23      14.   As a result, no consideration existed for IPG's

24  withdrawal pursuant to Settlement Agreement-Part II of its notices

25  of intent to participate in the proceeding to distribute the 1998

26  and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite

27  Royalty Funds.

28      15.   Alternatively, the uncertainty of what would occur should

                              6

                                                    Exhibit 1

                                                    Page 16

1  IPG fail to submit its information on its 1998 and 1999 Cable

2  Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds

3  within thirty days of the execution of the Agreement, resulted in a

4  failure of consideration for IPG's withdrawal pursuant to

5  Settlement Agreement-Part II of its notices of intent to

6  participate in the proceeding to distribute the 1998 and 1999 Cable

7  Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

8      16.  As a result, IPG seeks a rescission of Settlement

9  Agreement-Part II based upon uncertainty, lack of consideration and

10  failure of consideration.

11

12                          **PARTIES**

13      17.  Plaintiff is informed and believes, and thereupon alleges,

14  that MPAA is a New York Corporation doing business in Sherman Oaks,

15  in the State of California.

16      18.  Plaintiff WORLDWIDE SUBSIDY GROUP, LLC, is a Texas Limited

17  Liability Company, doing business in the states of California and

18  Texas as INDEPENDENT PRODUCERS GROUP with its principal place of

19  business in the County of Bexar, in the State of Texas.

20      19.  Plaintiff WORLDWIDE SUBSIDY GROUP, LLC, is a California

21  Limited Liability Company, doing business in the states of California

22  and Texas as INDEPENDENT PRODUCERS GROUP with its principal place of

23  business in the County of Bexar, in the State of Texas.

24      20.  IPG is unaware of the true names and capacities of

25  Defendants sued herein as DOES 1 through 10, inclusive, and therefore

26  sues said Defendants by such fictitious names.  IPG will amend this

27  Complaint, by leave of Court if necessary, to allege their true names

28  and capacities when ascertained.

                                7

**FIRST CAUSE OF ACTION**

**(For Declaratory Relief)**

**(Against all Defendants)**

21.  IPG incorporates by reference herein the allegations of paragraphs 1 through 20 as set forth in full.

22.  An actual controversy exists between IPG and MPAA regarding whether or not the Agreement is void.

23.  A judicial declaration as to whether or not the Agreement is void is necessary and appropriate to enable the respective parties to enforce their rights with regard to United States Copyright Office's 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

**SECOND CAUSE OF ACTION**

**(For Rescission)**

**(Against all Defendants)**

24.  IPG incorporates by reference herein the allegations of paragraphs 1 through 20 as set forth in full.

25.  As set forth above, the Agreement is uncertain as to what would occur should IPG fail to submit its information on its 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds within thirty days of the execution of the Agreement.

26.  In addition, given that uncertainty, Settlement Agreement-Part II lacks consideration for IPG's dismissal of its claims for 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds.

27.  In addition, Settlement Agreement-Part II suffers from a failure of consideration for IPG's withdrawal of its claims for 1998

8

1 | and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite
2 | Royalty Funds, since IPG has received nothing for those withdrawals.

3 |     28.   IPG will suffer substantial financial prejudice and will be
4 | deprived the benefit of the bargain unless Settlement Agreement-Part
5 | II is rescinded.

6 |     29.   IPG intends that service of the summons and this complaint
7 | will serve as notice of rescission of Settlement Agreement-Part II.

8 |

9 |     WHEREFORE, IPG prays for judgment against Defendants as follows:
10 |     1.   That the Court order that the Agreement was entered into
11 | without the consent of a majority in interest of the members of IPG,
12 | and is therefore void;

13 |     2.   That the Court order that Settlement Agreement-Part II is
14 | rescinded;

15 |     3.   For costs of suit;

16 |     4.   For such other and further relief as the Court may deem
17 | proper.

18 |
Dated: April 29, 2008                    PICK & BOYDSTON, LLP
19 |
20 |                                         By _____
                                             Brian D. Boydston
21 |                                          Attorneys    for   Plaintiffs
                                             WORLDWIDE SUBSIDY GROUP, LLC
22 |                                          a  Texas  Limited  Liability
                                             Company,    dba   INDEPENDENT
23 |                                          PRODUCERS   GROUP,   WORLDWIDE
                                             SUBSIDY GROUP, LLC
24 |
25 |
26 |
27 |

28 |

9

wsgvmpaa9.pl.wpd     COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

Exhibit __1__

Page __19__

FILE COPY

**PICK & BOYDSTON, LLP**
A PARTNERSHIP INCLUDING A PROFESSIONAL CORPORATION
523 WEST SIXTH STREET, SUITE 1134
LOS ANGELES, CALIFORNIA 90014
TELEPHONE (213) 624-1996
FACSIMILE (213) 624-9073

November 3, 2003

William Gordon Kanter, Esq.                     Via Facsimile
Anne M. Murphy, Esq.                            (202) 514-7964
U.S. Department of Justice                      and U.S. Mail
Civil Division, Appellate Staff
601 D Street, NW, Room 9102
Washington, D.C. 20530-0001

Gregory O. Olaniran, Esq.                       Via Facsimile
Michael Edward Tucci, Esq.                      (202) 785-9163
Stinson, Morrison, Hecker                       and U.S. Mail
1150 18th Street, NW, Suite 800
Washington, D.C. 20036-3816

　　　　Re:    Motion Picture Ass'n of America, Inc. v. Register of Copyrights, et al. (Case No.01-
              1033); and Consolidated Case No. 02-1040

Dear Counsel:

Please be advised that this law firm represents Lisa Katona Galaz. Ms Galaz is a Member of
Worldwide Subsidy Group, LLC, a Texas Limited Liability Company, dba Independent Producers
Group ("IPG"). The only other Member of IPG is Marian Oshita.

Under the laws of the State of Texas, under which laws IPG filed its Articles of Organization, a
Texas LLC is controlled by a "majority" of its Members. Texas Civil Statutes, Title 32, Article 2.23.
A "majority" is defined as ". . .more than one-half, by number, of all the members. . ." Id. Article
2.23.F. (emphasis added). Therefore, IPG cannot make any decisions or take any action with respect
to the above-entitled cases unless such actions are authorized by Ms. Galaz.

Any acts undertaken by Ms. Oshita or by Ms. Oshita through IPG's counsel of record, Jeffrey
Bogert, which acts are not authorized by Ms. Galaz, are ineffective to bind IPG if the person(s) with
whom Ms. Oshita and/or Mr. Bogert is/are dealing have knowledge of this lack of authority. Id.
Article 2.21.D.(1)-(2). By way of this letter, I am placing you on notice that Ms. Oshita and Mr.
Bogert lack the authority to unilaterally bind IPG to any settlement agreement in this matter.

D:\Docs\G-m\galaz4.ltr.cappealattys. | 10303

_Ex A_

Exhibit __1__

Page __20__

PICK & BOYDSTON, LLP
William Gordon Kanter, Esq.
Anne M. Murphy, Esq.
Gregory O. Olaniran, Esq.
Michael Edward Tucci, Esq.
November 1, 2003
Page 2

Simply stated- The only way that IPG can be bound to any settlement agreement in the cases above is if Ms. Galaz provides her authorization thereto. In order for Ms. Galaz to provide her authorization, she must be kept informed of any and all settlement efforts.

I look forward to being kept apprized of such settlement efforts. You may contact me or Brian Boydston of this office with any questions or comments you may have regarding the matters discussed herein.

