1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:  (310) 312-2000
5  Facsimile:   (310) 312-3100

6  GREGORY O. OLANIRAN (*pro hac vice*)
   LUCY HOLMES PLOVNICK (*pro hac vice*)
7  STINSON MORRISON HECKER LLP
   1150 18th Street NW, Suite 800
8  Washington, D.C. 20036-3816
   Telephone:  (202) 785-9100
9  Facsimile:   (202) 785-9163

10 Attorneys for Defendant
   MOTION PICTURE ASSOCIATION OF
11 AMERICA, INC.

12            UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14

15 WORLDWIDE SUBSIDY GROUP,          CASE NO.  CV08-3701 FMC (MANx)
   LLC, a Texas Limited Liability
16 Company, dba INDEPENDENT          The Honorable Florence-Marie Cooper
   PRODUCERS GROUP; WORLDWIDE
17 SUBSIDY GROUP, LLC, a California   **NOTICE OF MOTION AND
   Limited Liability Company, formerly MOTION OF DEFENDANT
18 named ARTIST COLLECTIONS          MOTION PICTURE ASSOCIATION
   GROUP, LLC,                        OF AMERICA, INC TO DISMISS**
19
              Plaintiffs,            [Declaration of Gregory O. Olaniran and
20                                   Request for Judicial Notice in Support
        v.                           Thereof Filed Concurrently Herewith]
21
   MOTION PICTURE ASSOCIATION
22 OF AMERICA, INC., a New York
   Corporation doing business in      DATE:     July 14, 2008
23 California; and DOES 1 through 10, TIME:     10:00 A.M.
   inclusive,                         CTRM:     750 Roybal Federal Building
24
              Defendants.
25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1867882.1

DB04/762224.0063/458559.5

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on July 14, 2008, in the courtroom of The Honorable Florence-Marie Cooper of the United States District Court for the Central District of California, Roybal Federal Building, 255 East Temple Street, Los Angeles, CA 90012, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant, Motion Picture Association of America, Inc. ("MPAA"), shall, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6) to dismiss this action.

This Motion is made on the following grounds:

1.      This action should be dismissed for Plaintiffs' failure to join the Librarian of Congress ("Librarian") as a party-defendant.  The Librarian's interests are implicated in the instant action and full relief cannot be afforded to the existing parties without his participation.  Accordingly, the Librarian is a necessary and indispensable party to this action pursuant to Federal Rule of Civil Procedure 19(a) and (b).  Further, Plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) because joinder of the Librarian would strip this Court of jurisdiction, and is therefore not feasible.

2.      This action is also subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because it is barred by the applicable statute of limitations.

3.      Moreover, even if the Court accepts all allegations in the Complaint as true, and considers it in a light most favorable to the Plaintiffs, Plaintiffs have failed to allege facts as to Count I of the Complaint which, if taken as true, would indicate that Plaintiffs are entitled to a legal remedy.

This Motion is and will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Gregory

1    O. Olaniran, Defendant's Request for Judicial Notice, any additional memoranda

2    in support thereof, and any argument presented at the hearing on this Motion.

3        This Motion is made following the conference of counsel pursuant to Local

4    Rule 7-3, which took place on June 6, 2008.

5

6    DATED: June 13, 2008              GREGORY O. OLANIRAN
                                       LUCY HOLMES PLOVNICK
7                                      STINSON MORRISON HECKER LLP

8                                      KARIN G. PAGNANELLI
9                                      MARC E. MAYER
                                       MITCHELL SILBERBERG & KNUPP LLP
10

11
                                       By: /s/ Marc E. Mayer
12                                         MARC E. MAYER
                                           Attorneys for Defendant
13                                         MOTION PICTURE ASSOCIATION
                                           OF AMERICA, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1867882.1
DB04/762224.0063/458559.5

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ............................................................................. 1

II.     THE PARTIES ................................................................................. 2

III.    THE COMPULSORY LICENSE STATUTORY SCHEME ...................... 2

IV.     STATEMENT OF FACTS ................................................................. 3

V.      ARGUMENT ................................................................................... 6

    A.      Motion to Dismiss for Failure to Join an Indispensable
        Party ................................................................................. 6

        1.      The Librarian is a Necessary and Indispensable
            Party to the Instant Action. ...................................... 7

        2.      Joinder of the Librarian is Not Feasible, Absent a
            Waiver of Sovereign Immunity .................................. 8

        3.      Because the Librarian is a Necessary and
            Indispensable Party Who Cannot Be Joined,
            Dismissal is Warranted Pursuant to Federal Rules
            of Civil Procedure 12(b)(7) and 19(b) .......................... 10

    B.      Motion to Dismiss for Failure to State a Claim ................................ 11

        1.      IPG's Complaint Is Barred By The Statute of
            Limitations. ............................................................ 12

            a.      IPG's Claims Arose In The District of
                Columbia, Thus Its Three Year Statute of
                Limitations Applies. ........................................ 13

            b.      IPG's Claims Accrued No Later Than
                March 31, 2004, And Thus Are Barred By
                The District of Columbia's Three Year
                Statute of Limitations. ...................................... 14

        2.      IPG's Claim For Declaratory Relief Is Not
            Supported By Documents Referenced In The
            Complaint. .............................................................. 16

            a.      The Contract Contradicts IPG's Claim That
                MPAA Was Aware That Ms. Oshita Lacked
                Authority. ...................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.    The Judgment On Which IPG Relies Does Not Support IPG's Allegations That Ms. Oshita Lacked Authority At The Time The Contract Was Entered. ................................................... 18

VI.    CONCLUSION ........................................................ 19

Mitchell
Silberberg &
Knupp LLP

1867882.1

DB04/762224.0063/458559.5

1

# <u>TABLE OF AUTHORITIES</u>

2

3

CASES                                                                          PAGE

Aguilar v. Los Angeles County,
    751 F.2d 1089 (9th Cir. 1985).................................................................6

Arizona Oddfellow-Rebekah Housing, Inc. v. U.S. Dept. of Housing and
    Urban Dev.,
    125 F.3d 771 (9th Cir. 1997) ..............................................................12

Boyle v. United Tech. Corp.,
    487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ...............................12

Branch v. Tunnell,
    14 F.3d 449 (9th Cir. 1994) ..................................................................1

Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.,
    276 F.3d 1150 (9th Cir. 2002)................................................. 7, 8, 11

DeMalherbe v. Int'l Union of Elevator Constructors,
    449 F.Supp. 1335 (N.D. Cal. 1978) ....................................................12

Doolin v. Envtl. Power, Ltd.,
    360 A.2d 493 (D.C. 1976) .................................................................13

Eaton v. Siemens,
    2007 WL 1500724 (E.D. Cal. 2007) ....................................................4

EEOC v. Peabody W. Coal Co.,
    400 F.3d 774 (9th Cir. 2005) ...............................................................7

Hewitt v. Grabicki,
    794 F.2d 1373 (9th Cir. 1986)...............................................................9

Illinois v. City of Milwaukee, Wis.,
    406 U.S. 91, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972) ....................................12

In re Silicon Graphics, Inc.,
    183 F.3d 970 (9th Cir. 1999) ...............................................................1

Jones v. AT&T,
    2008 WL 902292 (N.D. Cal. 2008)........................................................4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1867882.1

DB04/762224.0063/458559.5

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005)................................................................................11

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
   501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991) ................................12

*Lomayaktewa v. Hathaway,*
   520 F.2d 1324 (9th Cir. 1975)...........................................................................8, 11

*Mack v. S. Bay Beer Distribs., Inc.,*
   798 F.2d 1279 (9th Cir. 1986).................................................................................4

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ..............................................................11, 15, 16

*Marshall v. Kleppe,*
   637 F.2d 1217 (9th Cir. 1980)...............................................................................12

*Nat'l Ass'n of Broadcasters v. Librarian of Congress,*
   146 F.3d 907 (D.C. Cir. 1998)................................................................................3

*North Side Lumber Co. v. Block,*
   753 F.2d 1482 (9th Cir. 1985) ...............................................................................9

*Northrop Corp. v. McDonnell Douglas Corp.,*
   705 F.2d 1030 (9th Cir. 1983).................................................................................8

*Oneida County, N.Y. v. Oneida Indian Nation of New York State,*
   470 U.S. 226, 105 S. Ct. 1245, 84 L. Ed. 2d 169 (1985).................................12

*Patrickson v. Dole Food Co.,*
   251 F.3d 795 (9th Cir. 2001) ................................................................................12

*Riddle v. Mondragon,*
   83 F.3d 1197 (10th Cir. 1996)...............................................................................18

*Shiny Rock Min. Corp. v. United States,*
   906 F.2d 1362 (9th Cir. 1990)...............................................................................15

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998)........................................................11, 12, 15, 16

