KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MARC E. MAYER (SBN 190969)
mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
Facsimile:   (310) 312-3100

GREGORY O. OLANIRAN (*pro hac vice*)
LUCY HOLMES PLOVNICK (*pro hac vice*)
STINSON MORRISON HECKER LLP
1150 18th Street NW, Suite 800
Washington, D.C. 20036-3816
Telephone:  (202) 785-9100
Facsimile:   (202) 785-9163

Attorneys for Defendant
MOTION PICTURE ASSOCIATION OF
AMERICA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP; WORLDWIDE SUBSIDY GROUP, LLC, a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  CV08-3701 FMC (MANx)<br><br>The Honorable Florence-Marie Cooper<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT MOTION PICTURE ASSOCIATION OF AMERICA, INC TO TRANSFER**<br><br>[Declarations of Michael E. Tucci, Marsha E. Kessler, and Gregory O. Olaniran and Request for Judicial Notice in Support Thereof Filed Concurrently Herewith]<br><br>DATE:   July 14, 2008<br>TIME:   10:00 A.M.<br>CTRM:   750 Roybal Federal Building |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on July 14, 2008, in the courtroom of The Honorable Florence-Marie Cooper of the United States District Court for the Central District of California, Roybal Federal Building, 255 East Temple Street, Los Angeles, CA 90012, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant, Motion Picture Association of America, Inc. ("MPAA"), shall, and hereby does, move the Court pursuant to transfer this action pursuant to 28 U.S.C. § 1404 to the United States District Court for the District of Columbia.

This Motion is made on the following grounds:

1.    This cause of action "might have been brought" in the District of Columbia District pursuant to 28 U.S.C. § 1391(b).  See Hoffman v. Blaski, 363 U.S. 335, 343-44, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

2.    The majority of the factors laid out in Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) support the transfer of this case to the District of Columbia District.

This Motion is and will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael E. Tucci, the Declaration of Marsha E. Kessler, the Declaration of Gregory O. Olaniran, Defendant's Request for Judicial Notice, any additional memoranda in support thereof, and any argument presented at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 6, 2008.

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

1

1    DATED: June 13, 2008                    GREGORY O. OLANIRAN
                                             LUCY HOLMES PLOVNICK
2                                            STINSON MORRISON HECKER LLP

3
                                             KARIN G. PAGNANELLI
4                                            MARC E. MAYER
                                             MITCHELL SILBERBERG & KNUPP LLP
5

6
                                             By: /s/ Marc E. Mayer
7                                               MARC E. MAYER
                                                Attorneys for Defendant
8                                               MOTION PICTURE ASSOCIATION
                                                OF AMERICA, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

2

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I.    INTRODUCTION ...........................................................................................1

II.   THE COMPULSORY LICENSE STATUTORY SCHEME ........................2

III.  THE PARTIES ...............................................................................................3

IV.   STATEMENT OF FACTS .............................................................................3

V.    ARGUMENT ..................................................................................................6

    A.    The Instant Cause of Action "Might Have Been Brought" in the District of Columbia District...................................................6

    B.    The Majority Of The "Convenience Factors" Favor Transfer to the District of Columbia District................................8

        1.    The Contract Was Negotiated And Executed In The District of Columbia. ..................................................8

        2.    Plaintiffs' Cause of Action Has More Contacts With The District of Columbia District Than The Central District of California. ...................................................9

        3.    Non-Party Witnesses And Sources Of Proof Relevant To This Matter Are Located In The District of Columbia. ............................................................10

        4.    Because the Contract Is Governed By Federal Common Law, The District for District of Columbia Is Equally Familiar With the Governing Law In This Case....................................................................11

        5.    Costs Of Litigation Will Be Substantially Increased If This Case Is Not Transferred..............................12

VI.   CONCLUSION .............................................................................................12

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

i

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

**CASES**

5

Boyle v. United Tech. Corp.,
    487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) .................................. 12

6

7

Gates Learjet Corp. v. Jensen,
    743 F.2d 1325 (9th Cir. 1984).................................................................................. 10

8

9

Hatch v. Reliance Ins. Co.,
    758 F.2d 409 (9th Cir. 1985) .................................................................................... 6

10

11

Hoffman v. Blaski,
    363 U.S. 335, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960) ........................................ 6

12

13

Jones v. GNC Franchising, Inc.,
    211 F.3d 495 (9th Cir. 2000) ........................................................................... 1, 6, 8

14

15

Nat'l Ass'n of Broadcasters v. Librarian of Congress,
    146 F.3d 907 (D.C. Cir. 1998) ................................................................................. 2

16

17

Saleh v. Titan Corp.,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) .................................................................. 10

18

19

Stewart Org., Inc. v. Ricoh Corp.,
    487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ......................................... 1

20

21

United States v. ITT Cont'l Baking Co.,
    420 U.S. 223, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975) .......................................... 4

22

23

Van Dusen v. Barrack,
    376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ........................................ 12

24

25

**PROCEDURAL RULES**

26

27

Federal Rule of Civil Procedure 12(b)(6)................................................................... 1

28

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

ii

Federal Rule of Civil Procedure 12(b)(7) ................................................................. 1

Federal Rule of Civil Procedure 45(b)(2) ............................................................... 11

**STATUTES**

17 U.S.C. § 111 (2006) ............................................................................................ 2

17 U.S.C. § 119 (2006) ............................................................................................ 2

17 U.S.C. § 801 (1995) ............................................................................................ 2

17 U.S.C. § 801 (2004) ............................................................................................ 3

17 U.S.C. § 802 (1995) ............................................................................................ 2

28 U.S.C. § 1391 (2002) ...................................................................................... 6, 7

28 U.S.C. § 1404 (1996) ............................................................................... 1, 8, 12

P. L. 108-419 (2004) ............................................................................................... 2

**OTHER AUTHORITIES**

65 Fed. Reg. 65335 (2000) ..................................................................................... 3

66 Fed. Reg. 66433 (2001) .................................................................................. 4, 7

69 Fed. Reg. 23821 (2004) .................................................................................. 5, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DB04/762224.0063/458555.3

1
2

# MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.   INTRODUCTION

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Simultaneous with the filing of this Motion to Transfer, Defendant has filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6).  In the event that the Court does not grant Defendant's Motion to Dismiss, the Court should transfer this action to the District of the District of Columbia pursuant to 28 U.S.C. § 1404(a) (1996).  Section 1404(a) permits the Court to transfer this cause of action to any other district or division where the suit might have been brought "[f]or the convenience of parties and witnesses" or "in the interests of justice."  Under section 1404(a), a district court has "broad discretion" to transfer a case.  See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  When evaluating a section 1404(a) motion, the court should make a "flexible and individualized analysis" and "weigh in the balance a number of case-specific factors" to determine whether the proposed transferee court would be a more convenient forum for litigation.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).  As discussed herein, these factors support the requested transfer.