Sincerely yours,

PICK & BOYDSTON, LLP

James C. Sun

cc:     Deanne C. Siemer, Esq. (via facsimile and U.S. Mail)
        Jeffrey C. Bogert, Esq. (via facsimile and U.S. Mail)
        Michael Harris, Esq. (via facsimile and U.S. Mail)
        Client (via facsimile and U.S. Mail)

D:\Docs\G-m\galaz4.ltr.cappealattys.110303

Exhibit 1
Page 21

PICK & BOYDSTON, LLP
A PARTNERSHIP INCLUDING A PROFESSIONAL CORPORATION
553 WEST SIXTH STREET, SUITE 1134
LOS ANGELES, CALIFORNIA 90014
TELEPHONE (213) 624-1996
FACSIMILE (213) 624-9073

August 8, 2003

Deanne C. Siemer, Esq.                     Via Facsimile
Wilsie Co. LLC                             (202) 829-7598
4242 Mathewson Drive N.W.                  and U.S. Mail
Washington, D.C. 20011

      Re:    Independent Producers Group, et al. v. The Librarian of Congress, et al.

Dear Ms. Siemer:

I am in receipt of your letter dated July 27, 2003. Please be advised that my client, Lisa Katona
Galaz, is a Member of Worldwide Subsidy Group, LLC, a Texas Limited Liability Company, dba
Independent Producers Group ("IPG"). Ms. Galaz holds a 37.5% interest in IPG (in my letter to you
dated July 15, 2003, I erroneously stated that Ms. Galaz holds a 35% interest in IPG).

IPG has only one other Member- Marian Oshita. Ms. Oshita, over Ms. Galaz's protest, has retained
Jeffrey C. Bogert, Esq. to represent IPG in the above-entitled proceedings. Ms. Oshita has only a
25% membership interest in IPG. Any claims by Ms. Oshita or by Mr. Bogert that Ms. Oshita has
a membership interest in IPG greater than 25% is false.

Under the laws of the State of Texas, under which laws IPG filed its Articles of Organization, all
Members of an LLC must consent to the transfer of any membership interest in order for any
membership powers to attach to the transferred interest. Texas Civil Statutes, Title 32, Article
4.07.A.(1). Ms. Oshita claims, that in May of 2002, she received an 37.5% interest in IPG, which,
when added to her existing 25% interest, gave her a 62.5% interest in IPG.

However, Ms. Galaz never consented to this transfer to Ms. Oshita. As such, under Texas law, the
purported transfer of interest to Ms. Oshita only gave Ms. Oshita the right, as to the additional
37.5% interest, to be "allocated income, gain, loss, credit, or similar items, and receive distributions,
to which the assignor was entitled." Id. Article 4.05.A.(3). Ms. Oshita may not, however, exercise
any membership rights as to the additional 37.5% interest. Id. Article 4.05.A.(2).

Therefore, Ms. Oshita has only a 25% membership interest in IPG and may only exercise authority
commensurate with this 25% interest. In contrast, Ms. Galaz has a 37.5% membership interest in
IPG and, therefore, IPG cannot make any decisions or take any action with respect to the mediation
of the above-entitled lawsuit without Ms. Galaz's authorization. Id. Article 2.23.

Ex B

PICK & BOYDSTON, LLP

Deanne C. Siemer, Esq.
August 8, 2003
Page 2

In light of the above, any acts undertaken by Mr. Bogert and/or Ms. Oshita are ineffective to bind IPG if the person(s) with whom Mr. Bogert and/or Ms. Oshita is/are dealing have knowledge of this lack of authority. Id. Article.2.21.D.(1)-(2). By way of this letter, I am placing you on notice that Mr. Bogert and Ms. Oshita lack the authority to bind IPG to any settlement agreement in this matter.

Simply stated- The only way that IPG can be bound to any settlement agreement you may be working on is if Ms. Galaz provides her authorization thereto. In order for Ms. Galaz to provide her authorization, she must be kept informed of any and all settlement discussions between you and Mr. Bogert and/or Ms. Oshita. Either Ms. Galaz is kept informed and her authority obtained for any settlement, or else your settlement efforts will be wholly ineffectual and an exercise in futility.

Already, pursuant to a notice similar to this one, Merrill Lynch has agreed to not release any funds from IPG's account without Ms. Galaz's authorization.

If you should persist in dealing with Mr. Bogert without involving Ms. Galaz, I will have no choice but to inform the other parties to this action that any settlement efforts they have made to date, or will make, are a waste of time in that Mr. Bogert lacks any authority to deal with them or with you.

If you agree to simply refuse to continue engaging in settlement efforts with Mr. Bogert unless and until Mr. Bogert first obtains Ms. Galaz's authorization therefor, I will place these parties on notice of Mr. Bogert's and Ms. Oshita's lack of authority to bind IPG. I will refrain from sharing this information with the other parties to this action until 5:00 p.m. on Tuesday, August 12, 2003. I do hope we are able to resolve this situation by that time.

For ease of reference, I enclose herewith the portions of the Texas Civil Statutes cited herein. I look forward to your timely response to this letter. You may contact me or Brian D. Boydston of this office. Thank you for your attention to this matter.

Sincerely yours,

PICK & BOYDSTON, LLP

James C. Sun

Encls:

Lisa Katona Galaz (via facsimile and mail (w/o encls.))
Jeffrey C. Bogert, Esq. (via facsimile and mail)
Marian Oshita (via facsimile and mail)

D:\Docs\G-m\galaz4.ltr.siemer.080803

Exhibit 1
Page 23

meeting, either personally or by mail 

E. If mailed, such notice to a member shall be deemed to be delivered when deposited in the United States mail addressed to the member at the member's address that appears on the records of the limited liability company, with postage prepaid.

F. Attendance of a member, manager, or committee member at a meeting shall constitute a waiver of notice of such meeting, except where that member, manager, or committee member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

G. The articles of organization and regulations may contain provisions relating to giving notice of the time, place, or purpose of a meeting at which a matter is to be voted on by any members or managers, waiver of notice, action by consent without a meeting, the establishment of a record date, quorum requirements, voting in person or by proxy, or any other matter relating to the exercise of the right to vote.

Art. 2.19 amended by Acts 1997, 75th Leg., ch. 375, § 57, eff. Sept. 1, 1997.

## Indemnification

Art. 2.20. A. Subject to such standards and restrictions, if any, as are set forth in its articles of organization or in its regulations, a limited liability company shall have power to indemnify members and managers, officers, and other persons and purchase and maintain liability insurance for such persons.

B. To the extent that at law or in equity, a member, manager, officer, or other person has duties (including fiduciary duties) and liabilities relating thereto to a limited liability company or to another member or manager, such duties and liabilities may be expanded or restricted by provisions in the regulations.

Art. 2.20 amended by Acts 1997, 75th Leg., ch. 375, § 58, eff. Sept. 1, 1997.

## Designation of Officers; Authority and Apparent Authority of Officers, Agents, Managers, and Members

Art. 2.21. A. One or more persons, who may or may not be managers or members, may be designated as officers of the limited liability company by the manager or managers, if management is vested in one or more managers, or by the member or members, if management of the limited liability company is reserved to the members.

B. All officers, agents, managers, and members of the limited liability company, as among themselves and the

7

limited liability company, have authority and perform duties in the management of the limited liability company as may be provided in the regulations or as may be determined by resolution of the manager or managers, if management is vested in one or more managers, or of the member or members, if management is reserved to the members, in each case not inconsistent with the regulations or the articles of organization.