*Tuscon Airport Auth. v. Gen. Dynamics Corp.,*
   136 F.3d 641 (9th Cir. 1998) .................................................................................9

TwoRivers v. Lewis,
  174 F.3d 987 (9th Cir. 1999) .................................................................. 13, 14

United States v. ITT Cont'l Baking Co.,
  420 U.S. 223, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975) ...................................... 4

W. Mining Council v. Watt,
  643 F.2d 618 (9th Cir. 1981) ...................................................................... 12

Wilbur v. Locke,
  423 F.3d 1101 (9th Cir. 2005) .................................................................. 8, 11


**PROCEDURAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................................ 11, 15, 19

Federal Rule of Civil Procedure 12(b)(7) ................................................... 6, 11, 19

Federal Rule of Civil Procedure 19 ...................................................... 6, 8, 9, 10


**STATUTES**

5 U.S.C. § 702 (1976) ............................................................................... 9

17 U.S.C. § 111 (2006) .............................................................................. 2

17 U.S.C. § 119 (2006) .............................................................................. 2

17 U.S.C. § 801 (1995) ........................................................................... 2, 3

17 U.S.C. § 801 (2004) ........................................................................... 2, 3

17 U.S.C. § 802 (1995) ........................................................................... 2, 3

28 U.S.C. § 1491 (2008) ............................................................................ 9

D.C. Code 1973 § 12-301 .......................................................................... 13

P.L. 108-419 (2004) ................................................................................. 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**OTHER AUTHORITIES**

2
65 Fed. Reg. 65335 (2000) ............................................................................3

3
66 Fed. Reg. 66433 (2001) .........................................................................2, 3

4
69 Fed. Reg. 23821 (2004) .......................................................................4, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP    28

1867882.1

DB04/762224.0063/458559.5

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3

**I.     INTRODUCTION**

4

        This is an action for a judicial declaration that a three-party settlement

5

agreement between Plaintiffs (collectively referred to herein as "IPG"), Defendant,

6

the Motion Picture Association of America, Inc. ("MPAA"), and the United States

7

Librarian of Congress ("Librarian") is void, and also for rescission of a portion of

8

the settlement agreement.  The settlement agreement is hereinafter referred to as

9

the "Contract." <u>See</u> Olaniran Dec., Exh. A (Contract).[1]  Part 1 of the Contract is

10

between IPG and MPAA.  Part 2 of the Contract is between IPG, MPAA, and the

11

Librarian.  Both parts of the Contract are effective as one agreement.[2]  Although

12

IPG makes reference to the Contract throughout the Complaint, <u>see</u> Compl. ¶¶ 1-4,

13

12-16, 21-29, and provided as an attachment to the Complaint a letter that

14

discusses the Contract and all three parties thereto, Compl. Exh. D at 1-2, IPG

15

failed to identify the Librarian as a party to the Contract, and also failed to attach to

16

the Contract to the Complaint.

17

        As discussed more fully below, IPG's claims seeking to void and rescind the

18

Contract should be dismissed for failure to join a necessary party and failure to

19

state a claim pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6).

20

21

22

23

---

[1] Because no party disputes the authenticity of the Contract, the Court may

24

properly consider the Contract in the context of a motion to dismiss pursuant to the

25

"incorporation by reference" doctrine.  <u>In re Silicon Graphics, Inc.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994).

26

[2] <u>See</u> Olaniran Dec., Exh. A, Part 2 at p. 2 ("This Agreement shall not come into

27

effect separately from Settlement Agreement - Part 1 which includes provisions with respect to IPG and MPAA.").

Mitchell
Silberberg &
Knupp LLP

28

1867882.1

DB04/762224.0063/458559.5

## II.    THE PARTIES

The Plaintiffs in the instant action are Worldwide Subsidy Group, LLC, a Texas limited liability company, doing business as Independent Producers Group, and Worldwide Subsidy Group, LLC, a California limited liability company, formerly known as Artist Collections Group, LLC.  See Compl. at pp. 1-2.  The only named Defendant is MPAA.  See id.[3]

## III.    THE COMPULSORY LICENSE STATUTORY SCHEME

The United States Library of Congress ("Library"), headed by the Librarian, is an agency of the legislative branch of the United States government, located in Washington, D.C.  RJN, Exhs. A, C-M (address at top of Orders).  The United States Copyright Office ("Office") is a department within the Library.  Pursuant to 17 U.S.C. §§ 111 and 119, the Office is required to collect compulsory license royalties ("Royalties") from cable operators and satellite carriers for the distant retransmission of programming on television broadcast stations.  Historically, MPAA has represented the interests of the majority of producers and distributors of series, specials, and movies broadcast on television stations which are entitled to receive a portion of the Royalties collected by the Office.  See e.g., 66 Fed. Reg. 66433, 66434 (2001).  IPG has also represented the interests of entities asserting claims to a portion of the Royalties.  See id.

At all times relevant to this case, administering the Royalties scheme, including authorizing distribution of the Royalties, fell within the jurisdiction of the Office.  See 17 U.S.C. § 801 (1995).  Pursuant to the statutory scheme in effect during the relevant period, when parties asserting claims to the compulsory license royalty fund for a given year were unable to reach an agreement regarding the distribution of the royalty funds, the Office convened a Copyright Royalty Arbitration Panel ("CARP") to resolve the dispute.  See id.; see also 17 U.S.C. §

---

[3] IPG has also named Does 1 through 10, inclusive, as Defendants to the instant action.  See Compl. at ¶ 20.

1   802(c) (1995); <u>Nat'l Ass'n of Broadcasters v. Librarian of Congress</u>, 146 F.3d 907,

2   912-13 (D.C. Cir. 1998) (providing an overview of the compulsory license

3   scheme).  Upon petition by one of the parties to the distribution proceedings, the

4   CARP's decision was subject to review by the Librarian, who thereafter issued the

5   final agency determination as to the royalty distribution.  17 U.S.C. § 802(f)

6   (1995).  Exclusive jurisdiction over any appeal of the Librarian's decision was

7   vested in the United States Court of Appeals for the District of Columbia Circuit.

8   17 U.S.C. § 802(g) (1995).[4]

9   **IV.    STATEMENT OF FACTS**

10          **The 1997 Cable Distribution Proceeding and Appeals.**  On November 1,

11  2000, the Office initiated a CARP proceeding to arbitrate a dispute between IPG

12  and MPAA regarding the distribution of cable royalties collected for the 1997

13  royalty year.  <u>See</u> 65 Fed. Reg. 65335 (2000).  The CARP's initial findings, issued

14  on April 16, 2001, were rejected by the Librarian on June 5, 2001.  <u>See</u> 66 Fed.

15  Reg. at 66434.  The CARP issued revised findings on June 20, 2001, which the

16  Librarian again rejected.  <u>See id.</u>  The Librarian then remanded the proceeding for

17  consideration by a new CARP in a final order dated December 26, 2001 ("Agency

18  Determination").  <u>See</u> 66 Fed. Reg. at 66434.  Both IPG and MPAA appealed the

19  Agency Determination to the District of Columbia Circuit Court of Appeals as

20  Case Nos. 02-1033 and 02-1040, naming the Librarian as the Respondent in both

21  cases ("Appellate Cases").  <u>See</u> Compl. at ¶ 3, Compl. Exh. A at 1, Compl. Exh. D

22  at 1.

23

24

25  [4] Pursuant to the Copyright Royalty Distribution and Reform Act of 2004

26  ("CRDRA"), which was enacted on November 30, 2004, <u>See</u> P. L. 108-419 (Nov.
    30, 2004), authority to order distribution of the Royalties is currently vested in the

27  Copyright Royalty Judges, a newly-created independent entity within the Library.
    <u>See</u> 17 U.S.C. § 801 (2004).

28

1        **The Contract and Compliant Subsequent Acts.**  On March 31, 2004,

2    following mediation, IPG, MPAA, and the Librarian executed the Contract,

3    settling not only the Appellate Cases, but also resolving all disputes between the

4    parties as to the distribution of the 1997, 1998, and 1999 cable and satellite royalty

5    funds.[5]  See Olaniran Dec., Exh. A, (Contract) Part 1, p. 1 at ¶ 1 and Part 2, p. 1 at

6    ¶ 2.  Importantly, the Contract incorporated, as an exhibit, a letter from IPG's

7    counsel of record in the Appellate Cases, Jeffrey Bogert, certifying that the

8    Contract had been ratified by all requisite corporate action, and was valid and

9    binding upon IPG.  Olaniran Dec., Exh. A, (Contract) Part 1 at Attachment A.