19
20
21
22
23
24
25
26
27

This is an action for a judicial declaration that a three party settlement agreement between Plaintiffs, Defendant, and the United States Librarian of Congress ("Librarian") is void, and also for rescission of the settlement agreement.  Compl. at ¶¶ 21-29.  The settlement agreement is hereinafter referred to as the "Contract."  See Olaniran Dec., Exh. A (Contract).  Part 1 of the Contract is between Plaintiffs and Defendant.  Part 2 of the Contract is between Plaintiffs, Defendant, and the Librarian.  Although Plaintiffs make reference to the Contract throughout the Complaint, see Compl. ¶¶ 1-4, 12-16, 21-29, and have provided, as an attachment to the Complaint, a letter that discusses the Contract and all three

parties thereto, Compl. Exh. D at 1-2, Plaintiffs failed to identify the Librarian in the Complaint as a party to the Contract.

## II.    THE COMPULSORY LICENSE STATUTORY SCHEME

The United States Library of Congress ("Library"), headed by the Librarian, is an agency of the legislative branch of the United States government. The United States Copyright Office ("Office") is a department within the Library. Pursuant to 17 U.S.C. §§ 111 and 119, the Office is required to collect compulsory license royalties ("Royalties") from cable operators and satellite carriers for the distant retransmission of programming on television broadcast stations. The Library, the Librarian, and the Office are all located in the District of Columbia. See RJN, Exhs. A and C-M (address at top of Orders). At all times relevant to this case, administering the Royalties scheme, including authorizing distribution of the Royalties, fell within the jurisdiction of the Office. See 17 U.S.C. § 801 (1995). Pursuant to the statutory scheme in effect during the relevant period, when parties asserting claims to the compulsory license royalty fund for a given year were unable to reach an agreement regarding the distribution of the royalty funds, the Office convened a Copyright Royalty Arbitration Panel ("CARP") to resolve the dispute. See id.; see also 17 U.S.C. § 802(c) (1995); Nat'l Ass'n of Broadcasters v. Librarian of Congress, 146 F.3d 907, 912-13 (D.C. Cir. 1998) (providing an overview of the compulsory license scheme). Upon petition by one of the parties to the distribution proceedings, the CARP's decision was subject to review by the Librarian, who thereafter issued the final agency determination as to the royalty distribution. 17 U.S.C. § 802(f) (1995). Exclusive jurisdiction over any appeal of the Librarian's decision was vested in the United States Court of Appeals for the District of Columbia Circuit. 17 U.S.C. § 802(g) (1995).[1]

---

[1] Pursuant to the Copyright Royalty Distribution and Reform Act of 2004 ("CRDRA"), which was enacted on November 30, 2004, See P. L. 108-419 (Nov. 30, 2004), authority to order distribution of the Royalties is currently vested in the

(...continued)

## III.  THE PARTIES

The Plaintiffs in the instant action are Worldwide Subsidy Group, LLC, a Texas limited liability company, doing business as Independent Producers Group, and Worldwide Subsidy Group, LLC, a California limited liability company, formerly known as Artist Collections Group, LLC (collectively referred to herein as "IPG").  Compl. at pp. 1-2.  The only named Defendant is the Motion Picture Association of America, Inc. (referred to herein as "MPAA").  See id.[2]  MPAA is a trade association that represents the interest of motion picture, home video, and television industries domestically and worldwide.  See Kessler Dec. at ¶ 2.  More pertinently, MPAA represents the interests of producers and distributors of series, specials, and movies broadcast on television stations which are entitled to receive the Royalties.  See id. at ¶ 2.  MPAA maintains an office location in Washington, D.C., and it is MPAA's District of Columbia office that is primarily responsible for administering matters pertaining to the Royalties.  See id. at ¶ 3.

IPG represents the interests of entities asserting claims to a portion of the Royalties.  Compl. at ¶ 23.  Although IPG's principal place of business is listed in the Complaint as Texas, Compl. at ¶¶ 18-19, because it maintains and pursues claims to the Royalties in Washington, D.C., it also does business in the District of Columbia.  See Compl. at ¶ 23, Compl. Exh. D at 1.

## IV.  STATEMENT OF FACTS

On November 1, 2000, the Office initiated a CARP proceeding to arbitrate a dispute between IPG and MPAA regarding the distribution of cable royalties collected for the 1997 royalty year.  See 65 Fed. Reg. 65335 (2000).  This proceeding, which took place in the District of Columbia, included a lengthy

---

(…continued)
Copyright Royalty Judges, a newly-created independent entity within the Library.  See 17 U.S.C. § 801 (2004).

[2] IPG has also named Does 1 through 10, inclusive, as Defendants to the instant action.  Compl. at ¶ 20.

evidentiary hearing.  IPG participated fully in this hearing, and its then-principal,

Raul Galaz, appeared before the CARP to testify.  See 66 Fed. Reg. 66433, 66445

(2001).  The CARP issued its initial findings on April 16, 2001, which were

rejected by the Librarian on June 5, 2001.  See 66 Fed. Reg. at 66434.  The CARP

issued revised findings on June 20, 2001, which the Librarian again rejected.  The

Librarian then remanded the proceeding for consideration by a new CARP in a

final order dated December 26, 2001 ("Agency Determination").  See 66 Fed. Reg.

at 66434.  Both IPG and MPAA appealed the Agency Determination to the District

of Columbia Circuit Court of Appeals as Case Nos. 02-1033 and 02-1040

("Appellate Cases"), naming the Librarian as the Respondent in the Appellate

Cases.  See Compl. at ¶ 3, Compl. Exh. A at 1, Compl. Exh. D at 1; RJN Exh. B at

1.

      **The Contract and Subsequent Compliant Acts.**  In an effort to resolve

their disputes, which included the Appellate Cases, IPG, MPAA, and the Librarian

engaged in mediation.  Compl. at ¶¶ 6-7.  The mediator appointed by the District of

Columbia Circuit Court of Appeals was also located in the District of Columbia.

See Compl. Exh. B.  The mediator, representatives of the Librarian, and MPAA all

participated in settlement discussions while physically present in the District of

Columbia.  See Tucci Dec. at ¶¶ 4-5.  On at least one occasion, the parties also had

a mediation session in the District of Columbia where IPG's counsel traveled to the

District of Columbia in order to participate.  See Tucci Dec. at ¶ 5.  On March 31,

2004, following mediation, IPG, MPAA, and the Librarian executed the Contract,

in two parts, settling not only the Appellate Cases, but also resolving all disputes

between the parties as to the 1997, 1998, and 1999 cable and satellite royalty

funds.[3]  See Olaniran Dec., Exh. A (Contract), Part 1, p. 1 at ¶ 1 and Part 2, p. 1 at

---

[3] An agreement to settle a legal dispute is a contract.  United States v. ITT Cont'l
Baking Co., 420 U.S. 223, 238, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975).

1  ¶ 2.  Consistent with its provisions, the Contract was executed in counterparts.  See

2  id. at Part 1, p. 7 ¶10(e) and Part 2, p. 2 ¶ 5(d).  MPAA and the Librarian executed

3  the Contract in the District of Columbia, and IPG executed the Contract in

4  California.  See Tucci Dec. at ¶ 6.

5       Subsequent acts taken by MPAA, IPG, and the Librarian in compliance with

6  the requirements of the Contract also took place in the District of Columbia.  First,

7  in compliance with the Contract, on April 2, 2004, the Librarian entered an order

8  vacating the Agency Determination, thus, terminating the proceeding that gave rise

9  to the Appellate Cases.  See RJN Exh. A (April 2, 2004 Order) at 1; see also

10  Notice Announcing Order, 69 Fed. Reg. 23821, 23822 (2004).  Second, MPAA

11  made a settlement payment to IPG on April 7, 2004, as required by the Contract.