C. Except as otherwise provided in this Article, the following are agents of a limited liability company for the purpose of its business:

(1) any one or more officers or other agents of a limited liability company who are vested with actual or apparent authority;

(2) each manager, to the extent that management of the limited liability company is vested in that manager; and

(3) each member, to the extent that management of the limited liability company has been reserved to that member.

D. An act, including the execution in the name of the limited liability company of any instrument, for the purpose of apparently carrying on in the usual way the business of the limited liability company by any of the persons described in Section C of this Article binds the limited liability company unless:

(1) the officer, agent, manager, or member so acting otherwise lacks the authority to act for the limited liability company; and

(2) the person with whom the officer, agent, manager, or member is dealing has knowledge of the fact that the officer, agent, manager, or member does not have that authority.

### Records to be Kept; Access to Information

Art. 2.22. A. A domestic limited liability company shall keep and maintain the following records in its principal office in the United States or make them available in that office within five days after the date of receipt of a written request under Section E of this Article:

(1) a current list that states:

(a) the name and mailing address of each member;

(b) the percentage or other interest in the limited liability company owned by each member; and

07/09/2003 9:03 AM

Exhibit 1

Page 25

regarding the business, affairs, and financial condition of the limited liability company as is just and reasonable for the person to examine and copy.

E. On the written request by any member or an assignee of a membership interest made to the person and address designated in the regulations, the limited liability company shall provide to the requesting member or assignee without charge true copies of:

(1) the articles of organization and regulations and all amendments or restatements; and

(2) any of the tax returns described in Subdivision (2) of Section A of this Article.

Art. 2.22, Secs. A, B amended by Acts 1997, 75th Leg., ch. 375, § 59, eff. Sept. 1, 1997.

### Voting, Quorum, and Action

Art. 2.23. A. Except as otherwise provided in this Act, in the articles of organization, or in the regulations, a majority of the members, managers, or members of any committee constitutes a quorum for the transaction of business at any meeting of the members, the managers, or the committee. Except as otherwise provided in the articles of organization or the regulations, an act of a majority of the members entitled to vote, the managers, or the members of a committee, who are present at a meeting of the members, the managers, or the committee at which a quorum is present is the act of the members, the managers, or the committee. Except as otherwise provided in the articles of organization or the regulations, any member may vote either in person or by proxy executed in writing by the member.

B. (1) Unless otherwise provided by the articles of organization or the regulations, any act required or permitted to be taken at any meeting of the members, the managers, or any committee may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, is signed by the members, managers, or committee members, as the case may be, having not fewer than the minimum number of votes that would be necessary to take the action at a meeting at which all members, managers, or committee members, as the case may be, entitled to vote on the action were present and voted.

(2) Unless otherwise provided in the regulations, a telegram, telex, cablegram, or similar transmission by a person, or a photographic, photostatic, facsimile, or similar reproduction of a writing signed by a person, shall be regarded as signed by that person for the purposes of this Article.

C. Subject to the provisions required or permitted by this Act, unless otherwise provided in the articles of organization or the regulations, members, managers, or members of any committee may participate in and hold a meeting of the members, managers, or committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other. Participation in a meeting pursuant to this Section constitutes presence in person at the meeting except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on

Exhibit 1

Page 26

the ground that the meeting is not lawfully called or convened.

D. Except as provided in the articles of organization or the regulations, the affirmative vote, approval, or consent of a majority of all the members is required to:

(1) change the status of the limited liability company from one in which management is reserved to the members to one in which management is vested in one or more managers, or vice versa;

(2) issue any additional membership interests in the limited liability company subsequent to the issuance of membership interests to the initial members of the limited liability company;

(3) approve any merger, consolidation, share or interest exchange, or other transaction authorized by or subject to the provisions of Part Ten of this Act;

(4) voluntarily cause the dissolution of the limited liability company;

(5) authorize any transaction, agreement, or action on behalf of the limited liability company that is unrelated to its purpose as set forth in the regulations or articles of organization or that otherwise contravenes the regulations; or

(6) authorize any act that would make it impossible to carry on the ordinary business of the limited liability company.

E. Except as provided in the regulations, the affirmative vote, approval, or consent of a majority of all of the managers, if management of the limited liability company is vested in one or more managers, or of the members, if management of the limited liability company is reserved to the members, is required to take any action, other than an action listed in Section D of this Article, that is not apparently for the carrying on of the business of the limited liability company in the usual way.

F. Except as otherwise provided in the articles of organization or the regulations, for purposes of this Act, a "majority" of the members, managers, or any committee of the managers means more than one-half, by number, of all the members, managers, or members of the committee, as the case may be.

G. Except as provided in the articles of organization or the regulations, if no capital has been paid into the limited liability company, a majority of the managers named in the articles of organization may amend the articles of organization or dissolve the limited liability company or if the management has been reserved to the members, a majority of the members named in the articles of organization may amend the articles of organization or dissolve the limited liability company. In such event, the persons adopting such amendments to the articles of organization or authorizing such dissolution shall sign and file with the Secretary of State the articles of amendment provided for in Articles 3.06 and 3.07 of this Act and the articles of dissolution

Exhibit 1

Page 27

provided for in Articles 6.05, 6.07, and 6.08 of this Act, as appropriate.

H. Except as provided in the articles of organization or the regulations, if any capital has been paid into the limited liability company, the affirmative vote, approval, or consent of all members is required to amend the articles of organization.

Art. 2.23, Secs. A, D amended by and Art. 2.23, Secs. G, H added by Acts 1997, 75th Leg., ch. 375, § 60, eff. Sept. 1, 1997.

## PART THREE

### Formation

Art. 3.01. A. Any natural person of the age of eighteen years or more, or any other person (without regard to place of residence, domicile, or organization) may act as an organizer of a limited liability company by signing the articles of organization for such limited liability company and by delivering the original and a copy of the articles of organization to the Secretary of State.

### Articles of Organization

Art. 3.02. A. The initial Articles of Organization shall set forth:

(1) The name of the limited liability company;

(2) The period of duration, which may be perpetual;

(3) The purpose for which the limited liability company is organized which may be stated to be, or to include, the transaction of any or all lawful business for which limited liability companies may be organized under this Act;

(4) The address of its initial registered office and the name of its initial registered agent at that address;

(5) If the limited liability company is to have a manager or managers, a statement to that effect and the names and the addresses of the initial manager or managers, or if the limited liability company will not have managers, a statement to that effect and the names and the addresses of the initial members;

(6) The name and the address of each organizer, unless the limited liability company is being organized

7

Art. 4.02. A. The regulations may establish classes or groups of one or more members having certain expressed relative rights, powers, and duties, including voting rights, and may provide for the future creation, in the manner provided in the regulations, of additional classes or groups of members having certain relative rights, powers, or duties, including voting rights, expressed either in the regulations or at the time of creation. The rights, powers, or duties of a class or group may be senior to those of one or more existing classes or groups of members.

B to D. Repealed by Acts 1993, 73rd Leg., ch. 215, § 1.32(3), eff. Sept. 1, 1993.

### Liability to Third Parties

Art. 4.03. A. Except as and to the extent the regulations specifically provide otherwise, a member or manager is not liable for the debts, obligations or liabilities of a limited liability company including under a judgment decree, or order of a court.