10        Following execution of the Contract, many acts were taken by MPAA, IPG,

11   and the Librarian in compliance with the Contract.  First, on April 2, 2004, the

12   Librarian entered an order vacating the Agency Determination (the agency order

13   that gave rise to the Appellate Cases).  See RJN, Exh. A (April 2, 2004 Order);[6]

14   see also Notice Announcing Order, 69 Fed. Reg. 23821, 23822 (2004).  Consistent

15   with the April 2, 2004 Order terminating the 1997 cable royalty distribution

16   proceeding, the Librarian proceeded to distribute all cable royalties held in reserve

17   for 1997.  RJN, Exh. C (June 8, 2004 Order).  Second, IPG and MPAA voluntarily

18   dismissed the Appellate Cases.  See RJN, Exh. B (Order Dismissing Appellate

19   Cases).  Third, IPG withdrew its notices of intent to participate in royalty

20   distribution proceedings affecting the 1997, 1998, and 1999 cable and satellite

21   royalty years.  Compl. at ¶¶ 3, 13; see also Olaniran Dec., Exh. A (Contract) at Part

22   2, p. 1 at ¶ 2.  Relying on IPG's withdrawals, the Librarian made a final

23

24   [5] An agreement to settle a legal dispute is a contract.  United States v. ITT Cont'l

25   Baking Co., 420 U.S. 223, 238, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975).

26   [6] In considering a motion to dismiss, the Court is authorized to take judicial notice
     of public records.  See Jones v. AT&T, 2008 WL 902292 at *2-*3 (N.D. Cal.

27   2008) (citing Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir.
     1986) and Eaton v. Siemens, 2007 WL 1500724 at 1, n.5 (E.D. Cal. 2007).

28

Mitchell
Silberberg &
Knupp LLP

1867882.1

distribution of all satellite royalties held in reserve for 1997 and 1998, RJN, Exh. D at p. 2, Exh. E at p. 2, and set reserve amounts for the other affected years.  See RJN Exh. F (February 8, 2006 Order) at p. 2-3; Exh. G (June 26, 2006 Order) (clarifying February 8, 2006 Order); Exh. H (April 3, 2007 Order) at p.1, n.1 and p.4, n.7; Exh. I (April 3, 2007 Order) at p. 5 (reserving no funds in the syndicated programming category for the 1998-99 cable royalty years for disputes with IPG); Exh. J (April 6, 2007 Order) (clarifying April 3, 2007 Order); Exh. K (April 10, 2007 Order) (further clarifying April 3, 2007 Order); Exh. L (May 24, 2007 Order) at p.1-2 (establishing final reserve amounts in the syndicated programming category for the 1998-99 cable royalty years, without a reserve for IPG); Exh. M (July 11, 2007 Order) at p. 3 (recognizing syndicated programming cable royalties reserve amount).

**Change in Control of IPG.**  At some point prior to November 3, 2003, a legal dispute arose within IPG regarding which member of IPG, Marian Oshita or Lisa Katona Galaz,[7] maintained a majority interest in the companies.  See Compl. Exh. A at 1-2.

On December 4, 2004, pursuant to a subpoena served on MPAA in connection with that legal dispute, MPAA produced a copy of the Contract and other related documents to IPG's counsel.  See Compl. Exh. D at 1.  Thereafter, in a decision dated January 26, 2005, the Los Angeles Superior Court determined that, effective as of that date, Ms. Galaz owned a 75% interest in IPG.  See Compl. Exh. C at p. 8, lines 3-9.  That Judgment is silent both as to Marian Oshita's

---

[7] Lisa Galaz succeeded her ex-husband, Raul Galaz, as an interest holder in IPG, Compl. Exh. C, p. 7, lines 25-26, following Raul Galaz's incarceration for fraudulently obtaining copyright royalties from MPAA.  See RJN Exhs. N and O, Plea Agreement and Information in United States v. Raul Galaz, Criminal Docket No. 02-cr-00230 (dated May 29, 2002); RJN Exh. P, Judgment in United States v. Raul Galaz, Criminal Docket No. 02-cr-00230 (dated December 23, 2002).

1  interest in IPG and her authority to bind IPG at the time the Contract was executed.

2  See id.

3      On November 9, 2006, IPG sued its former attorney, Mr. Bogert, alleging

4  professional negligence, in part, in connection with his negotiation of the Contract,

5  and seeking damages for IPG's alleged loss of its claims to the Royalties.  See RJN

6  Exh. Q, Galaz, et al v. Bogert, Los Angeles Superior Court Case No. SC091734

7  (Complaint filed November 9, 2006) at p. 7 ¶ 25; RJN Exh. R (Galaz Demand for

8  Damages) at p. 2 ¶¶ 1(b)-(c).  That matter remains pending before the Los Angeles

9  Superior Court.   RJN Exh. S (Galaz Civil Case Summary).

10      It was not until April 29, 2008, more than four years after the Contract was

11  executed, and more than three years after Ms. Galaz was adjudged a 75% owner of

12  IPG, that IPG brought the instant suit.  Compl. at p. 1 and Compl. Exh. C at p. 8,

13  line 20.  Even then, IPG inexplicably brought suit only against MPAA, and failed

14  to join the Librarian, a party to the Contract.  Compl. at p. 1.

15  **V.    ARGUMENT**

16      **A.    Motion to Dismiss for Failure to Join an Indispensable Party**

17      A court may dismiss a complaint pursuant to Federal Rule of Civil

18  Procedure 12(b)(7) for a party's failure to join a party whose presence is needed

19  for just adjudication under Federal Rule of Civil Procedure 19 ("Rule 19").  Rule

20  19 "establishes a two-step analysis for determining who should be joined in a given

21  action." Aguilar v. Los Angeles County, 751 F.2d 1089, 1091 (9th Cir. 1985).  The

22  first step, set forth in Rule 19(a), determines which persons should be joined, if

23  joinder is feasible.  See id. at 1091-92.  The second step, set forth in Rule 19(b),

24  determines whether the action should be dismissed or proceed without the party if

25  joinder is not feasible.  See id. at 1092.  Dismissal is warranted when the absent

26  party is deemed "indispensable," i.e., a party who "not only [has] an interest in the

27  controversy, but an interest of such a nature that a final decree cannot be made

28  either without affecting that interest, or leaving the controversy in such a condition

1    that its final termination may be wholly inconsistent with equity and good

2    conscience." EEOC v. Peabody W. Coal Co., 400 F.3d 774, 780 (9th Cir. 2005).

3         Here, the Librarian is a necessary and indispensable party and should have

4    been joined by IPG.  Because IPG has failed to join the Librarian as a defendant,

5    Compl. at ¶¶ 17-20, and because joinder of the Librarian, in any event, is not

6    feasible without a waiver of sovereign immunity, IPG's Complaint must be

7    dismissed.

8         **1.    The Librarian is a Necessary and Indispensable Party to the**

9              **Instant Action.**

10        Pursuant to Rule 19(a)(1), an absent party is "necessary" if one of two

11   grounds is met:

12             (A) in that person's absence the court cannot
13        accord complete relief among existing parties; or (B) that
      person claims an interest relating to the subject of the
14        action and is so situated that disposing of the action in the
      person's absence may:  (i) as a practical matter impair or
15        impede the person's ability to protect the interest; or (ii)
      leave an existing party subject to a substantial risk of
16        incurring double, multiple, or otherwise inconsistent
      obligations because of the interest.
17

18

19   Rule 19(a)(1).  A party need only satisfy one of these alternative tests to be

20   considered a necessary party.  Dawavendewa v. Salt River Project Agr. Imp. and

21   Power Dist., 276 F.3d 1150, 1155 (9th Cir. 2002).

22        Here, the Librarian satisfies both of these tests because it is a party to the

23   Contract.  Olaniran Dec., Exh. A (Contract), Part 2, p. 1.  First, complete relief

24   cannot be afforded to the existing parties in this case without the Librarian's

25   joinder, as the judgment would not address the Librarian's rights and obligations

26   under the Contract, or be binding on him, a nonparty.  Dawavendewa, 276 F.3d at

27   1156.  The remedy that IPG ultimately seeks via this cause of action is the ability

28   to participate in distribution proceedings before the Office or Copyright Royalty

Mitchell
Silberberg &
Knupp LLP

1867882.1

DB04/762224.0063/458559.5

7

1  Judges to enforce its claims as to the 1997, 1998, and 1999 cable and satellite

2  royalty years.  Compl. at ¶¶ 23, 26.  IPG withdrew from these proceedings as a

3  condition of the Contract, Compl. ¶¶ 13-14, 26-27, and the Librarian accepted and

4  took action in reliance on these withdrawals.  See, e.g., RJN, Exhs. A, C-M.  Even

5  if IPG succeeds here, the very relief that it would obtain -- participation in the

6  referenced distribution proceedings -- would be unavailable to it because the

7  Librarian would not be bound by a decision here.  Because a ruling binding the

8  Librarian is unavailable in this cause of action, this action provides only "hollow

9  relief" to IPG and MPAA.  See Northrop Corp. v. McDonnell Douglas Corp., 705

10  F.2d 1030, 1043 (9th Cir. 1983).

11  Second, as this is an action to void and rescind the Contract, the disposition

12  of this matter in the Librarian's absence will impede the Librarian's ability to

13  protect his rights under the Contract, including the settlement of the Appellate

14  Cases against the Librarian.  See Dawavendewa, 276 F.3d at 1156-57 (stating that

15  it is a "fundamental principle" that "a party to a contract is necessary, and if not

16  susceptible to joinder, indispensable to litigation seeking to decimate the

17  contract"); see also Wilbur v. Locke, 423 F.3d 1101, 1113 (9th Cir. 2005);

18  Northrop Corp., 705 F.2d at 1044. Moreover, the Librarian is an indispensable

19  party because this is an action to invalidate the Contract.  As the Ninth Circuit has

20  recognized, "no procedural principle is more deeply imbedded in the common law

21  than that, in an action to set aside a lease or a contract, all parties who may be

22  affected by the determination of the action are indispensable."  Lomayaktewa v.