12  See Kessler Dec. at ¶ 4 and Exhibit A; Olaniran Dec., Exh. A (Contract) at Part 1,

13  p.2 at ¶ 2(a).  This payment was arranged by MPAA's Washington, D.C. office.

14  See Kessler Dec. at ¶ 5.  Third, IPG and MPAA voluntarily dismissed the

15  Appellate Cases against the Librarian in the District of Columbia Court of Appeals

16  for review of the Agency Determination.  See RJN, Exh. B at 1.  Fourth, IPG filed

17  with the Office the withdrawal of its notices of intent to participate in royalty

18  distribution proceedings for the 1997, 1998, and 1999 cable and satellite royalty

19  years.  See Compl. at ¶¶ 3, 13; Olaniran Dec., Exh. A (Contract) at Part 2, p. 1 at ¶

20  2.

21       Finally, relying on the Contract, his April 2, 2004 Order terminating the

22  1997 cable royalty distribution proceeding, and IPG's withdrawal from the 1997,

23  1998, and 1999 cable and satellite royalty distribution proceedings, Compl. at ¶¶ 3,

24  13, the Librarian proceeded to make a final distribution of all cable royalties held

25  in reserve for 1997, see RJN Exh. A (April 2, 2004 Order), and all satellite

26  royalties held in reserve for 1997 and 1998, see RJN Exh. D (August 8, 2005

27  Order) at p. 2, Exh. E (January 12, 2006 Order) at p.2, and set reserve amounts for

28  the other affected years.  See RJN Exh. F (February 8, 2006 Order) at pp. 2-3; Exh.

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

5

1    G (June 26, 2006 Order) (clarifying February 8, 2006 Order); Exh. H (April 3,

2    2007 Order) at p.1, n.1 and p.4, n.7; Exh. I (April 3, 2007 Order) at p. 5 (reserving

3    no funds in the syndicated programming category for the 1998-99 royalty years for

4    disputes with IPG); Exh. J (April 6, 2007 Order) (clarifying April 3, 2007 Order);

5    Exh. K (April 10, 2007 Order) (further clarifying April 3, 2007 Order); Exh. L

6    (May 24, 2007 Order) at pp. 1-2 (establishing final reserve amounts in the

7    syndicated programming category for the 1998-99 royalty years, without a reserve

8    for IPG); Exh. M (July 11, 2007 Order) at p. 3 (recognizing syndicated

9    programming reserve amount).  All of these acts by the Librarian took place in the

10   District of Columbia.  See RJN, Exhs. A, and C-M (address at top of Orders).

11   **V.    ARGUMENT**

12           In order to determine whether transfer to another judicial district is

13   appropriate, the Court must engage in a two-step analysis.  First, the Court must

14   determine whether the action "might have been brought" in the potential transferee

15   court.  See Hoffman v. Blaski, 363 U.S. 335, 343-44, 80 S. Ct. 1084, 4 L. Ed. 2d

16   1254 (1960); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  If so,

17   then the Court must determine that transfer would best serve the convenience of

18   the parties and witnesses, and be in the interests of justice.  Jones, 211 F.3d at 498.

19   The Ninth Circuit has provided a series of private and public "convenience factors"

20   that the Court may consider in making this second determination.  See id. at 498-

21   99.  Both inquiries favor transfer.

22           **A.    The Instant Cause of Action "Might Have Been Brought" in the**

23           **District of Columbia District.**

24           This action might have been brought in the District Court for the District of

25   Columbia pursuant to 28 U.S.C. § 1391(b) (2002).  Section 1391(b) allows a civil

26   action not founded solely on diversity of citizenship to be brought in the judicial

27   district (1) where any defendant resides, if all defendants reside in the same state;

28   (2) in which a substantial part of the events or omissions giving rise to the claim

Mitchell
Silberberg &
Knupp LLP
1867885.1

occurred; or (3) a judicial district in which any defendant may be found, if there is no other judicial district in which the action may be brought.  The only named Defendant in this cause of action is MPAA.  <u>See</u> Compl. at pp. 1-2.  MPAA maintains an office in the District of Columbia, Kessler Dec. at ¶ 3, and therefore resides within the judicial district for the District of Columbia.  The other party to the Contract, the Librarian, also resides in the District of Columbia.  RJN, Exhs. A and C-M (address at top of Orders).

Moreover, a substantial part of the events giving rise to IPG's claim occurred in the District of Columbia.   First, the Agency Determination was issued by the Librarian, who is located in the District of Columbia.  <u>See</u> 66 Fed. Reg. at 66434; <u>see also</u> RJN, Exhs. A, C-M (address at top of Orders).  Also, the copyright royalty distribution proceeding which triggered the Agency Determination was conducted in the District of Columbia.  <u>See</u> Tucci Dec. at ¶ 2.  Second, the Appellate Cases were filed in the District of Columbia.  <u>See</u> Compl. at  ¶¶ 1, 3.  Third, the mediator who brokered the Contract was also located in the District of Columbia, and representatives of MPAA and the Librarian conducted the settlement negotiations that resulted in the Contract while physically present in the District of Columbia.  <u>See</u> Compl. at ¶ 6 and Compl. Exh. B at 1; Tucci Dec. at ¶¶ 4-5.[4]  The Contract also provides that the venue for arbitration of disputes will be in the District of Columbia.  <u>See</u> Olaniran Dec., Exh. A (Contract), Part 1, p. 4 at ¶ 5(c).  Based on the foregoing, it is clear that the instant cause of action could have been brought in the District of Columbia District pursuant to 28 U.S.C. § 1391(b).

---

[4] The choice of law provision within the Contract itself dictates that the laws of the District of Columbia should apply.  <u>See</u> Compl. at ¶¶ 2-3; <u>see also</u> Olaniran Dec., Exh. A (Contract), Part 1, p. 7 at ¶ 10(d) and Part 2, p. 2 at ¶ 5(c).

**B.**    **The Majority Of The "Convenience Factors" Favor Transfer to the District of Columbia District.**

In Jones v. GNC Franchising, Inc., the Ninth Circuit laid out a series of factors courts may consider in determining whether transfer is appropriate under 28 U.S.C. § 1404(a).[5]   If these factors are applied to the instant cause of action, it is clear that the majority of them favor transfer to the District Court for the District of Columbia, or are neutral.

**1.**    **The Contract Was Negotiated And Executed In The District of Columbia.**

The Contract that IPG seeks to invalidate in this proceeding was designed to settle the Appellate Cases pending in the District of Columbia Circuit Court of Appeals and other controversies between the parties as to the Royalties which were pending before the Librarian.  See Olaniran Dec., Exh. A (Contract) at Part 1, p. 1 ¶ 1 and Part 2, p. 1 ¶¶ 1-2.  The Contract itself was negotiated in the District of Columbia with the help of a mediator based in the District of Columbia.  See Tucci Dec. at ¶¶ 4-5; Compl. Exh. D at 1.  Not only did the parties meet in the District of Columbia to discuss settlement, but two of the parties to the Contract, MPAA and the Librarian, both of whom reside in the District of Columbia, executed the document in the District of Columbia.  See Tucci Dec. at ¶¶ 5-6.  All of these factors support the District of Columbia District as the most appropriate forum for the resolution of any dispute related to the Contract.