B. Transaction of business outside state. It is the intention of the legislature by the enactment of this Act that the legal existence of limited liability companies formed under this Act be recognized beyond the limits of this state and that, subject to any reasonable registration requirements, any such limited liability company transacting business outside this state be granted the protection of full faith and credit under Section 1 of Article IV of the Constitution of the United States.

C. Parties to actions. A member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member's right against or liability to the limited liability company.

### Nature of Membership Interest

Art. 4.04. A. A membership interest is personal property. A member has no interest in specific limited liability company property.

### Assignment of Membership Interest

Art. 4.05. A. Unless otherwise provided by the regulations:

(1) a membership interest is assignable in whole or in part;

(2) an assignment of a membership interest does not of itself dissolve the limited liability company or entitle the assignee to participate in the management and affairs of the limited liability company or to become or

7

exercise any rights of a member;

(3) an assignment entitles the assignee to be allocated income, gain, loss, deduction, credit, or similar items, and to receive distributions, to which the assignor was entitled, to the extent those items are assigned, and, for any proper purpose, to require reasonable information or account of transactions of the limited liability company and to make reasonable inspection of the books and records of the limited liability company; and

(4) until the assignee becomes a member, the assignor member continues to be a member and to have the power to exercise any rights or powers of a member, except to the extent those rights or powers are assigned.

B. The regulations may provide that a member's membership interest may be evidenced by a certificate of membership interest issued by the limited liability company, may provide for the assignment or transfer of membership interests represented by a certificate, and may make other provisions with respect to the certificate.

C. Until an assignee of the interest of a member in a limited liability company is admitted as a member, the assignee does not have liability as a member solely as a result of the assignment.

### Rights of Judgment Creditor

Art. 4.06. A. On application to a court of competent jurisdiction by a judgment creditor of a member or any other owner of a membership interest, the court may charge the membership interest of the member or other owner with payment of the unsatisfied amount of the judgment. Except as otherwise provided in the regulations to the extent that the membership interest is charged in this manner, the judgment creditor has only the rights of an assignee of the interest. This Section does not deprive any member of the benefit of any exemption laws applicable to that member's membership interest.

### Right of Assignee to Become Member

Art. 4.07. A. An assignee of a membership interest may become a member if and to the extent that:

(1) the regulations provide; or

(2) all members consent.

B. An assignee who becomes a member has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of a member under the regulations and this Act. Unless otherwise provided by regulations, an assignee who becomes a member also is liable for the obligations of the assignor to make contributions but is not obligated for liabilities unknown to the assignee at the time the assignee became a

Exhibit 1

Page 30

C. Whether or not an assignee of a membership interest becomes a member, the assignor is not released from the assignor's liability to the limited liability company.

PART FIVE

Form of Contribution

Art. 5.01. A. The contribution of a member may consist of any tangible or intangible benefit to the limited liability company or other property of any kind or nature, including cash, a promissory note, services performed, a contract for services to be performed, or other interests in or securities or other obligations of any other limited liability company, domestic or foreign, or other entity.

Art. 5.01 amended by Acts 1997, 75th Leg., ch. 375, § 65, eff. Sept. 1, 1997.

Liability for Contribution Obligations

Art. 5.02. A. A promise by a member to make a contribution to, or otherwise pay cash or transfer property to, a limited liability company is not enforceable unless set out in writing and signed by the member.

B. Except as otherwise provided by the articles of organization or regulations, a member or the member's legal representative or successor is obligated to the limited liability company to perform an enforceable promise to make a contribution to or otherwise pay cash or transfer property to a limited liability company, notwithstanding the member's death, disability, or other change in circumstances. If a member or a member's legal representative or successor does not make a contribution or other payment of cash or transfer of property required by the enforceable promise, whether as a contribution or with respect to a contribution previously made, that member or the member's legal representative or successor is obligated, at the option of the limited liability company, to pay to the limited liability company an amount of cash equal to that portion of the agreed value, as stated in the regulations or in the limited liability company records required to be kept under Article 2.22 of this Act, of the contribution represented by the amount of cash that has not been paid or the value of the property that has not been transferred.

C. The regulations may provide that the interest of a member who fails to make a payment of cash or transfer of property to the limited liability company, whether as a contribution or with respect to a contribution previously made, required by an enforceable promise is subject to specified consequences. A consequence may take the form of a reduction of the defaulting member's percentage or other interest in the limited liability company, subordination of the member's interest to that of nondefaulting members, a forced sale of the member's interest, forfeiture of the member's interest, the lending of money to the defaulting member by other members of the amount necessary to meet the defaulting member's commitment, a determination of the value of the defaulting member's interest by appraisal or by formula and redemption or sale of the interest at that

07/09/2003 9:03 AM

Exhibit ___1___

Page __31__

value, or other penalty or consequence.

D. Unless otherwise provided by the regulations, the obligation of a member or a member's legal representative or successor to make a contribution or otherwise pay cash or transfer property or to return cash or property paid or distributed to the member in violation of this Act or the regulations may be compromised or released only by consent of all of the members. Notwithstanding the compromise or release, a creditor of a limited liability company who extends credit or otherwise acts in reasonable reliance on that obligation, after the member signs a writing that reflects the obligation and before the writing is amended or canceled to reflect the compromise or release, may enforce the original obligation. A conditional obligation may not be enforced unless the conditions of the obligation have been satisfied or waived as to or by the applicable member. Conditional obligations include contributions payable on a discretionary call of a limited liability company, prior to the time the call occurs.

Art. 5.02, Sec. D amended by Acts 1997, 75th Leg., ch. 375, § 66, eff. Sept. 1, 1997.

### Allocation of Profits and Losses

Art. 5.02-1. A. The profits and losses of a limited liability company shall be allocated among the members and among classes of members in the manner provided in the regulations. If the regulations do not otherwise provide, the profits and losses shall be allocated in accordance with the then current percentage or other interest in the limited liability company of the members stated in limited liability company records of the kind described in Section A of Article 2.22 of this Act.

### Sharing of Distributions

Art. 5.03. A. Distributions of cash or other assets of a limited liability company shall be made to the members in the manner provided by the regulations. If the regulations do not otherwise provide, distributions shall be made on the basis of the agreed value, as stated in the records required to be kept under Article 2.22 of this Act, of the contributions made by each member.

### Interim Distributions

Art. 5.04. A. Except as otherwise provided by this Article, a member is entitled to receive distributions from a limited liability company before the member's withdrawal from the limited liability company and before the winding up of the limited liability company to the extent and at the times or on the occurrence of the events specified in the regulations.