23  Hathaway, 520 F.2d 1324, 1325 (9th Cir. 1975); see also Wilbur, 423 F.3d at 1113;

24  Dawavendewa, 276 F.3d at 1156-57.

25  **2.    Joinder of the Librarian is Not Feasible, Absent a Waiver of**

26  **Sovereign Immunity.**

27  As a necessary and indispensable party to the instant action, pursuant to Rule

28  19, the Librarian must be joined if joinder is feasible.  See Rule 19(a) and (b).

Mitchell
Silberberg &
Knupp LLP

1867882.1

1    However, in this case, joinder of the Librarian is not feasible, as it would deprive

2    the Court of jurisdiction.  Pursuant to the Tucker Act, exclusive jurisdiction over

3    suits against the federal government addressing the rights and obligations of the

4    United States under a contract rests in the United States Court of Federal Claims.

5    See 28 U.S.C. § 1491; see also Hewitt v. Grabicki, 794 F.2d 1373, 1382 (9th Cir.

6    1986).  The Tucker Act is "more than just a grant of jurisdiction over government

7    contract claims; it is also a limited waiver of sovereign immunity and a limitation

8    on the remedies available in actions on government contracts."  North Side Lumber

9    Co. v. Block, 753 F.2d 1482, 1484-85 (9th Cir. 1985).  The Tucker Act has been

10   construed as providing the Court of Federal Claims with exclusive jurisdiction to

11   hear claims against the United States for monetary damages arising out of a

12   government contract, but not providing either a grant of jurisdiction or a waiver of

13   sovereign immunity for claims seeking injunctive or declaratory relief.  See id.

14   (citations omitted).  The Ninth Circuit has held that the Tucker Act "'impliedly

15   forbids' declaratory and injunctive relief" on government contract claims, and

16   precludes a waiver of sovereign immunity, and thus United States District Court

17   jurisdiction, under 5 U.S.C. § 702 (1976).[8]  Tuscon Airport Auth. v. Gen.

18   Dynamics Corp., 136 F.3d 641, 646 (9th Cir. 1998); North Side Lumber, 753 F.2d

19   at 1485.

20        Here, IPG is seeking declaratory relief and rescission of a government

21   contract, and is not seeking monetary damages, other than an award of attorneys'

22   fees.  Compl. at p. 9, ¶¶ 1-4.  Therefore, given that IPG's claim is not one for

23   monetary damages, even if the Librarian is joined as a necessary party-defendant to

24   the instant action, neither the Court nor the Court of Federal Claims would have

25

26

27   _____

[8] 5 U.S.C. § 702 is the section of the Administrative Procedure Act providing a
waiver of sovereign immunity for actions against an agency or an officer thereof,
28   acting in an official capacity, seeking relief other than monetary damages.

1    jurisdiction to hear the case.  Therefore, absent a specific waiver of sovereign

2    immunity, joinder of the Librarian pursuant to Rule 19 is not feasible.

3    **3.    Because the Librarian is a Necessary and Indispensable**

4    **Party Who Cannot Be Joined, Dismissal is Warranted**

5    **Pursuant to Federal Rules of Civil Procedure 12(b)(7) and**

6    **19(b).**

7    In determining whether a suit should proceed in the absence of a necessary

8    party that cannot be feasibly joined, the Court considers the following factors:

9
10   (1) the extent to which a judgment rendered in the
     person's absence might prejudice that person or the
     existing parties; (2) the extent to which any prejudice
11   could be lessened or avoided by: (A) protective
     provisions in the judgment; (B) shaping the relief; or (C)
12   other measures; (3) whether a judgment rendered in the
     person's absence would be adequate; and (4) whether the
13   plaintiff would have an adequate remedy if the action
     were dismissed for nonjoinder.
14

15

16   Rule 19(b).  Here, any judgment to void or rescind the Contract entered in the

17   Librarian's absence would clearly prejudice the Librarian.  The instant action

18   directly affects the Librarian's interest in maintaining the resolution of the

19   Appellate Cases which were dismissed pursuant to the Contract.  See Compl. at ¶

20   3; Olaniran Dec., Exh. A, (Contract) Part 2, p. 2 at ¶ 3.  If the Contract is deemed

21   void or rescinded, the Librarian will be directly affected because MPAA and IPG

22   could seek to reinstate the Appellate Cases against the Librarian.  Indeed, this

23   action potentially could unwind all of the actions taken by the Librarian in reliance

24   on the Contract, including vacating the Agency Determination; terminating the

25   royalty distribution proceeding that gave rise to that Agency Determination;

26   distributing all cable royalties held in reserve for 1997; making a final distribution

27   of the 1997 and 1998 satellite royalties; and setting reserve amounts for other cable

28   and satellite royalty years.  See p. 4-5, supra.  In addition, the Librarian may be

Mitchell
Silberberg &
Knupp LLP

1867882.1

1  forced to defend the legality of full distribution of the 1997 cable royalties and

2  1997 and 1998 satellite royalties that took place in reliance on the Contract.  All of

3  these factors establish substantial prejudice to the Librarian if the proceeding were

4  to continue in his absence.

5        Moreover, as the Complaint seeks either a judicial declaration that the

6  Contract was void *ab initio*, or partial rescission of the Contract, no protective

7  provision in the judgment could be fashioned to protect the Librarian's interest in

8  the Contract while affording IPG the relief it seeks.  Further, because the Librarian

9  is a party to the Contract, a judgment entered in the Librarian's absence would be

10  inadequate.  See Wilbur, 423 F.3d at 1113;  Dawavendewa, 276 F.3d at 1156-57;

11  Lomayaktewa, 520 F.2d at 1325.  Finally, IPG would have an adequate remedy if

12  the instant action were dismissed for nonjoinder.  For example, IPG has filed suit

13  against its former counsel, Mr. Bogert, in connection with his negotiation of the

14  Contract.  See RJN, Exh. Q at p. 7 ¶ 25, Exh. R at p. 2 ¶¶ 1(b)-(c), and Exh. S.

15  Also, IPG would be free to address any disputes under the Contract via binding

16  arbitration, as the Contract itself contemplates, see Olaniran Dec., Exh. A

17  (Contract), Part 1, p.4-5 at ¶ 5(a)-(f).  For all of the foregoing reasons, the factors

18  under Rule 19(b) are satisfied in this proceeding and mandate dismissal of the

19  Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7).

20        **B.**    **Motion to Dismiss for Failure to State a Claim**

21        The Court may dismiss a complaint for failure to state a claim pursuant to

22  Federal Rule of Civil Procedure 12(b)(6) when the facts alleged in the complaint,

23  even if accepted as true, are insufficient to state a claim upon which relief can be

24  granted.  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  In evaluating a

25  motion to dismiss, the Court must construe the complaint in a light most favorable

26  to the plaintiff.  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  However,

27  the Court is "not required to accept as true conclusory allegations that are

28  contradicted by documents referred to in the complaint."  Steckman v. Hart

1   <u>Brewing, Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  The Court also will "not

2   …assume the truth of legal conclusions merely because they are cast in the form of

3   factual allegations."  <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.

4   1981).  Applying these standards, IPG's Complaint should be dismissed because it

5   (1) falls outside of the applicable statute of limitations, and (2) is based, at least as

6   to Count I, on purported factual assertions that are belied by documents referenced

7   in the Complaint.  Each of these arguments is addressed below.