---

[5] These factors include:  (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  Jones, 211 F.3d at 498-99.

1

2.     **Plaintiffs' Cause of Action Has More Contacts With The**

2     **District of Columbia District Than The Central District of**

3     **California.**

4         Here, IPG's cause of action not only arose in the District of Columbia, but

5     has more contacts with that judicial district than this Court.  As discussed, a

6     substantial part of the events giving rise to IPG's claim occurred in the District of

7     Columbia.  See p. 7, supra.  Moreover, two parties to the Contract, MPAA and the

8     Librarian, maintain offices in the District of Columbia, and all negotiations

9     between these parties and IPG which resulted in the Contract were initiated out of

10    these Washington, D.C. offices.  The Contract was both negotiated and executed in

11    the District of Columbia.  See p. 8, supra.

12        In addition, several key subsequent acts contemplated by the Contract took

13    place in the District of Columbia, including:

14    ●   MPAA's Washington, D.C. office arranged IPG's settlement

15        payment, as required by the Contract.  See Kessler Dec. at ¶¶ 4-5.

16    ●   IPG filed notices with the Office in the District of Columbia

17        withdrawing its participation in all Office proceedings regarding the

18        1997, 1998, and 1999 cable and satellite royalty funds.  See Compl. at

19        ¶¶ 3, 13; Olaniran Dec., Exh. A (Contract) at Part 2, p. 1 at ¶ 2.

20    ●   Both MPAA and IPG dismissed the Appellate Cases before the

21        District of Columbia Court of Appeals.  See RJN, Exh. B at 1.

22    ●   The Librarian terminated the 1997 cable royalty distribution

23        proceeding, vacated the Agency Determination, and made final

24        distributions of the Royalties for 1997 cable and 1997 and 1998

25        satellite years.  See RJN Exhs. A, C, D and E; see also 69 Fed. Reg. at

26        23822.

27        All of these actions in compliance with the Contract listed above took place

28    in the District of Columbia.  Indeed, the only notable connections between IPG's

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

9

1    current cause of action and the Central District of California are that (1) IPG

2    arranged for a courier to pick up its settlement check at MPAA's California office

3    on April 8, 2004, see Kessler Dec. at ¶ 5, (2) one of the IPG entities is a California

4    limited liability corporation, see Compl. at pp. 1-2, and (3) IPG's former and

5    current attorneys both maintain offices in Los Angeles.  See Compl. at pp. 1-2;

6    RJN, Exh. Q at p. 2 ¶ 3.

7      In light of the much more direct contacts present between the instant lawsuit

8    and the District of Columbia District, IPG's limited contacts with California are

9    insufficient to weigh against transfer to the District of Columbia District.

10        **3.  Non-Party Witnesses And Sources Of Proof Relevant To**

11           **This Matter Are Located In The District of Columbia.**

12      While the convenience of party witnesses is a factor to be considered in

13    deciding whether transfer is appropriate, the convenience of non-party witnesses is

14    the most important factor.  Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D.

15    Cal. 2005).  In determining whether this factor weighs in favor of transfer, the

16    Court must consider not simply how many witnesses each side has and the location

17    of each, but rather, the court must consider the importance of the witnesses.  Gates

18    Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984).

19      Here, the Librarian, while not a party to the instant action, is a party to the

20    Contract.  See Olaniran Dec., Exh. A (Contract) at Part 2.  Because the Librarian is

21    a party to the Contract, his participation, or that of his representatives, at least as

22    witnesses, will be required in any cause of action to invalidate the Contract.

23    Moreover, because the Contract resolved disputes between the parties regarding

24    the distribution of the Royalties for various years, see id. at Part 1, p. 1 ¶ 1 and Part

25    2, p. 2 ¶¶ 1-2, and the distribution of the Royalties was being supervised by the

26    Office, it is likely that more than one representative of the Office may be required

27    to testify regarding actions that were taken in reliance on the Contract, including

28    the final distribution of Royalties for the 1997 cable and 1997 and 1998 satellite

Mitchell
Silberberg &
Knupp LLP
1867885.1

royalty years.  Both the Librarian and the Office, including all personnel involved in the royalty distribution process, are located in the District of Columbia.  <u>See</u> RJN, Exhs. A and C-M (address at top of Orders).  In addition, the mediator who negotiated the Contract with the parties is also located in the District of Columbia, Compl. at ¶ 6 and Compl. Exh. B at 1, and may also be called as a witness regarding the formation of the Contract.  The instant action is in the Central District of California, hundreds of miles away from the district where these non-party witnesses reside.  Therefore, convenience to these non-party witnesses weighs in favor of transfer.

Moreover, for a non-party witness, the Court's subpoena power extends only to areas within the district and/or one hundred miles of the place of trial.  <u>See</u> Federal Rule of Civil Procedure 45(b)(2).  Because all of the potential witnesses described above, including the Librarian, are outside the reach of the Court's subpoena power, the parties may not have access to these witnesses should this matter proceed to trial.  In contrast, if the case is transferred, each of these non-party witnesses will be within the subpoena power of the District of Columbia District.

It is also important to recognize that other sources of proof, including the CARP records for the underlying royalty distribution proceeding that gave rise to the Agency Determination, the record of the Appellate Cases, and the Office's records regarding subsequent final distributions in reliance on the Contract, are all located in the District of Columbia.  Because these sources of proof are all located in the transferee district, the Court should weigh this factor in favor of transfer.

**4.    Because the Contract Is Governed By Federal Common Law, The District for District of Columbia Is Equally Familiar With the Governing Law In This Case.**

Here, the Contract contains a choice of law provision selecting the law of the District of Columbia.  However, because the Librarian is a party to the Contract,

the Contract is governed by federal common law.  See Boyle v. United Tech. Corp., 487 U.S. 500, 504, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988).  In such disputes federal common law replaces state law regardless of whether Congress has shown any intent to preempt the area.  Id.  Because federal common law governs the Contract, the District of Columbia District is equally familiar with the law to be applied in this case, and this factor should be weighed as neutral.

> **5.    Costs Of Litigation Will Be Substantially Increased If This Case Is Not Transferred.**

As the United States Supreme Court has observed, the purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (citations omitted).  Failure to transfer the instant proceeding will run afoul of this purpose.  As stated above, a large number of both the party and the non-party witnesses and sources of proof in this cause of action are located in the District of Columbia.  Therefore, should this Court fail to transfer the case to the District of Columbia District, the costs of litigation will be substantially increased.

## VI.    CONCLUSION

For the foregoing reasons, MPAA respectfully requests that this Court enter an order transferring the instant action to the District of Columbia District pursuant to 28 U.S.C. § 1404(a).