### Withdrawal or Expulsion of Member

Art. 5.05. A. member may withdraw or be expelled from a limited liability company at the time or on the

Exhibit 1

Page 32

Rec'd 1-26-05
D-14 . P.Ortega

FILED
LOS ANGELES SUPERIOR COURT

JAN 2 6 2005

_____ RIKE, CLERK
L. FLORENZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| LISA KATONA GALAZ, an individual, | CASE NO. BC 297015 |
| Plaintiff, | PLAINTIFF'S JUDGMENT ON JURY VERDICT |
| v. | |
| MARIAN OSHITA, an individual; WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | |

This action came on regularly for trial on December 6, 2004, in Department 14 of the Superior Court, the Hon. Alan Buckner Judge Presiding; the plaintiff appearing by attorney Brian D. Boydston, Esq. defendant MARIAN OSHITA appearing by attorney Michael Harris, Esq., and defendants WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC

1

CADocs\galazvwsg9.p4l.wpd          PLAINTIFF'S JUDGMENT ON JURY VERDICT



Ex C

Exhibit 1

Page 33

1  a California Limited Liability Company, formerly named ARTIST
2  COLLECTIONS GROUP, LLC appearing by attorney Jeffrey Bogert, Esq.  A
3  jury of twelve persons and two alternates was regularly impaneled and
4  sworn.   Witnesses were sworn and testified.    After hearing the
5  evidence and arguments of counsel, the jury was duly instructed by the
6  Court and the cause was submitted to the jury with directions to
7  return a verdict on special issues.    The jury deliberated and
8  thereafter returned into court with its verdict as follows:

9
10
11      We answer the questions submitted to us as follows:
12
13      (1)  Did Marian Oshita represent to Raul Galaz that $50,000 was
14  then owed to her for unreimbursed expenses?
15
16           _____ Yes    _____ No
17
18      Answer: Yes
19
20      If your answer to question 1 is yes, then answer question 2. If
21  you answered no, go to Question 8.
22
23      (2)  Was Marian Oshita's representation false?
24
25           _____ Yes    _____ No
26
27      Answer: Yes
28

2

Exhibit 1
Page 34

1    If your answer to question 2 is yes, then answer question 3. If
2  you answered no, go to Question 8.

3

4    (3)  Did Marian Oshita know that this representation was false
5  when she made it, or that she made the representation recklessly and
6  without regard for its truth?

7

8    _____ Yes    _____ No

9

10   Answer: Yes

11

12   If your answer to question 3 is yes, then answer question 4. If
13  you answered no, go to Question 8.

14

15   (4)  Did Marian Oshita intend that Raul Galaz rely on the
16  representation?

17

18   _____ Yes    _____ No

19

20   Answer: Yes

21

22   If your answer to question 4 is yes, then answer question 5. If
23  you answered no, go to Question 8.

24

25   (5)  Did Raul Galaz reasonably rely on Marian Oshita's
26  representation?

27

28   _____ Yes    _____ No

3

C:\Docs\galazvwsg9.p41.wpd          PLAINTIFF'S JUDGMENT ON JURY VERDICT

Exhibit 1
Page 35

1    Answer: No

2

3        If your answer to question 5 is yes, then answer question 6. If
4    you answered no, go to Question 8.

5

6        (6)  Was Raul Galaz harmed as a result?

7

8        _____ Yes    _____ No

9

10    Answer: No answer

11

12        If your answer to question 6 is yes, then answer question 7. If
13    you answered no, go to Question 8.

14

15        (7)  Was Raul Galaz' reliance on Marian Oshita's representation
16    a substantial factor in causing Raul Galaz to enter into the Rights
17    Purchase Agreement?

18

19        _____ Yes    _____ No

20

21    Answer: No answer

22

23    Go to the next Question.

24

25        (8)  Did Marian Oshita breach her fiduciary duties by failing to
26             provide Lisa Katona Galaz with, or allow Lisa Katona Galaz
27             to inspect, any of the following:

28             (a)  Current lists of business and residence addresses of

4

C:\Docs\galaz\wsg9.p41.wpd          PLAINTIFF'S JUDGMENT ON JURY VERDICT

Exhibit 1

1   each member of the companies;

2           (b) Copies of the companies' articles of organization and

3   all amendments thereto;

4           (c) Copies of all the companies' tax returns, if any, for

5   the last six years;

6           (d) Copies of the companies' financial statements, if any,

7   for the last six years; and

8           (e) The books and records of the companies as they relate

9   to the internal affairs of the companies for the current and last four

10  years.

11

12          _____ Yes    _____ No

13

14      Answer: Yes

15

16      If your answer to question 8 is yes, then answer question 9. If

17  you answered no and your answer to any of Questions 1 through 7 was

18  no, go to Question 10.  If you answered no and your answer to Question

19  7 was yes, have the presiding juror sign and date this form.

20

21      (9)  What damages, if any, do you award Lisa Galaz for Marian

22  Oshita's breach of fiduciary duties: $_____.

23

24      Answer: $18,750

25

26      If your answer to any of Questions 1 through 7 was no go to

27  Question 10.  If your answer to Question 7 was yes, have the presiding

28  juror sign and date this form.

5

C:\Docs\galazvwsg9.p41.wpd          PLAINTIFF'S JUDGMENT ON JURY VERDICT

Exhibit 1

Page 37

1    (10) Do you find that both Marian Oshita and Raul Galaz consented

2  to the transfer of Raul Galaz' membership interest, as opposed to

3  merely an economic interest, in Worldwide Subsidy Group-Texas to Lisa

4  Galaz?

5

6                    _____ Yes _____ No

7

8      Answer: Yes

9

10      Go to the next question.

11

12    (11) Do you find that both Lisa Galaz and Raul Galaz consented

13  to the transfer of Raul Galaz' membership interest, as opposed to

14  merely an economic interest, in Worldwide Subsidy Group-Texas to

15  Marian Oshita?

16

17                    _____ Yes _____ No

18

19      Answer: No

20

21      Got to Question 12.

22

23    (12) Do you find that Raul Galaz consented to the transfer of

24  Raul Galaz' membership interest, as opposed to merely an economic

25  interest, in Worldwide Subsidy Group-California to Lisa Galaz?

26

27                    _____ Yes _____ No

28

C:\Docs\galazvwsg9.p41.wpd          PLAINTIFF'S JUDGMENT ON JURY VERDICT

Exhibit 1

Page 38

1    Answer: Yes

2

3    If your answer to Question 12 is yes, go to Question 13. If your

4    answer is no, have the presiding juror sign and date this form.

5

6    (13) Do you find that Lisa Galaz consented to the transfer of

7    Raul Galaz' membership interest, as opposed to merely an economic

8    interest, in Worldwide Subsidy Group-California to Marian Oshita?

9

10    _____ Yes _____ No

11

12    Answer: No

13

14    The presiding juror must now sign and date this form.

15    Dated: 12/17/04 .        /s/Michael L. Taylor, Presiding Juror

16

17    The jury was polled and answered in agreement with the verdict

18    as read.

19    It appearing by reason of said verdict that the plaintiff LISA

20    KATONA GALAZ is entitled to a judgment against the defendant MARIAN

21    OSHITA,

22    NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THIS COURT

23    as follows:

24

25    (1)  that the sale from plaintiff, LISA KATONA GALAZ's assignor,

26    Raul Galaz, to defendant MARIAN OSHITA, of a 37.5% interest in

27    WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba

28    INDEPENDENT PRODUCERS GROUP, and a 37.5% interest in WORLDWIDE SUBSIDY

7

1 GROUP, LLC a California Limited Liability Company, formerly named

2 ARTIST COLLECTIONS GROUP, LLC, is hereby rescinded;

3     (2) that by virtue of such rescission, from the date of entry

4 of this judgment, plaintiff, LISA KATONA GALAZ, is the owner of a 75%

5 economic and membership interest in WORLDWIDE SUBSIDY GROUP, LLC a

6 Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, and

7 a 75% economic and membership interest in WORLDWIDE SUBSIDY GROUP, LLC

8 a California Limited Liability Company, formerly named ARTIST

9 COLLECTIONS GROUP, LLC;

10     (3) that the books of WORLDWIDE SUBSIDY GROUP, LLC a Texas

11 Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, and

12 WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company,

13 formerly named ARTIST COLLECTIONS GROUP, LLC be adjusted to reflect

14 that on May 14, 2002, Mr. Galaz received a draw of $50,000; and

15     (4) that plaintiff, LISA KATONA GALAZ, have and recover from

16 said defendant, MARIAN OSHITA, the sum of $18,750, with interest

17 thereon at the rate of ten percent (10%) per annum from the date of

18 entry of this judgment until paid.