8              **1.    IPG's Complaint Is Barred By The Statute of Limitations.**

9              Disputes arising under the Contract are governed by federal common law

10  because the Librarian is a party to the Contract.  <u>See</u> <u>Boyle v. United Tech. Corp.</u>,

11  487 U.S. 500, 504, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ("The obligations

12  and rights of the United States under its contracts are governed exclusively by

13  federal law.").  In such disputes federal common law replaces state law regardless

14  of whether Congress has shown any intent to preempt the area.  <u>Id.</u>   When a cause

15  of action arises under federal common law, it presents a federal question.  <u>See</u>

16  <u>Arizona Oddfellow-Rebekah Housing, Inc. v. U.S. Dept. of Housing and Urban</u>

17  <u>Dev.</u>, 125 F.3d 771, 774 n.4 (9th Cir. 1997); <u>see also</u> <u>Patrickson v. Dole Food Co.</u>,

18  251 F.3d 795, 800 (9th Cir. 2001) (citing <u>Illinois v. City of Milwaukee, Wis.</u>, 406

19  U.S. 91, 100, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972)).

20             "When Congress has failed to create a federal statute of limitations for

21  federal causes of action, courts generally apply the statute of limitations of the

22  most analogous cause of action under the law of the state in which the federal

23  cause of action arises."  <u>DeMalherbe v. Int'l Union of Elevator Constructors</u>, 449

24  F.Supp. 1335, 1339 (N.D. Cal. 1978); <u>see also</u> <u>Lampf, Pleva, Lipkind, Prupis &</u>

25  <u>Petigrow v. Gilbertson</u>, 501 U.S. 350, 355, 111 S. Ct. 2773, 115 L. Ed. 2d 321

26  (1991); <u>Marshall v. Kleppe</u>, 637 F.2d 1217, 1222 (9th Cir. 1980).  This borrowing

27  principal applies to federal common law actions.  <u>See</u> <u>Oneida County, N.Y. v.</u>

28  <u>Oneida Indian Nation of New York State</u>, 470 U.S. 226, 240, 105 S. Ct. 1245, 84

Mitchell
Silberberg &
Knupp LLP

1867882.1

1   L. Ed. 2d 169 (1985).  However, federal courts borrow only the statute of

2   limitations time period from state law, and look to federal law to determine when a

3   cause of action accrues.  See TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.

4   1999).

5           a.    **IPG's Claims Arose In The District of Columbia,**

6                 **Thus Its Three Year Statute of Limitations Applies.**

7           Here, IPG's causes of action to void and partially rescind the Contract

8   clearly arose in the District of Columbia, and should be subject to that

9   jurisdiction's three year statute of limitations for actions based on a contract, or

10  alternatively, its three year statute of limitations for any claim for which no other

11  statute specifies a limitations period.  See D.C. Code 1973 § 12-301(7)-(8).[9]  A

12  host of factors indicate that IPG's causes of action arose in the District of

13  Columbia.  First, the Librarian and the Office both are located in the District of

14  Columbia.  RJN Exhs. A, C-M (address at top of Orders).  Second, the Appellate

15  Cases and the underlying royalty distribution proceeding, resulting in the Agency

16  Determination, all took place in the District of Columbia.  See Compl. at  ¶¶ 1, 3.

17  Third, the mediator who brokered the Contract was also located in the District of

18  Columbia.  See Compl. at ¶ 6 and Compl. Exh. B at 1.  Finally, the choice of law

19  provision within the Contract itself dictates that the laws of the District of

20  Columbia should apply.  See Compl. at ¶¶ 2-3; see also Olaniran Dec., Exh. A

21  (Contract), at Part 1, p. 7 at ¶ 10(d) and Part 2, p. 2 at ¶ 5(c).  All of these factors

22  establish that the causes of action arose in the District of Columbia and its three

23  year statute of limitations should be adopted as the relevant statute of limitations

24  for any action related to the Contract.

25

26  _____

27  [9] District of Columbia courts have held that the three year statute of limitations
    applies to an action for rescission of a contract.  See Doolin v. Envtl. Power, Ltd.,
28  360 A.2d 493, 496 (D.C. 1976).

Mitchell
Silberberg &
Knupp LLP

1867882.1

DB04/762224.0063/458559.5

1          **b.    IPG's Claims Accrued No Later Than March 31,**

2                  **2004, And Thus Are Barred By The District of**

3                  **Columbia's Three Year Statute of Limitations.**

4          Federal law dictates that a federal cause of action "accrues when the plaintiff

5    knows or has reason to know of the injury which is the basis for the action." See

6    TwoRivers, 174 F.3d at 991.  Here, IPG claims that the Contract should be

7    declared invalid as it was unauthorized, and that it should be partially rescinded

8    because certain provisions of the Contract were uncertain and lacked consideration.

9    Compl. at ¶¶ 9, 24-29.  IPG's entities are the Plaintiffs in the instant action.

10   Compl. at pp. 1-2.  Both causes of action, therefore, accrued when the IPG entities

11   knew or should have known that Marian Oshita entered the Contract on behalf of

12   IPG.

13         Initially, it is clear from the Complaint that Ms. Galaz and her attorneys

14   were aware of the Appellate Cases and IPG's participation in ongoing settlement

15   negotiations regarding those cases as early as August 8, 2003,  see Compl. at ¶¶ 6-

16   7, Compl. Exh. B at 1; see also Compl. Exh. A at 1 (referencing case numbers for

17   the Appellate Cases).  Thus, as early as August 8, 2003, IPG knew or should have

18   known that settlement of the Appellate Cases was imminent.[10]  IPG was aware of

19   the Contract no later than March 31, 2004.  See Olaniran Dec., Exh. A (Contract)

20   Part 1, p. 1 and Part 2, p.1.  The Complaint demonstrates that Marian Oshita, an

21   IPG interest holder, and Jeffrey Bogert, counsel for IPG, were active participants in

22   the settlement negotiations which led to the Contract.  Compl. at ¶ 5.  Indeed, Ms.

23   Oshita was a signatory to the Contract, which was executed on March 31, 2004.

24

25   [10] Despite Ms. Galaz's stated awareness of the Appellate Cases and the ongoing

26   settlement negotiations, see Compl. at ¶¶ 5-9 and Compl. Exhs. A and B, she failed
     to file a separate entry of appearance on behalf of IPG in the District of Columbia

27   Court of Appeals, and failed to object to MPAA, IPG, and the Librarian's joint
     motion to dismiss the Appellate Cases due to the settlement.

28

Mitchell
Silberberg &
Knupp LLP

1867882.1

1    Olaniran Dec., Exh. A (Contract), Part 1, p. 8 and Part 2, p. 2.  Therefore,

2    representatives of the IPG entities knew, or should have known, that Marian Oshita

3    entered the Contract on behalf of IPG on March 31, 2004.

4          Further, assuming *arguendo* that IPG did not learn of the March 31, 2004

5    execution on that date, the Contract was made a matter of public record during

6    April 2004, both in orders issued in the District of Columbia Court of Appeals

7    dismissing the Appellate Cases, and also before the Office.  RJN Exh. B (D.C. Cir.

8    Order in Case Nos. 02-1033 and 02-1040 (April 21, 2004)); RJN Exh. A (April 2,

9    2004 Order).  Therefore, the IPG entities knew, or should have known, that Ms.

10   Oshita had executed the Contract as early as March 31, 2004, and by no later than

11   April 21, 2004.[11]

12         Even if IPG were to somehow successfully feign ignorance of the

13   negotiations or the execution of the Contract, it cannot deny that the Contract was

14   provided to it by subpoena no later than December 4, 2004.  A letter attached to the

15   Complaint as Exhibit D makes specific reference to the fact that a copy of the

16   Contract and other documents related to performance of the Contract were

17   provided to Ms. Galaz and her attorneys on December 4, 2004, in response to a

18   subpoena served on MPAA.  See Compl. Exh. D at 1.  Given that both Ms. Galaz

19   and the IPG entities knew or should have known of the facts giving rise to its

20   claims here no later than December 4, 2004, IPG's claims are outside the District

21   of Columbia's three year statute of limitations, and should be dismissed.

22

23

24

25

_____

[11] The Contract was also specifically referenced in the Federal Register on April
26   30, 2004, see 69 Fed. Reg. at 23822, placing IPG on constructive notice of the
27   settlement as of that date.  See Shiny Rock Min. Corp. v. United States, 906 F.2d
     1362, 1364-65 (9th Cir. 1990).