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

12

1   DATED: June 13, 2008          GREGORY O. OLANIRAN
                                  LUCY HOLMES PLOVNICK
2                                 STINSON MORRISON HECKER LLP

3
                                  KARIN G. PAGNANELLI
4                                 MARC E. MAYER
                                  MITCHELL SILBERBERG & KNUPP LLP
5

6
                                  By: /s/ Marc E. Mayer
7                                     MARC E. MAYER
                                      Attorneys for Defendant
8                                     MOTION PICTURE ASSOCIATION
                                      OF AMERICA, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1867885.1

DB04/762224.0063/458555.3

13

1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:  (310) 312-2000
5  Facsimile:   (310) 312-3100

6  GREGORY O. OLANIRAN (*pro hac vice*)
   LUCY HOLMES PLOVNICK (*pro hac vice*)
7  STINSON MORRISON HECKER LLP
   1150 18th Street NW, Suite 800
8  Washington, D.C. 20036-3816
   Telephone:  (202) 785-9100
9  Facsimile:   (202) 785-9163

10 Attorneys for Defendant
   MOTION PICTURE ASSOCIATION OF
11 AMERICA, INC.

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15 | WORLDWIDE SUBSIDY GROUP, | CASE NO.  CV08-3701 FMC (MANx)
16 | LLC, a Texas Limited Liability
   | Company, dba INDEPENDENT | The Honorable Florence-Marie Cooper
17 | PRODUCERS GROUP; WORLDWIDE
   | SUBSIDY GROUP, LLC, a California | **DECLARATION OF MICHAEL E.**
18 | Limited Liability Company, formerly | **TUCCI IN SUPPORT OF**
   | named ARTIST COLLECTIONS | **DEFENDANT MOTION PICTURE**
   | GROUP, LLC, | **ASSOCIATION OF AMERICA,**
19 |                                  | **INC.'S MOTION TO TRANSFER**
20 |          Plaintiffs,
21 |     v.                          | DATE:   July 14, 2008
                                      | TIME:    10:00 A.M.
22 | MOTION PICTURE ASSOCIATION | CTRM.:  750, Roybal Federal Building
   | OF AMERICA, INC., a New York
23 | Corporation doing business in
   | California; and DOES 1 through 10,
24 | inclusive,
25 |          Defendants.

26

27

28

Mitchell
Silberberg &
Knupp LLP

1    **DECLARATION OF MICHAEL E. TUCCI**

2    I, MICHAEL E. TUCCI, declare:

3

4        1.    I am an attorney at law duly licensed to practice law in the District of

5    Columbia, Tennessee, and Virginia.  I am a partner with the law firm of Stinson

6    Morrison Hecker LLP, attorneys of record for Defendant MOTION PICTURE

7    ASSOCIATION OF AMERICA, INC. ("MPAA").  My office is located at 1150

8    18th Street, NW, Suite 800, Washington, D.C. 20036.  I have personal knowledge

9    of the following facts and, if called and sworn as a witness, could and would

10   competently testify thereto.

11

12       2.    Hearings regarding the 1997 Cable Phase II Royalty Distribution

13   Proceeding, Docket No. 2000-2 CARP CD 93-97, involving MPAA and

14   Worldwide Subsidy Group, dba Independent Producers Group ("IPG"), took place

15   between January 8, 2001 and April 4, 2001 at the United States Copyright Office

16   ("Office"), in the James Madison Memorial Building, located at 101 Independence

17   Avenue, SE, Washington, D.C. 20559.  IPG participated fully in these hearings,

18   both cross-examining witnesses and also presenting the live testimony of its

19   President, Raul Galaz.  The Librarian of Congress ("Librarian") issued a final

20   agency determination in this proceeding on December 26, 2001 ("Agency

21   Determination").  <u>See</u> 66 Fed. Reg. 66433 (2001).

22

23       3.    Both MPAA and IPG appealed the Agency Determination to the

24   United States Court of Appeals for the District of Columbia Circuit.  These appeals

25   were docketed by the Circuit Court as Case Nos. 02-1033 and 02-1040 ("the

26   Appellate Cases").  The Librarian was named as a Respondent in both Appellate

27   Cases.  I was one of the attorneys of record in the Appellate Cases on behalf of

28   MPAA.

Mitchell
Silberberg &
Knupp LLP

1

1    4.    On June 26, 2002, the Circuit Court selected the Appellate Cases for

2    participation in its Appellate Mediation Program, and assigned Deanne C. Siemer,

3    Esq., to serve as mediator for the Appellate Cases.  Ms. Siemer was affiliated with

4    Wilsie Co., LLC, located at 4242 Mathewson Drive, N.W., Washington, D.C.

5    20011.

6

7    5.    Between June 26, 2002 and March 31, 2004, MPAA, IPG, and the

8    Librarian engaged in mediation in an effort to settle their disputes as to the

9    Appellate Cases and also subsequent cable and satellite royalty years.  Ms. Siemer

10    conducted the mediation from her District of Columbia office location.  She also

11    met with me at my office.  I was physically present in the District of Columbia

12    during all mediation discussions.  As a part of the mediation process, on August 6,

13    2003, counsel for IPG, Jeffrey Bogert, attended a mediation session at my office in

14    Washington, D.C.

15

16    6.    On March 31, 2004, as a result of the mediation, IPG, MPAA, and the

17    Librarian reached a settlement of all disputes between the parties regarding the

18    Appellate Cases and the 1997, 1998, and 1999 cable and satellite royalty funds

19    administered by the Office ("Contract").  MPAA and the Librarian executed the

20    Contract in Washington, D.C.  I understand, based on communications with Ms.

21    Siemer and Mr. Bogert, that IPG executed the Contract in California.

22

23    I declare under penalty of perjury under the laws of the United States of

24    America that the foregoing is true and correct.

25    Executed this 13th day of June, 2008, at Washington, D.C.

26

27    _____

28    Michael E. Tucci

Mitchell
Silberberg &
Knupp LLP

2

KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MARC E. MAYER (SBN 190969)
mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
Facsimile:    (310) 312-3100

GREGORY O. OLANIRAN (*pro hac vice*)
LUCY HOLMES PLOVNICK (*pro hac vice*)
STINSON MORRISON HECKER LLP
1150 18th Street NW, Suite 800
Washington, D.C. 20036-3816
Telephone:   (202) 785-9100
Facsimile:    (202) 785-9163

Attorneys for Defendant
MOTION PICTURE ASSOCIATION OF
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP; WORLDWIDE SUBSIDY GROUP, LLC, a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>       Defendants. | CASE NO.   CV08-3701 FMC (MANx)<br><br>The Honorable Florence-Marie Cooper<br><br>**DECLARATION OF GREGORY O. OLANIRAN IN SUPPORT OF DEFENDANT MOTION PICTURE ASSOCIATION OF AMERICA, INC.'S (1) MOTION TO DISMISS AND (2) MOTION TO TRANSFER**<br><br>DATE:      July 14, 2008<br>TIME:      10:00 A.M.<br>CTRM.:    750, Roybal Federal Building |

Mitchell
Silberberg &
Knupp LLP

1

## **DECLARATION OF GREGORY O. OLANIRAN**

2

3        I, GREGORY O. OLANIRAN, declare:

4

5        1.    I am an attorney at law duly licensed to practice law in the District of

6    Columbia and Maryland.  I am a partner with the law firm of Stinson Morrison

7    Hecker LLP, attorneys of record for Defendant MOTION PICTURE

8    ASSOCIATION OF AMERICA, INC. ("MPAA").  My office is located at 1150

9    18th Street, NW, Suite 800, Washington, D.C. 20036.  I have personal knowledge

10    of the following facts and, if called and sworn as a witness, could and would

11    competently testify thereto.