19

20 DATED: Jan 26, 2005               

21                               Judge of the Superior Court

22

23

24

25

26

27

28

8

Exhibit 1

Page 40



**STINSON**
**MORRISON**
**HECKER** LLP

Gregory O. Olaniran
(202) 728-3037
golaniran@stinson.com
www.stinson.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

Tel (202) 785-9100
Fax (202) 572-9970

April 9, 2008

RECEIVED
APR 1 1 2008
BY:

**VIA FEDERAL EXPRESS AND EMAIL**

Brian D. Boydston
Pick & Boydston, LLP
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017

Re:     Independent Producers Group's Petition to Participate in
        Copyright Royalty Board Docket No. 2008-1 CRB CD 98-99
        ("1998-99 Phase II Cable Distribution Proceeding").

Dear Mr. Boydston:

My firm represents the Motion Picture Association of America, Inc. ("MPAA"), which, like Independent Producers Group ("IPG"), petitioned to participate in the 1998-99 Phase II Cable Distribution Proceeding.[1] We wish to remind you that an existing agreement bars IPG from participating in that proceeding.

The Copyright Office ("Office") docketed the initial consolidated proceeding to resolve the 1998 and 1999 cable royalty disputes. While that initial proceeding was pending before the Office, two other cases, regarding the 1997 Phase II cable royalties, D.C. Circuit Court of Appeals Case Nos. 02-1033 and 02-1040, involving MPAA, IPG and the Librarian of Congress, were also pending. Pursuant to a court-ordered mediation in the appellate cases, IPG entered into a comprehensive two-part, three party settlement agreement which, by its terms, resolved all outstanding IPG claims to the 1997, 1998, and 1999 cable and satellite royalty funds ("Agreement"). MPAA previously provided the documents relevant to the Agreement to Erik Syverson of your firm on December 3, 2004 in response to a subpoena served by your firm. We are providing the documents again for your reference as **Exhibits A and B** to this letter.

The Agreement was executed in two parts. Settlement Agreement – Part 1, attached hereto as **Exhibit A**, is a confidential settlement between MPAA and IPG, which, for due consideration paid to IPG, settled all outstanding Phase II controversies between the parties regarding the distribution of cable and satellite royalties for 1997, 1998 and 1999. Settlement Agreement – Part 2, **Exhibit B**, is a

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

---

[1] On March 24, 2008, the Copyright Royalty Board ("CRB") ordered the commencement of the voluntary negotiation period on April 1, 2008, pursuant to 17 U.S.C. § 803(b)(3).

DB04/762224.0060/372056.2

Bx D

Exhibit 1
Page 41

Brian D. Boydston
April 9, 2008
Page 2

three-party settlement between MPAA, IPG, and the Librarian of Congress resolving
the same controversies resolved in Settlement Agreement – Part 1, as well as D.C.
Circuit Court of Appeals Case Nos. 02-1033 and 02-1040. Specifically, Settlement
Agreement – Part 2 ensured that that IPG would not participate in distribution
proceedings regarding the 1997, 1998, and 1999 cable and satellite royalty funds by
requiring IPG to file withdrawals of its notices of intent to participate in royalty
distribution proceedings for the years in question. IPG subsequently withdrew from
the proceedings as agreed, but only as to the syndicated programming and movies
categories. *See* **Exhibit C**.

At all times during the course of the negotiations which led to the Agreement,
IPG was represented Jeffrey Bogert, IPG's counsel of record, who had authority to
bind IPG. *See* **Exhibit A**, **Attachment A** (Bogert letter dated March 31, 2004
attesting to his authority to represent IPG). Thus, the Agreement is binding on IPG,
MPAA, and the Librarian of Congress.

In light of the Agreement, IPG cannot participate in the 1998-99 Phase II
Cable Distribution Proceeding. Accordingly, we ask that IPG honor the Agreement
by withdrawing its Petition to Participate in the 1998-99 Phase II Cable Distribution
Proceeding.

MPAA seeks an amicable resolution to this issue, and would prefer to address
the matter between the parties before submitting it to the CRB. Please respond to the
undersigned in writing **no later than Friday, April 18, 2008** regarding whether IPG
intends to honor with the Agreement.

Sincerely,

**STINSON MORRISON HECKER** LLP

Gregory O. Olaniran

GOO:lhp

Attachments

cc:    Jane Saunders, MPAA
       Marsha Kessler, MPAA

Exhibit 1
Page 42

# EXHIBIT 2

02-07-31(1,1)   06-04-2008

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New
York Corporation doing business in California and DOES 1 through 10,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability
Company,
    "Additional Parties Attachment form is attached"

> FOR COURT USE ONLY
> *(SOLO PARA USO DE LA CORTE)*
>
> **FILED**
> LOS ANGELES SUPERIOR COURT
>
> APR 3 0 2008
>
> JOHN A. CLARKE, CLERK
> BY RUGENA LOPEZ, DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
    There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
    *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | CASE NUMBER: *(Número del Caso):* |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | BC389895  D-78 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS
ANGELES, CENTRAL DISTRICT

111 North Hill Street, Los Angeles, CA 90012
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección, o el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brian D. Boydston (State Bar No. 155614)     Tele: (213) 624-1996 Fax: (213) 624-9073
Pick & Boydston, LLP, 1000 Wilshire Boulevard, Suite 600, Los Angeles, CA 90017

| DATE: *(Fecha)* | APR 3 0 2008 | JOHN A. CLARKE *Clerk, (Secretario)* | , Deputy *(Adjunto)* RUGENA LOPEZ |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)

          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.   www.USCourtForms.com

ORIGINAL

Exhibit 2
Page 43

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| WORLDWIDE SUBSIDY GROUP v. MOTION PICTURE ASSOC. | BC389895 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☑ Plaintiff    ☐ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

dba INDEPENDENT PRODUCRERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC

Page _2_ of _2_

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit __2__
Page __44__

# EXHIBIT 3

CONFIDENTIAL

SETTLEMENT AGREEMENT – PART 1

This Settlement Agreement-Part 1 is made as of this 31st day of March 2004 by and among Worldwide Subsidy Group, doing business as Independent Producers Group (hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter "MPAA").

WHEREAS, IPG and MPAA are parties to appellate proceedings consolidated before the United States Court of Appeals for the District of Columbia Circuit, Case No. 02-1033 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these appellate proceedings solely in order to avoid the costs, direct and indirect, that would be incurred by each of the parties in the future and the uncertainties of the current and anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements hereinafter contained and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    Scope of Settlement.  This Agreement settles all Phase II issues, known and unknown, between IPG and MPAA for the 1997, 1998 and 1999 Cable Royalty Funds, and the 1997, 1998 and 1999 Satellite Royalty Funds.

2.    Royalty Payment:  IPG shall receive payments as follows:

Exhibit 3

Page 45

CONFIDENTIAL

a. <u>Current payment</u>: IPG shall receive the amount of $      as payment in full for its Phase II share of royalties distributed to the Program Suppliers category from the 1997 Cable Royalty Fund for all of the programs belonging to Litton Syndications, Inc. and certain IPG costs and expenses at execution of this Agreement.

b. <u>Future payments</u>: IPG's royalties for pending 1997 Satellite and all 1998 and 1999 claims shall be calculated using the same methodology, and shall be paid in the same time frame, as MPAA-represented claimants.

c. <u>Transmittal of payments</u>: All payments to IPG shall be made through IPG counsel, Jeffrey Bogert Trust Account.