28

2.    **IPG's Claim For Declaratory Relief Is Not Supported By Documents Referenced In The Complaint.**

The Court may dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) when the facts alleged in the complaint, even if accepted as true, are insufficient to state a claim upon which relief can be granted.  <u>Marder</u>, 450 F.3d at 448.  However, in evaluating the Complaint, the Court is not required to accept as true "conclusory allegations that are contradicted by documents referred to in the complaint."  <u>Steckman</u>, 143 F.3d at 1295-96.  Here, two allegations central to IPG's claims for declaratory relief are negated by documents referenced in the Complaint.  Therefore, even if the Court considers IPG's Complaint in a light most favorable to IPG, IPG has still failed to allege facts which indicate that IPG is entitled to a legal remedy as to Count I of its Complaint.

a.    **The Contract Contradicts IPG's Claim That MPAA Was Aware That Ms. Oshita Lacked Authority.**

IPG asserts that the Contract is void *ab initio* because MPAA was aware, at the time the Contract was executed, that Ms. Oshita and Mr. Bogert lacked authority to bind IPG.  <u>See</u> Compl. at ¶¶ 5-9.  However, when those allegations in the Complaint and the documents proffered to support them are considered together, there should be no dispute that IPG has failed to allege facts demonstrating that MPAA had notice of Ms. Oshita and Mr. Bogert's lack of authority.

IPG claims that Ms. Galaz placed MPAA on notice, prior to the Contract's execution, that "neither Ms. Oshita nor Mr. Bogert had authority to enter a settlement agreement with MPAA."  Compl. at ¶ 9.  However, as the letter IPG attached to the Complaint demonstrates, on November 3, 2003, IPG notified MPAA and the Librarian <u>only</u> that Ms. Oshita and Mr. Bogert "lack[ed] the authority to <u>unilaterally</u> bind IPG to any settlement in this matter."  Compl. Exh. A

at 1 (emphasis added).  In this same letter, Ms. Galaz and her attorneys unequivocally indicate that Ms. Oshita and Mr. Bogert <u>can</u> properly enter a settlement agreement with MPAA and the Librarian on IPG's behalf "<u>if Ms. Galaz provides her authorization thereto</u>."  Compl. Exh. A at 2 (emphasis in original).

As assurance that Ms. Oshita and Mr. Bogert had the necessary authority to enter the Contract on IPG's behalf, Mr. Bogert provided MPAA and the Librarian, as a part of the Contract, a letter certifying that "[t]he execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations."  Olaniran Dec., Exh. A (Contract), Part 1 at Attachment A.  This letter of certification is dated March 31, 2004, the same date that the Contract was executed by the parties, and was incorporated into the Contract by reference.  Olaniran Dec., Exh. A (Contract) Part 1, p. 6-7 at ¶¶ 10(a), 10(c) and Attachment A.  In addition, all signatories to the Contract represented and warranted that they had "received all consents, power and authority required to execute the Agreement."  Olaniran Dec., Exh. A (Contract), Part 1, p. 6 at ¶ 10(a).

Based on these documents, it is clear that MPAA and the Librarian were <u>not</u> on notice that Ms. Oshita and Mr. Bogert lacked authority to enter the Contract.  Instead, prior to signing the Contract, MPAA and the Librarian received affirmative assurance from IPG's representatives that Ms. Oshita and Mr. Bogert had obtained corporate authorization to execute, deliver, and perform the Contract on IPG's behalf.  Olaniran Dec., Exh. A (Contract), Part 1, p. 6 at ¶ 10(a) and Attachment A.  Because notice to MPAA is a necessary element of IPG's claim for declaratory relief, <u>see</u> Compl. at ¶¶ 5, 9, IPG's allegations are insufficient to state a claim as to Count I of the Complaint, and must be dismissed.

1

**b.     The Judgment On Which IPG Relies Does Not**

2

**Support IPG's Allegations That Ms. Oshita Lacked**

3

**Authority At The Time The Contract Was Entered.**

4

When a plaintiff makes conclusory allegations without providing factual

5

support, the allegations alone are insufficient to state a claim on which relief can be

6

granted.  Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).  In Order to

7

establish that the Contract is void, IPG must also allege facts demonstrating that

8

Ms. Oshita did, in fact, lack authority to bind IPG to the Contract on the date it was

9

entered.  To attempt to make this showing, IPG has relied principally on the

10

January 26, 2005 Judgment on Jury Verdict entered by the Los Angeles Superior

11

Court in the Galaz v. Oshita case ("Judgment"), which awarded a 75% ownership

12

interest in IPG to Lisa Galaz.  See Compl. at ¶ 8 and Compl. Exh. C.  The

13

Judgment, however fails to support IPG's allegations because it (1) is silent as to

14

Ms. Oshita's interest in the IPG entities at the time that IPG entered the Contract

15

and (2) is silent regarding Ms. Oshita's authority to bind IPG to the Contract.

16

Contrary to IPG's claim, the Judgment does not establish Ms. Galaz's

17

majority ownership of IPG at the time the Contract was executed.  See Compl. at ¶

18

8.  That Judgment is silent as to Ms. Oshita's interest at the time the Contract was

19

entered, as the Judgment is effective only "from the date of entry" – January 26,

20

2005.  Compl. Exh. C at p. 8, ¶ 2.  As such, it does not support IPG's allegations

21

that Ms. Oshita held only a minority interest in IPG on March 31, 2004 (when the

22

Contract was executed), as IPG avers.  Compl. at ¶ 8.  Instead, by its terms, the

23

Judgment indicates that Ms. Galaz did not acquire a controlling interest in the IPG

24

entities until January 26, 2005.  See Compl. Exh. C at p. 8, ¶ 2.

25

Similarly, IPG's reliance on the Judgment to show that Ms. Oshita lacked

26

authority to take any action on behalf of the IPG entities, including to execute the

27

Contract, see Compl. at ¶¶ 8-9, is misplaced.  As with Ms. Oshita's interest holding

28

in IPG when the Contract was executed, the Judgment is silent as to Ms. Oshita's

Mitchell
Silberberg &
Knupp LLP
1867882.1

DB04/762224.0063/458559.5

1   authority to bind IPG to the Contract, or to take any action on behalf of the IPG

2   entities, prior to its January 26, 2005 effective date.  See Compl. Exh. C at p. 8, ¶

3   2.  Indeed, the Judgment confirms that Ms. Oshita not only maintained an interest

4   in IPG at the time that the Contract was entered, but that she continued to maintain

5   at least at 25% interest in the IPG entities going forward.  See id.  Thus, IPG has

6   provided no factual support for its allegation that Ms. Oshita lacked authority to

7   bind IPG to the Contract on the date it was entered.

8        Thus, taken together, IPG's affirmative assurance that all requisite actions

9   were duly authorized and its failed evidentiary support do not support IPG's

10  request for declaratory relief.  As a result, IPG's Complaint fails to state a claim as

11  to Count I, and must be dismissed.

12  **VI.    CONCLUSION**

13       For the foregoing reasons, MPAA respectfully requests that this Court enter

14  an order dismissing the instant action pursuant to Federal Rules of Civil Procedure

15  12(b)(7) and 12(b)(6).

16  DATED: June 13, 2008                  GREGORY O. OLANIRAN
                                          LUCY HOLMES PLOVNICK
17                                        STINSON MORRISON HECKER LLP

18
                                          KARIN G. PAGNANELLI
19                                        MARC E. MAYER
                                          MITCHELL SILBERBERG & KNUPP LLP
20

21
                                          By: /s/ Marc E. Mayer
22                                            MARC E. MAYER
                                              Attorneys for Defendant
23                                            MOTION PICTURE ASSOCIATION
                                              OF AMERICA, INC.
24

25

26

27

Mitchell
Silberberg &
Knupp LLP  28

1867882.1

1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:   (310) 312-2000
5  Facsimile:   (310) 312-3100

6  GREGORY O. OLANIRAN (*pro hac vice*)
   LUCY HOLMES PLOVNICK (*pro hac vice*)
7  STINSON MORRISON HECKER LLP
   1150 18th Street NW, Suite 800
8  Washington, D.C. 20036-3816
   Telephone:   (202) 785-9100
9  Facsimile:   (202) 785-9163

10 Attorneys for Defendant
   MOTION PICTURE ASSOCIATION OF
11 AMERICA, INC.

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15 WORLDWIDE SUBSIDY GROUP,           CASE NO.  CV08-3701 FMC (MANx)
   LLC, a Texas Limited Liability
16 Company, dba INDEPENDENT           The Honorable Florence-Marie Cooper
   PRODUCERS GROUP; WORLDWIDE
17 SUBSIDY GROUP, LLC, a California    **DECLARATION OF GREGORY O.**
   Limited Liability Company, formerly **OLANIRAN IN SUPPORT OF**
18 named ARTIST COLLECTIONS           **DEFENDANT MOTION PICTURE**
   GROUP, LLC,                        **ASSOCIATION OF AMERICA,**
19                                    **INC.'S (1) MOTION TO DISMISS**
                Plaintiffs,           **AND (2) MOTION TO TRANSFER**
20
        v.
21                                    DATE:     July 14, 2008
   MOTION PICTURE ASSOCIATION         TIME:     10:00 A.M.
22 OF AMERICA, INC., a New York       CTRM.:    750, Roybal Federal Building
   Corporation doing business in
23 California; and DOES 1 through 10,
   inclusive,
24
                Defendants.
25

26

27

28

1

## <u>DECLARATION OF GREGORY O. OLANIRAN</u>

2

3         I, GREGORY O. OLANIRAN, declare:

4

5         1.      I am an attorney at law duly licensed to practice law in the District of

6    Columbia and Maryland.  I am a partner with the law firm of Stinson Morrison

7    Hecker LLP, attorneys of record for Defendant MOTION PICTURE

8    ASSOCIATION OF AMERICA, INC. ("MPAA").  My office is located at 1150

9    18th Street, NW, Suite 800, Washington, D.C. 20036.  I have personal knowledge

10   of the following facts and, if called and sworn as a witness, could and would

11   competently testify thereto.