12

13        2.    Attached as Exhibit A, and by this reference incorporated herein, is a

14    true and correct copy of the two part, three party settlement agreement between

15    Worldwide Subsidy Group, LLC dba Independent Producers Group ("IPG"),

16    MPAA, and the United States Librarian of Congress ("Librarian") which IPG

17    seeks to void or partially rescind in its Complaint.  See Compl. at ¶¶ 1-4, 12-16,

18    21-29.

19

20        I declare under penalty of perjury under the laws of the United States of

21    America that the foregoing is true and correct.

22        Executed this 13th day of June, 2008, at Washington, D.C.

23

24
                                          _____
25                                          Gregory O. Olaniran

26

27

Mitchell
Silberberg &
Knupp LLP    28

1

# EXHIBIT A

Exhibit A

Page 2

CONFIDENTIAL

## SETTLEMENT AGREEMENT – PART 1

This Settlement Agreement-Part 1 is made as of this 31st day of March 2004 by and among Worldwide Subsidy Group, doing business as Independent Producers Group (hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter "MPAA").

WHEREAS, IPG and MPAA are parties to appellate proceedings consolidated before the United States Court of Appeals for the District of Columbia Circuit, Case No. 02-1033 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these appellate proceedings solely in order to avoid the costs, direct and indirect, that would be incurred by each of the parties in the future and the uncertainties of the current and anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements hereinafter contained and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    Scope of Settlement.  This Agreement settles all Phase II issues, known and unknown, between IPG and MPAA for the 1997, 1998 and 1999 Cable Royalty Funds, and the 1997, 1998 and 1999 Satellite Royalty Funds.

2.    Royalty Payment:  IPG shall receive payments as follows:

CONFIDENTIAL

REDACTED

a. Current payment: IPG shall receive the amount of $        as payment in full for its Phase II share of royalties distributed to the Program Suppliers category from the 1997 Cable Royalty Fund for all of the programs belonging to Litton Syndications, Inc. and certain IPG costs and expenses at execution of this Agreement.

b. Future payments: IPG's royalties for pending 1997 Satellite and all 1998 and 1999 claims shall be calculated using the same methodology, and shall be paid in the same time frame, as MPAA-represented claimants.

c. Transmittal of payments: All payments to IPG shall be made through IPG counsel, Jeffrey Bogert Trust Account.

3.   Documentation: The documentation submitted by IPG for 1997 Satellite and all 1998 and 1999 claims shall demonstrate with sufficient particularity that:

a. A valid and timely claim for royalties was properly filed with the Copyright Office; and

b. IPG has a valid representation agreement with the claimant and the claimant is entitled to participate in royalties to be distributed.

4.   Initial determination: Within 30 days of the execution of this Agreement, IPG shall notify MPAA of its 1997 Satellite claims and its 1998 and 1999 Cable and Satellite claims and shall deliver the documentation with

2

Exhibit A
Page 4

CONFIDENTIAL

respect to those claims. Within 30 days of the receipt of IPG's notice, MPAA shall either notify IPG in writing that it accepts or rejects some or all of IPG's 1997 Satellite and 1998 and 1999 Cable and Satellite claims or notify IPG in writing of any deficiencies concerning such documentation (including specific particulars in which supplementation is sought). Upon receipt of MPAA's initial determination, IPG shall, within 30 days, notify MPAA of its election to accept or reject MPAA's determination or to supplement its documentation to MPAA.

a. Acceptance: If IPG accepts MPAA's initial determination, MPAA shall pay IPG on the same basis and in the same time-frame as it makes any payment after the date of this Agreement to other MPAA-represented claimants for 1997 Satellite and 1998 and 1999 Cable and Satellite claims. If MPAA has made all payments to all other MPAA-represented claimants for a year in a particular claim category, IPG shall be paid its claims for the year within that category within 30 days.

b. Supplementation: If IPG elects to supplement its documentation, it shall re-submit its documentation or parts of its documentation to MPAA within 30 days of its notice of election to MPAA, and the provisions of this paragraph 4 shall be followed with respect to the re-submitted documentation.

Exhibit A

Page 5

CONFIDENTIAL

c. Rejection:  If IPG rejects MPAA's initial determination, IPG may proceed as provided in paragraph 5 below.

5.    <u>Arbitration</u>:  Disputes shall be resolved solely through binding arbitration.

a.  An arbitrator shall be agreed upon by the parties with the execution of this Agreement.  If the parties cannot agree, the arbitrator shall be named by the American Arbitration Association ("AAA").

b.  The arbitration shall be conducted in accordance with the Expedited Procedures of the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, except as provided in this Agreement, and shall be completed within 30 days after one of the parties notifies the arbitrator that it is ready to proceed.

c.  The venue for the arbitration shall be set by the arbitrator or shall be Washington, D.C.

d.  The hearing for the arbitration shall be conducted solely by telephone conference call with the parties and the arbitrator, after submission of documents, and not by personal appearance, unless the parties agree otherwise.

e.  Any arbitration shall be conducted confidentially and shall not be disclosed or relied upon in any other proceeding, except a subsequent arbitration under this Agreement.

Exhibit *A*

Page *6*

CONFIDENTIAL

f. In the event that MPAA receives conflicting claims for royalties for a particular title, MPAA shall notify IPG of the conflicting claim, provide available documentation, and proceed with the arbitration. In the event IPG is determined to be the valid claimant entitled to royalty, (i) if the royalty was paid by MPAA to another party prior to receiving IPG's claim under this Agreement, IPG shall seek its royalty from the party who has been paid and not from MPAA; and (ii) if the royalty has not yet been paid by MPAA, MPAA shall continue to hold the royalty until the conflict with the other party is resolved by settlement or a final determination of rights by a court of competent jurisdiction.

6.    Confidentiality:  This Agreement and its terms shall be kept confidential and not disclosed to any person or entity except (a) as may be required by law; (b) as necessary to resolve disputes in accordance with paragraph 5; (c) to the parties' employees, accountants, attorneys, or auditors who have a need to know for purposes of administering the distribution of royalty funds; (d) as necessary to respond to inquiries from rights holders (including IPG) regarding the status and payment of the rights holder's claims; or (e) with the written consent of the parties.

7.    No precedent:  No party shall be deemed to have accepted as precedent for future proceedings before any Copyright Arbitration Royalty Panel or approved, accepted, or agreed to or consented to any principle underlying (or which may be asserted to underlie) this Agreement, and the Librarian

Exhibit A

Page 7

CONFIDENTIAL

of Congress has issued, concurrent with this Agreement, the statement

attached as Appendix A to Settlement Agreement-Part 2.

8.    No participation:  Raul Galaz shall not participate, directly or indirectly,

in any distribution of proceeds under this Agreement.  In the event such

distribution occurs, in any amount, the entire amount of the proceeds paid

by MPAA to IPG shall be forfeited by IPG and repaid to MPAA within

30 days.