3.    <u>Documentation</u>: The documentation submitted by IPG for 1997 Satellite and all 1998 and 1999 claims shall demonstrate with sufficient particularity that:

a. A valid and timely claim for royalties was properly filed with the Copyright Office; and

b. IPG has a valid representation agreement with the claimant and the claimant is entitled to participate in royalties to be distributed.

4.    <u>Initial determination</u>: Within 30 days of the execution of this Agreement, IPG shall notify MPAA of its 1997 Satellite claims and its 1998 and 1999 Cable and Satellite claims and shall deliver the documentation with

REDACTED

2

Exhibit 3
Page 46

CONFIDENTIAL

respect to those claims. Within 30 days of the receipt of IPG's notice,

MPAA shall either notify IPG in writing that it accepts or rejects some or

all of IPG's 1997 Satellite and 1998 and 1999 Cable and Satellite claims

or notify IPG in writing of any deficiencies concerning such

documentation (including specific particulars in which supplementation is

sought). Upon receipt of MPAA's initial determination, IPG shall, within

30 days, notify MPAA of its election to accept or reject MPAA's

determination or to supplement its documentation to MPAA.

a. Acceptance: If IPG accepts MPAA's initial determination, MPAA

shall pay IPG on the same basis and in the same time-frame as it

makes any payment after the date of this Agreement to other MPAA-

represented claimants for 1997 Satellite and 1998 and 1999 Cable

and Satellite claims. If MPAA has made all payments to all other

MPAA-represented claimants for a year in a particular claim

category, IPG shall be paid its claims for the year within that

category within 30 days.

b. Supplementation: If IPG elects to supplement its documentation, it

shall re-submit its documentation or parts of its documentation to

MPAA within 30 days of its notice of election to MPAA, and the

provisions of this paragraph 4 shall be followed with respect to the

re-submitted documentation.

Exhibit 3
Page 47

CONFIDENTIAL

   c. Rejection: If IPG rejects MPAA's initial determination, IPG may

      proceed as provided in paragraph 5 below.

5.    <u>Arbitration</u>: Disputes shall be resolved solely through binding arbitration.

   a. An arbitrator shall be agreed upon by the parties with the execution

      of this Agreement. If the parties cannot agree, the arbitrator shall be

      named by the American Arbitration Association ("AAA").

   b. The arbitration shall be conducted in accordance with the Expedited

      Procedures of the Commercial Arbitration Rules and Mediation

      Procedures of the American Arbitration Association, except as

      provided in this Agreement, and shall be completed within 30 days

      after one of the parties notifies the arbitrator that it is ready to

      proceed.

   c. The venue for the arbitration shall be set by the arbitrator or shall be

      Washington, D.C.

   d. The hearing for the arbitration shall be conducted solely by

      telephone conference call with the parties and the arbitrator, after

      submission of documents, and not by personal appearance, unless

      the parties agree otherwise.

   e. Any arbitration shall be conducted confidentially and shall not be

      disclosed or relied upon in any other proceeding, except a

      subsequent arbitration under this Agreement.

Exhibit 3

Page 48

CONFIDENTIAL

f. In the event that MPAA receives conflicting claims for royalties for a particular title, MPAA shall notify IPG of the conflicting claim, provide available documentation, and proceed with the arbitration. In the event IPG is determined to be the valid claimant entitled to royalty, (i) if the royalty was paid by MPAA to another party prior to receiving IPG's claim under this Agreement, IPG shall seek its royalty from the party who has been paid and not from MPAA; and (ii) if the royalty has not yet been paid by MPAA, MPAA shall continue to hold the royalty until the conflict with the other party is resolved by settlement or a final determination of rights by a court of competent jurisdiction.

6.    Confidentiality:  This Agreement and its terms shall be kept confidential and not disclosed to any person or entity except (a) as may be required by law; (b) as necessary to resolve disputes in accordance with paragraph 5; (c) to the parties' employees, accountants, attorneys, or auditors who have a need to know for purposes of administering the distribution of royalty funds; (d) as necessary to respond to inquiries from rights holders (including IPG) regarding the status and payment of the rights holder's claims; or (e) with the written consent of the parties.

7.    No precedent:  No party shall be deemed to have accepted as precedent for future proceedings before any Copyright Arbitration Royalty Panel or approved, accepted, or agreed to or consented to any principle underlying (or which may be asserted to underlie) this Agreement, and the Librarian

5

Exhibit __3__

Page __49__

CONFIDENTIAL

of Congress has issued, concurrent with this Agreement, the statement

attached as Appendix A to Settlement Agreement-Part 2.

8.   No participation:  Raul Galaz shall not participate, directly or indirectly,

in any distribution of proceeds under this Agreement.  In the event such

distribution occurs, in any amount, the entire amount of the proceeds paid

by MPAA to IPG shall be forfeited by IPG and repaid to MPAA within

30 days.

9.   Notices:  Notices shall be deemed to have been delivered when delivered

by hand, by delivery service, or mailed by certified or registered mail

postage prepaid, addressed as follows:

a. To IPG:  c/o Jeffrey Bogert, 815 Moraga Drive, Los Angeles, CA

90049-1676

b. To MPAA:  c/o Michael E. Tucci and Gregory O. Olaniran, Stinson

Morrison Hecker LLP, 1150 18th Street N.W., Suite 800,

Washington, D.C. 20036-3816

10.   General Provisions:

a. By signing this Agreement, each party represents and warrants that it

has received all consents, power and authority required to execute

the Agreement and that this Agreement is enforceable against it in

accordance with its terms, and counsel for each party has delivered

the letter attached as Appendix A.

6

Exhibit 3

Page 50

CONFIDENTIAL

b.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

c.  This Agreement and the Appendix hereto contain the entire agreement among the parties with respect to the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds and supersedes all previous negotiations, commitments, writings, and proceedings.

d.  This Agreement shall be governed by the laws of the District of Columbia.

e.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

f.  This Agreement shall take effect only upon execution by the parties of the Settlement Agreement-Part 2 which includes provisions with respect to IPG, MPAA, and the Librarian of Congress.

Exhibit 3
Page 51

CONFIDENTIAL

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.


INDEPENDENT PRODUCERS GROUP

By _____
   Authorized representative


MOTION PICTURE ASSOCIATION OF AMERICA

By _____
   Authorized representative

8

Exhibit __3__

Page __52__

**LAW OFFICES OF**
**JEFFREY C. BOGERT**
815 Moraga Drive
**LOS ANGELES, CALIFORNIA 90049-1676**
Facsimile: (310) 476-2135
e-mail: jcblawf@aol.com

Jeffrey C. Bogert, Esq.                                             (310) 476-4625

March 31, 2004

Ann M. Murphy, Esq.
U.S. Department of Justice
Civil Division, Appellate
601 D Street N.W., Suite 800
Washington, D.C. 20530-0001

Michael E. Tucci, Esq.
Stinson Morrison Hecker LLP
1150 18th Street, NW
Suite 800
Washington, DC 20036-3816

ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Ms. Murphy and Mr. Tucci:

I am a member of the state Bar of California and further appear before the Bar of the District Court of Appeals in the District of Columbia. I have acted as counsel to Independent Producers Group ("IPG") in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

IPG is validly existing and in good standing under the laws of the state of Texas.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

Respectfully,

Jeffrey C. Bogert

cc:     Deanne Siemer, Esq.