12

13        2.      Attached as Exhibit A, and by this reference incorporated herein, is a

14   true and correct copy of the two part, three party settlement agreement between

15   Worldwide Subsidy Group, LLC dba Independent Producers Group ("IPG"),

16   MPAA, and the United States Librarian of Congress ("Librarian") which IPG

17   seeks to void or partially rescind in its Complaint.  <u>See</u> Compl. at ¶¶ 1-4, 12-16,

18   21-29.

19

20        I declare under penalty of perjury under the laws of the United States of

21   America that the foregoing is true and correct.

22   Executed this 13th day of June, 2008, at Washington, D.C.

23

24   _____

25                      Gregory O. Olaniran

26

27

# EXHIBIT A

Exhibit A
Page 2

CONFIDENTIAL

## SETTLEMENT AGREEMENT – PART 1

This·Settlement Agreement-Part 1 is made as of this 31st day of March 2004 by and among Worldwide Subsidy Group, doing business as Independent Producers Group (hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter "MPAA").

WHEREAS, IPG and MPAA are parties to appellate proceedings consolidated before the United States Court of Appeals for the District of Columbia Circuit, Case No. 02-1033 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these appellate proceedings solely in order to avoid the costs, direct and indirect, that would be incurred by each of the parties in the future and the uncertainties of the current and anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements hereinafter contained and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Scope of Settlement</u>.  This Agreement settles all Phase II issues, known and unknown, between IPG and MPAA for the 1997, 1998 and 1999 Cable Royalty Funds, and the 1997, 1998 and 1999 Satellite Royalty Funds.

2.    <u>Royalty Payment</u>:  IPG shall receive payments as follows:

Exhibit A

Page 3

CONFIDENTIAL

a. <u>Current payment</u>:  IPG shall receive the amount of $        as

payment in full for its Phase II share of royalties distributed to the

Program Suppliers category from the 1997 Cable Royalty Fund for

all of the programs belonging to Litton Syndications, Inc. and certain

IPG costs and expenses at execution of this Agreement.

REDACTED

b. <u>Future payments</u>:  IPG's royalties for pending 1997 Satellite and all

1998 and 1999 claims shall be calculated using the same

methodology, and shall be paid in the same time frame, as MPAA-

represented claimants.

c. <u>Transmittal of payments</u>:  All payments to IPG shall be made

through IPG counsel, Jeffrey Bogert Trust Account.

3.     <u>Documentation</u>:  The documentation submitted by IPG for 1997 Satellite

and all 1998 and 1999 claims shall demonstrate with sufficient

particularity that:

a. A valid and timely claim for royalties was properly filed with the

Copyright Office; and

b. IPG has a valid representation agreement with the claimant and the

claimant is entitled to participate in royalties to be distributed.

4.     <u>Initial determination</u>:  Within 30 days of the execution of this Agreement,

IPG shall notify MPAA of its 1997 Satellite claims and its 1998 and 1999

Cable and Satellite claims and shall deliver the documentation with

Exhibit *A*

Page 4

CONFIDENTIAL

respect to those claims. Within 30 days of the receipt of IPG's notice, MPAA shall either notify IPG in writing that it accepts or rejects some or all of IPG's 1997 Satellite and 1998 and 1999 Cable and Satellite claims or notify IPG in writing of any deficiencies concerning such documentation (including specific particulars in which supplementation is sought). Upon receipt of MPAA's initial determination, IPG shall, within 30 days, notify MPAA of its election to accept or reject MPAA's determination or to supplement its documentation to MPAA.

a. Acceptance: If IPG accepts MPAA's initial determination, MPAA shall pay IPG on the same basis and in the same time-frame as it makes any payment after the date of this Agreement to other MPAA-represented claimants for 1997 Satellite and 1998 and 1999 Cable and Satellite claims. If MPAA has made all payments to all other MPAA-represented claimants for a year in a particular claim category, IPG shall be paid its claims for the year within that category within 30 days.

b. Supplementation: If IPG elects to supplement its documentation, it shall re-submit its documentation or parts of its documentation to MPAA within 30 days of its notice of election to MPAA, and the provisions of this paragraph 4 shall be followed with respect to the re-submitted documentation.



Exhibit A

Page 5

CONFIDENTIAL

c.  Rejection:  If IPG rejects MPAA's initial determination, IPG may

    proceed as provided in paragraph 5 below.

5.      Arbitration:  Disputes shall be resolved solely through binding arbitration.

a.  An arbitrator shall be agreed upon by the parties with the execution

    of this Agreement.  If the parties cannot agree, the arbitrator shall be

    named by the American Arbitration Association ("AAA").

b.  The arbitration shall be conducted in accordance with the Expedited

    Procedures of the Commercial Arbitration Rules and Mediation

    Procedures of the American Arbitration Association, except as

    provided in this Agreement, and shall be completed within 30 days

    after one of the parties notifies the arbitrator that it is ready to

    proceed.

c.  The venue for the arbitration shall be set by the arbitrator or shall be

    Washington, D.C.

d.  The hearing for the arbitration shall be conducted solely by

    telephone conference call with the parties and the arbitrator, after

    submission of documents, and not by personal appearance, unless

    the parties agree otherwise.

e.  Any arbitration shall be conducted confidentially and shall not be

    disclosed or relied upon in any other proceeding, except a

    subsequent arbitration under this Agreement.

Exhibit *A*

Page *6*

CONFIDENTIAL

f.  In the event that MPAA receives conflicting claims for royalties for a particular title, MPAA shall notify IPG of the conflicting claim, provide available documentation, and proceed with the arbitration. In the event IPG is determined to be the valid claimant entitled to royalty, (i) if the royalty was paid by MPAA to another party prior to receiving IPG's claim under this Agreement, IPG shall seek its royalty from the party who has been paid and not from MPAA; and (ii) if the royalty has not yet been paid by MPAA, MPAA shall continue to hold the royalty until the conflict with the other party is resolved by settlement or a final determination of rights by a court of competent jurisdiction.

6.  <u>Confidentiality</u>:  This Agreement and its terms shall be kept confidential and not disclosed to any person or entity except (a) as may be required by law; (b) as necessary to resolve disputes in accordance with paragraph 5; (c) to the parties' employees, accountants, attorneys, or auditors who have a need to know for purposes of administering the distribution of royalty funds; (d) as necessary to respond to inquiries from rights holders (including IPG) regarding the status and payment of the rights holder's claims; or (e) with the written consent of the parties.

7.  <u>No precedent</u>:  No party shall be deemed to have accepted as precedent for future proceedings before any Copyright Arbitration Royalty Panel or approved, accepted, or agreed to or consented to any principle underlying (or which may be asserted to underlie) this Agreement, and the Librarian

Exhibit A

Page 7

CONFIDENTIAL

of Congress has issued, concurrent with this Agreement, the statement

attached as Appendix A to Settlement Agreement-Part 2.

8.     <u>No participation</u>:  Raul Galaz shall not participate, directly or indirectly,

in any distribution of proceeds under this Agreement.  In the event such

distribution occurs, in any amount, the entire amount of the proceeds paid

by MPAA to IPG shall be forfeited by IPG and repaid to MPAA within

30 days.

9.     <u>Notices</u>:  Notices shall be deemed to have been delivered when delivered

by hand, by delivery service, or mailed by certified or registered mail

postage prepaid, addressed as follows:

a. To IPG:  c/o Jeffrey Bogert, 815 Moraga Drive, Los Angeles, CA

90049-1676

b. To MPAA:  c/o Michael E. Tucci and Gregory O. Olaniran, Stinson

Morrison Hecker LLP, 1150 18th Street N.W., Suite 800,

Washington, D.C. 20036-3816

10.     General Provisions:

a. By signing this Agreement, each party represents and warrants that it

has received all consents, power and authority required to execute

the Agreement and that this Agreement is enforceable against it in

accordance with its terms, and counsel for each party has delivered

the letter attached as Appendix A.

Exhibit A

Page 9

CONFIDENTIAL

b.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

c.  This Agreement and the Appendix hereto contain the entire agreement among the parties with respect to the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds and supersedes all previous negotiations, commitments, writings, and proceedings.

d.  This Agreement shall be governed by the laws of the District of Columbia.

e.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

f.  This Agreement shall take effect only upon execution by the parties of the Settlement Agreement-Part 2 which includes provisions with respect to IPG, MPAA, and the Librarian of Congress.

Exhibit  A
Page  9

CONFIDENTIAL

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.

INDEPENDENT PRODUCERS GROUP

By _____
   Authorized representative

MOTION PICTURE ASSOCIATION OF AMERICA

By _____
   Authorized representative

Exhibit A

Page 10

LAW OFFICES OF
### JEFFREY C. BOGERT
815 Moraga Drive
## LOS ANGELES, CALIFORNIA 90049-1676
Facsimile: (310) 476-2135
e-mail: jcblaw1@aol.com

Jeffrey C. Bogert, Esq.

(310) 476-4625

March 31, 2004

Ann M. Murphy, Esq.
U.S. Department of Justice
Civil Division, Appellate
601 D Street N.W., Suite 800
Washington, D.C. 20530-0001

Michael E. Tucci, Esq.
Stinson Morrison Hecker LLP
1150 18th Street, NW
Suite 800
Washington, DC 20036-3816

### ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Ms. Murphy and Mr. Tucci:

I am a member of the state Bar of California and further appear before the Bar of the District Court of Appeals in the District of Columbia. I have acted as counsel to Independent Producers Group ("IPG") in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

IPG is validly existing and in good standing under the laws of the state of Texas.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

Respectfully,

Jeffrey C. Bogert

cc:     Deanne Siemer, Esq.

Exhibit A
Page 11

**STINSON**

**MORRISON**

**HECKER** LLP

Michael E. Tucci

mtucci@stinsonmoheck.com

www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

April 1, 2004

Jeffrey C. Bogert, Esq.
Law Offices of Jeffrey C. Bogert
815 Moraga Drive
Los Angeles, CA 90049-1676

Anne Murphy, Esq.
Attorney, Appellate Staff, Civil Division
Department of Justice
601 "D" Street, N.W.
Washington, D.C. 20530-0001

## ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Mr. Bogert and Ms. Murphy:

I am a member of the bars of the District of Columbia, Tennessee and Virginia and have acted as counsel to the Motion Picture Association of America, Inc. in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

Motion Picture Association of America, Inc. is validly existing and in good standing under the laws of New York.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

Exhibit A

Page 12

Jeffrey C. Bogert, Esq.
Anne Murphy, Esq.
April 1, 2004
Page 2

Best regards,

STINSON MORRISON HECKER LLP

Michael E. Tucci

MET:cls

WDCDOCS 136550v1

## SETTLEMENT AGREEMENT – PART 2

This Settlement Agreement-Part 2 is made as of this 31st day of March 2004 by and among Worldwide Subsidy Group, doing business as Independent Producers Group (hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter "MPAA"), and the Librarian of Congress.

WHEREAS, IPG, MPAA, and the Librarian of Congress are parties to appellate proceedings consolidated before the United States Court of Appeals for the District of Columbia Circuit, Case No. 02-1035 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these appellate proceedings solely in order to avoid the costs, direct and indirect, that would be incurred by each of the parties in the future and the uncertainties of the current and anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements hereinafter contained and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Scope of Settlement</u>. This Agreement settles all issues between and among the parties raised in the appellate proceeding.

2. <u>Withdrawal of Notice of Intent</u>. IPG agrees to withdraw its notice(s) of intent to participate in the proceeding to distribute the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.



Exhibit A

Page 14

1

3.  <u>Dismissal of the appeal</u>:  The parties shall promptly move to dismiss the appeal in Case No. 02-1035 and Case No. 02-1040.

4.  <u>Record</u>:  The Librarian of Congress shall issue, subsequent to the dismissal of the appeals in Case No. 02-1035 and Case No. 02-1040, the Order attached as Appendix A.

5.  <u>General Provisions</u>:

   a.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

   b.  This Agreement and the Appendix hereto contain the entire agreement to which the Librarian of Congress is a party.

   c.  This Agreement shall be governed by the laws of the District of Columbia.

   d.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

This Agreement shall not come into effect separately from the Settlement Agreement-Part 1 which includes provisions with respect to IPG and MPAA.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.

INDEPENDENT PRODUCERS GROUP

By _____
      Authorized representative

2

MOTION PICTURE ASSOCIATION OF AMERICA

By _____
        Authorized representative

THE LIBRARIAN OF CONGRESS

By _____
        Authorized representative

3

Exhibit A

Page 16

APPENDIX A

| In the Matter of | } | |
| --- | --- | --- |
| | } | |
| Distribution of the 1993, 1994, 1995, | } | Docket No. 2000-2 CARP CD 93-97 |
| 1996 and 1997 Cable Royalty Funds | } | |
| | } | |

## RECOMMENDATION AND ORDER

On December 26, 2001, the Library published an Order announcing the Librarian of Congress's decision to reject the initial and revised reports of the Copyright Arbitration Royalty Panel (``CARP'') in this Phase II proceeding in the syndicated programming category for distribution of the 1997 cable royalty funds.  The Order identified a number of flaws in the cases presented by both IPG and MPAA and in the determination made by the Copyright Arbitration Royalty Panel ("CARP"), and concluded that a distribution of royalties could not be made based on the current record. Accordingly, the Librarian remanded the matter for a new proceeding before a new CARP.  Order, 66 FR 66433 (Dec. 26, 2001).

Both parties, Independent Producers Group ("IPG") and The Motion Picture Association of America, Inc. ("MPAA") petitioned the United States Court of Appeals for the District of Columbia Circuit to review the Librarian's determination.  Motion Picture Association of America v. Librarian of Congress, No. 02-1033; Independent Producers Group v. Librarian of Congress, 02-1040.

The parties have now settled this dispute, making a remand for new proceedings unnecessary and making it possible to distribute the remaining funds that were in dispute. As part of the settlement, it has been agreed that the December 26, 2001 Order shall be vacated.

Because the parties have settled their dispute, and therefore there is no reason to remand the matter for further proceedings before a new CARP, the Register recommends that the December 26, 2001 Order be vacated as moot.  Further, in light of the flaws in the determination made by the CARP as identified in the December 26, 2001 Order, the CARP's initial and final determinations should also be vacated, to make clear that those determinations have no precedential value.  The recommendation that the December 26, 2001 Order be vacated is made in order to facilitate the settlement and because the matter is now moot; this recommendation should not be construed as a repudiation of the reasoning in the December 26, 2001 Recommendation and Order.

## Order of the Librarian

Having duly considered the recommendation of the Register of Copyrights the Librarian accepts the recommendation in its entirety and orders that the December 26,

Exhibit A
Page 17

2001 Order, the April 16, 2001 initial Report of the CARP, and the June 20, 2001 revised
Report of the CARP are hereby VACATED as moot.

Dated: _____, 2004


_____

Marybeth Peters
Register of Copyrights


Approved by:



_____
James H. Billington
Librarian of Congress

1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   WORLDWIDE SUBSIDY GROUP,<br>LLC, a Texas Limited Liability<br>12   Company, dba INDEPENDENT<br>PRODUCERS GROUP; WORLDWIDE<br>13   SUBSIDY GROUP, LLC, a California<br>Limited Liability Company, formerly<br>14   named ARTIST COLLECTIONS<br>GROUP, LLC,<br>15<br>            Plaintiffs,<br>16<br>        v.<br>17<br>MOTION PICTURE ASSOCIATION<br>18   OF AMERICA, INC., a New York<br>Corporation doing business in<br>19   California; and DOES 1 through 10,<br>inclusive,<br>20<br>            Defendants.<br>21 | CASE NO.  CV08-3701 FMC (MANx)<br><br>The Honorable Florence-Marie Cooper<br><br>**[PROPOSED] ORDER GRANTING<br>DEFENDANT MOTION PICTURE<br>ASSOCIATION OF AMERICA,<br>INC.'S MOTION TO DISMISS**<br><br>CTRM.:   750 |

22
23
24
25
26
27
28

1

## <u>**ORDER**</u>

2

3      The Court has read and considered all papers filed in support of and in

4  opposition to Defendant Motion Picture Association of America, Inc.'s Motion to

5  Dismiss (the "Motion").

6

7      The Motion is granted.  This action is dismissed with prejudice.

8

9      **IT IS SO ORDERED.**

10

11  DATED: _____

12                                        _____
                                         The Honorable Florence-Marie Cooper
                                         United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1868208.1

1