9.    Notices:  Notices shall be deemed to have been delivered when delivered

by hand, by delivery service, or mailed by certified or registered mail

postage prepaid, addressed as follows:

a. To IPG:  c/o Jeffrey Bogert, 815 Moraga Drive, Los Angeles, CA

90049-1676

b. To MPAA:  c/o Michael E. Tucci and Gregory O. Olaniran, Stinson

Morrison Hecker LLP, 1150 18th Street N.W., Suite 800,

Washington, D.C. 20036-3816

10.    General Provisions:

a. By signing this Agreement, each party represents and warrants that it

has received all consents, power and authority required to execute

the Agreement and that this Agreement is enforceable against it in

accordance with its terms, and counsel for each party has delivered

the letter attached as Appendix A.

Exhibit A

Page 9

CONFIDENTIAL

b.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

c.  This Agreement and the Appendix hereto contain the entire agreement among the parties with respect to the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds and supersedes all previous negotiations, commitments, writings, and proceedings.

d.  This Agreement shall be governed by the laws of the District of Columbia.

e.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

f.  This Agreement shall take effect only upon execution by the parties of the Settlement Agreement-Part 2 which includes provisions with respect to IPG, MPAA, and the Librarian of Congress.

Exhibit A

Page 9

CONFIDENTIAL

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by

their respective duly authorized representatives.


INDEPENDENT PRODUCERS GROUP

By _____

      Authorized representative


MOTION PICTURE ASSOCIATION OF AMERICA

By _____

      Authorized representative

Exhibit A

Page 10

LAW OFFICES OF
## JEFFREY C. BOGERT
815 Moraga Drive
### LOS ANGELES, CALIFORNIA 90049-1676
Facsimile: (310) 476-2135
e-mail: jcblaw1@aol.com

Jeffrey C. Bogert, Esq.

(310) 476-4625

March 31, 2004

Ann M. Murphy, Esq.
U.S. Department of Justice
Civil Division, Appellate
601 D Street N.W., Suite 800
Washington, D.C. 20530-0001

Michael E. Tucci, Esq.
Stinson Morrison Hecker LLP
1150 18th Street, NW
Suite 800
Washington, DC 20036-3816

### ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Ms. Murphy and Mr. Tucci:

I am a member of the state Bar of California and further appear before the Bar of the District Court of Appeals in the District of Columbia. I have acted as counsel to Independent Producers Group ("IPG") in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

IPG is validly existing and in good standing under the laws of the state of Texas.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

Respectfully,

Jeffrey C. Bogert

cc:    Deanne Siemer, Esq.

Exhibit A
Page 11

STINSON
MORRISON
HECKER LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

April 1, 2004

Jeffrey C. Bogert, Esq.
Law Offices of Jeffrey C. Bogert
815 Moraga Drive
Los Angeles, CA 90049-1676

Anne Murphy, Esq.
Attorney, Appellate Staff, Civil Division
Department of Justice
601 "D" Street, N.W.
Washington, D.C. 20530-0001

## ATTACHMENT A TO SETTLEMENT AGREEMENT

Dear Mr. Bogert and Ms. Murphy:

I am a member of the bars of the District of Columbia, Tennessee and Virginia and have acted as counsel to the Motion Picture Association of America, Inc. in connection with the Settlement Agreement-Part 1 between Worldwide Subsidy Group, doing business as Independent Producers Group, and the Motion Picture Association of America, Inc. and the Settlement Agreement-Part 2 among Worldwide Subsidy Group, the Motion Picture Association of America, Inc., and the Librarian of Congress.

Motion Picture Association of America, Inc. is validly existing and in good standing under the laws of New York.

The execution, delivery, and performance of the Settlement Agreement-Part 1 and the Settlement Agreement-Part 2 have been duly authorized by all requisite corporate action and are legal, valid, and binding obligations.

This letter is being delivered to you pursuant to the requirements of the Settlement Agreement and is solely for your benefit, and may not be relied upon by any third party without prior written consent.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

Exhibit A
Page 12

Jeffrey C. Bogert, Esq.
Anne Murphy, Esq.
April 1, 2004
Page 2

Best regards,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls

WDCDOCS 136550v1

Exhibit A

Page 13

## SETTLEMENT AGREEMENT – PART 2

This Settlement Agreement-Part 2 is made as of this 31st day of March 2004 by and among Worldwide Subsidy Group, doing business as Independent Producers Group (hereinafter "IPG"), the Motion Picture Association of America, Inc. (hereinafter "MPAA"), and the Librarian of Congress.

WHEREAS, IPG, MPAA, and the Librarian of Congress are parties to appellate proceedings consolidated before the United States Court of Appeals for the District of Columbia Circuit, Case No. 02-1035 and Case No. 02-1040; and

WHEREAS, these parties intend to settle their differences regarding these appellate proceedings solely in order to avoid the costs, direct and indirect, that would be incurred by each of the parties in the future and the uncertainties of the current and anticipated litigation;

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements hereinafter contained and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1. **Scope of Settlement.** This Agreement settles all issues between and among the parties raised in the appellate proceeding.

2. **Withdrawal of Notice of Intent.** IPG agrees to withdraw its notice(s) of intent to participate in the proceeding to distribute the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.


Exhibit A
Page 14

3.  Dismissal of the appeal:  The parties shall promptly move to dismiss the appeal in Case No. 02-1035 and Case No. 02-1040.

4.  Record:  The Librarian of Congress shall issue, subsequent to the dismissal of the appeals in Case No. 02-1035 and Case No. 02-1040, the Order attached as Appendix A.

5.  General Provisions:

a.  This Agreement and any rights and obligations hereunder shall not be assignable by any of the parties hereto.

b.  This Agreement and the Appendix hereto contain the entire agreement to which the Librarian of Congress is a party.

c.  This Agreement shall be governed by the laws of the District of Columbia.

d.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute the whole agreement.

This Agreement shall not come into effect separately from the Settlement Agreement-Part 1 which includes provisions with respect to IPG and MPAA.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.

INDEPENDENT PRODUCERS GROUP

By _____
     Authorized representative

Exhibit A
Page 15

MOTION PICTURE ASSOCIATION OF AMERICA

By _____
Authorized representative

THE LIBRARIAN OF CONGRESS

By _____
Authorized representative

3

APPENDIX A

| In the Matter of | } | |
| --- | --- | --- |
| | } | |
| Distribution of the 1993, 1994, 1995, | } | Docket No. 2000-2 CARP CD 93-97 |
| 1996 and 1997 Cable Royalty Funds | } | |
| | } | |

## RECOMMENDATION AND ORDER

On December 26, 2001, the Library published an Order announcing the Librarian of Congress's decision to reject the initial and revised reports of the Copyright Arbitration Royalty Panel (``CARP'') in this Phase II proceeding in the syndicated programming category for distribution of the 1997 cable royalty funds. The Order identified a number of flaws in the cases presented by both IPG and MPAA and in the determination made by the Copyright Arbitration Royalty Panel ("CARP"), and concluded that a distribution of royalties could not be made based on the current record. Accordingly, the Librarian remanded the matter for a new proceeding before a new CARP. Order, 66 FR 66433 (Dec. 26, 2001).

Both parties, Independent Producers Group ("IPG") and The Motion Picture Association of America, Inc. ("MPAA") petitioned the United States Court of Appeals for the District of Columbia Circuit to review the Librarian's determination. Motion Picture Association of America v. Librarian of Congress, No. 02-1033; Independent Producers Group v. Librarian of Congress, 02-1040.

The parties have now settled this dispute, making a remand for new proceedings unnecessary and making it possible to distribute the remaining funds that were in dispute. As part of the settlement, it has been agreed that the December 26, 2001 Order shall be vacated.

Because the parties have settled their dispute, and therefore there is no reason to remand the matter for further proceedings before a new CARP, the Register recommends that the December 26, 2001 Order be vacated as moot. Further, in light of the flaws in the determination made by the CARP as identified in the December 26, 2001 Order, the CARP's initial and final determinations should also be vacated, to make clear that those determinations have no precedential value. The recommendation that the December 26, 2001 Order be vacated is made in order to facilitate the settlement and because the matter is now moot; this recommendation should not be construed as a repudiation of the reasoning in the December 26, 2001 Recommendation and Order.

## Order of the Librarian

Having duly considered the recommendation of the Register of Copyrights the Librarian accepts the recommendation in its entirety and orders that the December 26,

Exhibit A

Page 17

2001 Order, the April 16, 2001 initial Report of the CARP, and the June 20, 2001 revised Report of the CARP are hereby VACATED as moot.

Dated: _____, 2004


_____
Marybeth Peters
Register of Copyrights


Approved by:



_____
James H. Billington
Librarian of Congress

Exhibit A

Page 18

1   KARIN G. PAGNANELLI (SBN 174763)
    kgp@msk.com
2   MARC E. MAYER (SBN 190969)
    mem@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, California 90064-1683
    Telephone:   (310) 312-2000
5   Facsimile:   (310) 312-3100

6   GREGORY O. OLANIRAN (*pro hac vice*)
    LUCY HOLMES PLOVNICK (*pro hac vice*)
7   STINSON MORRISON HECKER LLP
    1150 18th Street NW, Suite 800
8   Washington, D.C. 20036-3816
    Telephone:   (202) 785-9100
9   Facsimile:    (202) 785-9163

10  Attorneys for Defendant
    MOTION PICTURE ASSOCIATION OF
11  AMERICA, INC.

12         UNITED STATES DISTRICT COURT

13         CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability | CASE NO.  CV08-3701 FMC (MANx) |
| 16  Company, dba INDEPENDENT PRODUCERS GROUP; WORLDWIDE | The Honorable Florence-Marie Cooper |
| 17  SUBSIDY GROUP, LLC, a California Limited Liability Company, formerly | **DECLARATION OF MARSHA E. KESSLER IN SUPPORT OF** |
| 18  named ARTIST COLLECTIONS GROUP, LLC, | **DEFENDANT MOTION PICTURE ASSOCIATION OF AMERICA,** |
| 19         Plaintiffs, | **INC.'S MOTION TO TRANSFER** |
| 20 | |
| 21      v. | DATE:    July 14, 2008 |
| 22  MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York | TIME:     10:00 A.M. CTRM.:   750, Roybal Federal Building |
| 23  Corporation doing business in California; and DOES 1 through 10, | |
| 24  inclusive, | |
| 25         Defendants. | |

26

27

28

## DECLARATION OF MARSHA E. KESSLER

I, MARSHA E. KESSLER, declare:

1.    I am the Vice President, Retransmission Royalty Distribution, for Defendant MOTION PICTURE ASSOCIATION OF AMERICA, INC. ("MPAA").   I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2.    MPAA is a trade association that represents the interests of motion picture, home video, and television industries domestically and worldwide.  To that end, MPAA represents the interests of producers and distributors of series, specials, and movies broadcast on television stations which are entitled to receive compulsory license royalties paid by cable operators and satellite carriers and deposited with the United States Copyright Office ("Office") pursuant to 17 U.S.C. §§ 111 and 119 ("Royalties").

3.    MPAA maintains an office at 1600 Eye Street, NW, Washington, DC 20006.  This office is primarily responsible for matters pertaining to the Royalties. My office is in this Washington, D.C. location.

4.    On April 7, 2004, MPAA made a settlement payment of $115,000 to Worldwide Subsidy Group, dba Independent Producers Group ("IPG") as required by a settlement agreement between MPAA, IPG, and the United States Librarian of Congress resolving all controversies between the parties as to the 1997, 1998, and 1999 cable and satellite royalty years ("Contract"), dated March 31, 2004.  A copy of this payment (Check No. 11145575), is attached hereto as Exhibit A.

Mitchell
Silberberg &
Knupp LLP

1

1    5.    I approved MPAA's $115,000 settlement payment to IPG from my

2    office in Washington, D.C. and made arrangements for Check No. 11145575 to be

3    made available to IPG at MPAA's Encino, California office on April 8, 2004.

4

5    I declare under penalty of perjury under the laws of the United States of

6    America that the foregoing is true and correct.

7    Executed this 13 day of June, 2008, at Washington, D.C.

8

9    *Marsha E. Kessler*

10    Marsha E. Kessler

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP    28

2

# EXHIBIT A



AN ARTIFICIAL WATERMARK IS PRESENT ON THE REVERSE SIDE

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
15503 VENTURA BOULEVARD
ENCINO, CALIFORNIA 91436

JPMorgan Chase Bank
New York, NY 10036
210

11145575

DATE        CHECK NO.        AMOUNT
4/7/2004    145575           ****$115,000.00

ONE HUNDRED FIFTEEN THOUSAND AND XX / 100 Dollars

PAY TO THE
ORDER OF

JEFFREY BOGERT TRUST ACCOUNT
815 MORAGA DRIVE
LOS ANGELES, CA. 90049--167

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

⑈11145575⑈ ⑆021000021⑆ 023052704⑈          ⑈0011500000⑈



Deposit Only
009-601457



MARK ENDORSEMENT IN THE ABOVE AREA IF ANY.
DO NOT SIGN, WRITE OR STAMP BELOW THIS LINE
FOR DEPOSITORY BANK USE ONLY

0022  81412



Exhibit A
Page 4



M / 00017

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  WORLDWIDE SUBSIDY GROUP,              CASE NO.  CV08-3701 FMC (MANx)
    LLC, a Texas Limited Liability
12  Company, dba INDEPENDENT              The Honorable Florence-Marie Cooper
    PRODUCERS GROUP; WORLDWIDE
13  SUBSIDY GROUP, LLC, a California
    Limited Liability Company, formerly   **[PROPOSED] ORDER GRANTING
14  named ARTIST COLLECTIONS              DEFENDANT MOTION PICTURE
    GROUP, LLC,                           ASSOCIATION OF AMERICA,
15                                        INC.'S MOTION TO TRANSFER**
                 Plaintiffs,
16                                        CTRM.:  750
            v.
17
    MOTION PICTURE ASSOCIATION
18  OF AMERICA, INC., a New York
    Corporation doing business in
19  California; and DOES 1 through 10,
    inclusive,
20
                 Defendants.
21

22

23

24

25

26

27

28

1

## **<u>ORDER</u>**

2

3       The Court has read and considered all papers filed in support of and in

4   opposition to Defendant Motion Picture Association of America, Inc.'s Motion to

5   Transfer (the "Motion").

6

7       The Motion is granted.  This action is transferred to the United States

8   District Court for the District of Columbia.  The Clerk is ordered to transfer the

9   files.

10

11      **IT IS SO ORDERED.**

12

13  DATED: _____

14                                                   The Honorable Florence-Marie Cooper
                                                     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28