Exhibit 3
Page 53



**STINSON**
**MORRISON**
**HECKER** LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

April 1, 2004

Jeffrey C. Bogert, Esq.                     Anne Murphy, Esq.
Law Offices of Jeffrey C. Bogert            Attorney, Appellate Staff, Civil Division
815 Moraga Drive                            Department of Justice
Los Angeles, CA 90049-1676                  601 "D" Street, N.W.
                                            Washington, D.C. 20530-0001

### ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Mr. Bogert and Ms. Murphy:

I am a member of the bars of the District of Columbia, Tennessee and Virginia and have acted as counsel to the Motion Picture Association of America, Inc. in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

Motion Picture Association of America, Inc. is validly existing and in good standing under the laws of New York.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

Exhibit __3__
Page __54__

Jeffrey C. Bogert, Esq.
Anne Murphy, Esq.
April 1, 2004
Page 2

Best regards,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls

WDCDOCS 136550v1

Exhibit 3
Page 55

SETTLEMENT AGREEMENT – PART 2

This Settlement Agreement-Part 2 is made as of this 31ˢᵗ day of March 2004 by

and among Worldwide Subsidy Group, doing business as Independent Producers Group

(hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter

"MPAA"), and the Librarian of Congress.

WHEREAS, IPG, MPAA, and the Librarian of Congress are parties to appellate

proceedings consolidated before the United States Court of Appeals for the District of

Columbia Circuit, Case No. 02-1035 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these

appellate proceedings solely in order to avoid the costs, direct and indirect, that would be

incurred by each of the parties in the future and the uncertainties of the current and

anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual

agreements hereinafter contained and other good and valuable consideration, the

sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as

follows:

1.  <u>Scope of Settlement</u>.  This Agreement settles all issues between and among

the parties raised in the appellate proceeding.

2.  <u>Withdrawal of Notice of Intent</u>.  IPG agrees to withdraw its notice(s) of intent

to participate in the proceeding to distribute the 1997, 1998 and 1999 Cable

Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

1



Exhibit 3
Page 50

3. **Dismissal of the appeal**:  The parties shall promptly move to dismiss the appeal in Case No. 02-1035 and Case No. 02-1040.

4. **Record**:  The Librarian of Congress shall issue, subsequent to the dismissal of the appeals in Case No. 02-1035 and Case No. 02-1040, the Order attached as Appendix A.

5. **General Provisions**:

   a.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

   b.  This Agreement and the Appendix hereto contain the entire agreement to which the Librarian of Congress is a party.

   c.  This Agreement shall be governed by the laws of the District of Columbia.

   d.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

This Agreement shall not come into effect separately from the Settlement Agreement-Part 1 which includes provisions with respect to IPG and MPAA.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.

INDEPENDENT PRODUCERS GROUP

By _____
    Authorized representative

2

Exhibit 3
Page 57

APPENDIX A

| | |
|---|---|
| In the Matter of | } |
| | } |
| **Distribution of the 1993, 1994, 1995,** | }   **Docket No. 2000-2 CARP CD 93-97** |
| **1996 and 1997 Cable Royalty Funds** | } |

## RECOMMENDATION AND ORDER

On December 26, 2001, the Library published an Order announcing the Librarian of Congress's decision to reject the initial and revised reports of the Copyright Arbitration Royalty Panel (``CARP") in this Phase II proceeding in the syndicated programming category for distribution of the 1997 cable royalty funds. The Order identified a number of flaws in the cases presented by both IPG and MPAA and in the determination made by the Copyright Arbitration Royalty Panel ("CARP"), and concluded that a distribution of royalties could not be made based on the current record. Accordingly, the Librarian remanded the matter for a new proceeding before a new CARP. Order, 66 FR 66433 (Dec. 26, 2001).

Both parties, Independent Producers Group ("IPG") and The Motion Picture Association of America, Inc. ("MPAA") petitioned the United States Court of Appeals for the District of Columbia Circuit to review the Librarian's determination. Motion Picture Association of America v. Librarian of Congress, No. 02-1033; Independent Producers Group v. Librarian of Congress, 02-1040.

The parties have now settled this dispute, making a remand for new proceedings unnecessary and making it possible to distribute the remaining funds that were in dispute. As part of the settlement, it has been agreed that the December 26, 2001 Order shall be vacated.

Because the parties have settled their dispute, and therefore there is no reason to remand the matter for further proceedings before a new CARP, the Register recommends that the December 26, 2001 Order be vacated as moot. Further, in light of the flaws in the determination made by the CARP as identified in the December 26, 2001 Order, the CARP's initial and final determinations should also be vacated, to make clear that those determinations have no precedential value. The recommendation that the December 26, 2001 Order be vacated is made in order to facilitate the settlement and because the matter is now moot; this recommendation should not be construed as a repudiation of the reasoning in the December 26, 2001 Recommendation and Order.

**Order of the Librarian**

Having duly considered the recommendation of the Register of Copyrights the Librarian accepts the recommendation in its entirety and orders that the December 26,

Exhibit 3

Page 59

2001 Order, the April 16, 2001 initial Report of the CARP, and the June 20, 2001 revised Report of the CARP are hereby VACATED as moot.

**Dated:** _____, 2004

_____
Marybeth Peters
Register of Copyrights

Approved by:

_____
James H. Billington
Librarian of Congress

5

Exhibit 3

Page 60

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Florence-Marie Cooper and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV08- 3701 FMC (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability<br>Company, dba INDEPENDENT PRODUCERS GROUP;<br>WORLDWIDE SUBSIDY GROUP, LLC, a California Limited Liability<br>Company, formerly named ARTIST COLLECTIONS GROUP, LLC | **DEFENDANTS**<br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New<br>York Corporation doing business in California; and DOES 1 through<br>10, inclusive |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Bexar County, Texas | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>Brian D. Boydston (SBN 155614)<br>PICK & BOYDSTON, LLP<br>1000 Wilshire Boulevard, Suite 600<br>Los Angeles, CA 90017<br>Telephone: 213-624-1996 | Attorneys (If Known)<br><br>Karin G. Pagnanelli (SBN 170763)<br>Marc E. Mayer (SBN 190969)<br>MITCHELL SILBERBERG & KNUPP LLP<br>11377 W. Olympic Blvd., Los Angeles, CA 90064<br>Telephone: 310-312-2000 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1331; federal common law cause of action to void and rescind agreement to which the U.S. Librarian of Congress is a party

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities – Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | | ☐ 865 RSI(405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

**FOR OFFICE USE ONLY:**    Case Number: _____

CV08-03701

| | | |
|---|---|---|
| CV-71 (07/05) | CIVIL COVER SHEET | American LegalNet, Inc.<br>www.USCourtForms.com   Page 1 of 2 |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET
### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☒ No    ☐ Yes

If yes, list case number(s):_____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)

☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Los Angeles County, California; Texas

List the California County, or State if other than California, in which **EACH** named defendant resides. (Use an additional sheet if necessary).

☐ Check here if the U.S. government, its agencies or employees is a named defendant.

Los Angeles County, California; Washington, D.C.; New York

List the California County, or State if other than California, in which **EACH** claim arose. (Use an additional sheet if necessary)

Note: In land condemnation cases, use the location of the tract of land involved.

Washington, D.C.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_    Date June 6, 2008

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |