PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
(213) 624-1996
(213) 624-9073 facsimile

Attorneys for Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV08-3701 FMC (MANx)<br><br>OPPOSITION OF PLAINTIFFS TO MOTION TO TRANSFER<br><br><br>Hearing Date: July 14, 2008<br>Time: 10:00 a.m.<br>Courtroom: 750 Roybal Federal Building |

Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC (hereinafter collectively referred to as "IPG") [1], hereby oppose the motion of Defendant MOTION PICTURE

---

[1] In May of 1998, ARTIST COLLECTIONS GROUP, LLC was formed in Los Angeles, California. In March of 1999, WORLDWIDE SUBSIDY GROUP, LLC was formed in Helotes, Texas. On March 12, 2001, WORLDWIDE SUBSIDY GROUP, LLC filed an Assumed Name Certificate in Bexar County, Texas, whereby it represented that it would do business as INDEPENDENT

1

ASSOCIATION OF AMERICA, INC. ("MPAA") to transfer this action to the District of Columbia.

## INTRODUCTION

This action is a simple one for rescission of an agreement allegedly entered into in the absence of actual or ostensible authority. In its motion, MPAA tries to dress up the complaint to make it look like a complex claim involving detailed issues of copyright law. However, while the subject matter of the agreement was rights to royalties administered by the United States Copyright Office, the legal and factual issues raised by IPG's complaint are strictly those of a garden variety contract action.

## FACTUAL BACKGROUND

IPG is in the business of collecting cable and satellite re-transmission royalties for "independent" owners of television shows, movies, sporting events, etc. ("independent" refers to them being "independent" of the six large movie studios that comprise the MPAA). Each year, the United States Copyright Office, a department of the Librarian of Congress, collects royalties for (among many other things) the re-transmission of media content via cable and satellite. It then allows the owners of the media content to make applications for a share of the overall royalty "pie". In that process, IPG and MPAA are adversaries in that they represent different owners of different television shows, movies, etc. For each annual royalty pool, IPG and MPAA engage in negotiations over how much of the royalty pie each should get for their clients. If they cannot agree, they then engage in litigation over those claims via arbitration before the Copyright Arbitration Royalty Panel ("CARP") [2] and may appeal any ruling thereby to the Librarian of Congress (and beyond that, if so desired, into the Federal Court system).

---

PRODUCERS GROUP. On November 15, 2002, ARTIST COLLECTIONS GROUP, LLC filed a Certificate of Amendment with the California Secretary of State, changing its name to WORLDWIDE SUBSIDY GROUP, LLC.

[2] Since these events, the CARP's duties to administer these proceedings have been transferred to a new entity, the Copyright Royalty Board ("CRB"), however, the issues and proceedings related to the present action only concerned the CARP.

2

In 2000, IPG and MPAA could not agree on a distribution of 1997 Cable royalties.[3] The disagreement concerned the methodology by which the Copyright Office determined how much the various claimants to royalties were entitled to receive. The MPAA's methodology was an antiquated and flawed formula that grossly overcompensated the large studios, while giving independent owners of content a pittance. IPG proposed an alternative formula based on superior databases which would produce a more fair, just and equitable result.

Unable to agree, on November 1, 2000, IPG and MPAA initiated a CARP proceeding over distribution of 1997 Cable royalty distributions (see Moving Papers, page 3, lines 10-13). The CARP issued a ruling in which it wholly rejected the MPAA methodology and largely adopted the IPG methodology, with limited objections. This ruling was appealed to the Librarian and, ultimately, the Librarian rejected the CARP's findings regarding the 1997 cable royalties and remanded the matter for consideration by a new CARP. IPG and MPAA both appealed that ruling by the Librarian to the United States Court of Appeals for the District of Columbia Circuit (Moving Papers, page 3, lines 13-21).

In 2003, Marian Oshita, a minority member of IPG wrongfully gained control of IPG, and, out to try and get a quick buck, entered into an agreement with MPAA that effectively surrendered IPG's rights as an independent claimant of royalties, in favor of allowing MPAA to represent IPG in the proceedings for royalty distributions for 1998 and 1999 cable royalties and 1997, 1998 and 1999 satellite royalties. Specifically, on March 31, 2004, MPAA and Ms. Oshita and her counsel, Jeffrey Bogert, Esq., entered into two separate agreements entitled "Settlement Agreement-Part I", and "Settlement Agreement-Part II" (collectively "the Agreement", attached as Exhibit A to the Declaration of Gregory O. Oliniran, filed in support of the Moving Papers). Settlement Agreement-Part I provides that MPAA will pay IPG a specifically stated sum of money for IPG claims pursuant to the 1997 Cable Royalty Funds upon execution of Settlement Agreement-Part I, and additional sums to be calculated later for IPG claims on 1997-1999 Satellite Royalty Funds and 1998 and 1999 Cable Royalty Funds. Settlement

---

[3]Such delays in resolution of royalties is commonplace. As set forth herein, royalty distributions for 1997-1999 satellite retransmissions, and for 1998 and 1999 cable retransmissions are still not resolved to this day.

3

Agreement-Part I also contains a confidentiality clause, an arbitration agreement, and a choice of law provision regarding the law of the District of Columbia.

Settlement Agreement-Part II provides that IPG will withdraw its notices of intent to participate in the proceeding to distribute the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds, instead being represented by the MPAA for such distributions, and provides that the parties would move to dismiss their above referenced appeals to the United States Court of Appeals for the District of Columbia Circuit. Since the Librarian was technically a party to those Appeals, the Librarian was also a party to Settlement Agreement-Part II.

In sum, Settlement Agreement-Part I set forth what and in what manner IPG would be paid money by MPAA and Settlement Agreement-Part II stated that IPG would drop its own independent royalty claims and appeals.

However, almost six months prior to the execution of the Agreement, and during its negotiation, MPAA was notified by counsel for Lisa Galaz, the majority member of IPG, that Marian Oshita and Mr. Bogert were not authorized to enter an agreement with MPAA on behalf of IPG. Specifically, on November 3, 2003, James C. Sun, Esq. of Pick & Boydston, LLP, acting as counsel for Lisa Galaz, wrote to Gregory O. Olaniran, Esq. and Michael Tucci, Esq., of Stinson Morrison Hecker, LLP, counsel for MPAA (then and herein) and explicitly stated that neither Marian Oshita nor Jeffrey Bogert had the authority to bind IPG to any settlement agreement. Specifically, Mr. Sun's letter stated:

> "Any acts undertaken by Ms. Oshita or by Ms. Oshita through IPG's counsel of record, Jeffrey Bogert, which acts are not authorized by [Lisa Katona Galaz], are ineffective to bind IPG if the person(s) with whom Ms. Oshita and/or Mr. Bogert is/are dealing with have knowledge of this lack of authority. [Texas Civil Statutes, Title 32, Article 2.21.D.(1)-(2)] By way of this letter, I am placing you on notice that Ms. Oshita and Mr. Bogert lack the authority to unilaterally bind IPG to any settlement agreement in this matter."

In addition, the mediator in the underlying dispute between MPAA and IPG, Deanne Siemer, with whom the Agreement was negotiated, was also placed on notice that Ms. Oshita and Mr. Bogert lacked authority to enter into a settlement agreement in the underlying matter. In a letter dated August 8, 2003 to Ms. Siemer, Mr. Sun explained that Ms. Oshita had only a 25% voting interest in IPG and that

4

any other additional interest Ms. Oshita might have in IPG did not confer voting rights to Ms. Oshita beyond her 25% voting interest. Accordingly, and because Ms. Galaz had a greater voting interest in IPG, Ms. Siemer was advised that, ". . .IPG cannot make any decisions or take any action with respect to the mediation. . .without Ms. Galaz's authorization." These facts are alleged, verbatim, in the Complaint herein (and in the Amended Complaint (*see, infra*)), and the referenced letters are attached as Exhibits A and B thereto.

Despite these clear statements of Ms. Oshita's lack of authority, MPAA entered the Agreement anyway. The Agreement is highly detrimental to IPG's interests, and its clients, in that it surrenders IPG's control of its destiny in the distribution proceedings to MPAA, specifically, allowing MPAA to determine the amount of royalties to which IPG is entitled by use of MPAA's unfair and discredited methodology.[4]

After the execution of the Agreement, the Librarian entered an order vacating its "Agency Determination" (the ruling on the appeal of the CARP finding regarding the competing methodologies over 1997 cable royal distributions), and, unfettered by that dispute, distributed the 1997 cable royalties. IPG (vis-a-vis Ms. Oshita) and MPAA dismissed their appeals of the Librarian's "Agency Determination" (Moving Papers, page 4, lines 10-18), and IPG (vis-a-vis Ms. Oshita) withdrew its notices of intent to participate in distribution proceedings for cable and satellite royalties for 1997, 1998 and 1999 (since, as per the Agreement, IPG would be represented by the MPAA for such claims (see Settlement Agreement Part I, section 2 b)) (Moving Papers, page 4, lines 19-21). Two years later, the Librarian made distributions of satellite royalties for 1998 and 1999 (Moving Papers, page 4, line 22, page 5, lines 1-2).

On January 26, 2005, the Los Angeles Superior Court issued a judgment after a jury trial which confirmed that Lisa Galaz was a 75% owner of IPG and that Ms. Oshita was never more than a 25%

---

[4] At no time following its entering of the Agreement did MPAA attempt to notify the legitimately authorized representatives of IPG that the MPAA had entered into an agreement, much less the specifics of such agreement. Lisa Galaz only made such determination after issuing a subpoena upon MPAA, requesting a copy of any such agreement, which was provided in December 2004.

5

owner, and that Ms. Oshita *never* held a majority "membership" interest in IPG.

## MPAA'S MOTION

The gravamen of MPAA's motion is that events giving rise to IPG's claims and witnesses to those events are located in the District of Columbia which is, therefore, a more convenient forum that this one to adjudicate this matter. Specifically, MPAA cites the following factors in favor of its argument:

1. The "Agency Determination" was issued by the Librarian in the District of Columbia (see Moving papers, page 7, lines 9-10);

2. The decision of the CARP was issued in the District of Columbia (see Moving papers, page 7, lines 11-13);

3. The appeals of the Librarian's "Agency Determination" were filed in the District of Columbia (see Moving papers, page 7, lines 13-14, page 8, lines 10-13) and dismissed there (see Moving papers, page 9, lines 20-21);

4. The mediator who brokered the Agreement was located in the District of Columbia and settlement discussions took place in the District of Columbia (see Moving papers, page 7, lines 15-20, page 8, lines 14-15);

5. MPAA and the Librarian executed the Agreement in the District of Columbia (see Moving papers, page 8, lines 16-19);

6. The Librarian is located in the District of Columbia and MPAA maintains offices there (see Moving papers, page 9, lines 7-10);

7. MPAA's District of Columbia office arranged the payment to IPG for the 1997 cable distribution (see Moving papers, page 9, lines 14-15);

8. IPG filed notices withdrawing from the 1997-1999 cable and satellite distribution proceedings in the District of Columbia (see Moving papers, page 9, lines 16-19); and

9. The Librarian made final distributions for 1997 Cable royalties in the District of Columbia, and two years later, distributions for 1997 and 1998 Satellite royalties (see Moving papers, page 9, lines 22-25).

Most of these facts concern acts done by the Librarian which relate to IPG's plea that the 1997

6

Cable Royalty distribution be rescinded and that the withdrawal of the appeals regarding that distribution be retracted (specifically numbers 1, 2, 3, 7, and 9, above). The others concern the location of the negotiation and execution of the Agreement, and the fact that the Librarian, MPAA and the mediator are located in the District of Columbia (4, 5, and 6, above)[5] (plus, 8: IPG filed its withdrawal from proceedings at the Copyright Office).

However, those facts are not relevant to this action, which merely concerns whether or not Marian Oshita and Jeffrey Bogert had authority to enter the Agreement and whether or not MPAA was aware that Ms. Oshita and Mr. Bogert lacked that authority. The determination of those issues have nothing to do with the mundane and uncontroverted facts set forth above.

**IPG'S AMENDED COMPLAINT RENDERS ISSUES REGARDING THE 1997 CABLE ROYALTY DISTRIBUTION IRRELEVANT**

Rather than hash out the issues raised by MPAA regarding the Librarian, on June 26, 2008, IPG filed its Amended Complaint, in which IPG no longer seeks rescission of Settlement Agreement-Part I and Settlement Agreement-Part II with regard to the 1997 Cable Royalty Funds distribution and dismissal of appeals thereof (see paragraphs 16, 23, 25, 26 and 27 of the Amended Complaint, a copy of which is attached hereto for convenience as Exhibit "B"). As a result, most of the bases for MPAA's argument that the District of Columbia is a more convenient forum than this one are no longer present.

Specifically, in the absence of any claims regarding the 1997 cable distribution, the "Agency Determination", decision of the CARP, and appeal thereof regarding the 1997 cable distribution are irrelevant to the Amended Complaint, as is the payment to IPG for the 1997 cable distribution and the Librarian's distributions to other entities for 1997 cable royalties.

The Librarian's later distributions of 1997 and 1998 Satellite royalties are also irrelevant to this proceeding which seeks only to determine whether or not the Agreement should be rescinded. If it is rescinded, then an issue may, or may not, arise between IPG and the Librarian as to a possible need to

---

[5]It should be noted that the mediator was engaged pursuant to mediation ordered by the Court of Appeals and addressed only the 1997 Cable distribution, and none of the other five proceedings addressed in the Agreement.

7

reopen proceedings regarding the distributions of 1997 and 1998 Satellite royalties. However, until the matter of rescission is determined, there is no need to involve the Librarian as a witness or a party, since the Librarian has nothing to do with the facts regarding rescission.

**THE REMAINING FACTS FAIL TO ESTABLISH THE DISTRICT OF COLUMBIA AS A MORE CONVENIENT FORUM**

**1. Issues Relevant to the Amended Complaint Favor this District as a Forum for this Action**

IPG filed this action in this jurisdiction for good reason. First, defendant MPAA's principle place of business is in this District (in Sherman Oaks as alleged in paragraph 17 of the Complaint and Amended Complaint). Second, WSG-California is a California limited liability company which, along with WSG-Texas, does business in California. Third, and most importantly, the significant issues raised by IPG's claims concern witnesses located in this District and actions that took place in this District.

Specifically, the issues raised by IPG's Amended Complaint are whether or not Marian Oshita and Jeffrey Bogert had authority to enter the Agreement, whether or not MPAA was aware that Ms. Oshita and Mr. Bogert lacked that authority, and alternatively, whether or not the Agreement, as written[6], fails due to uncertainty, lack of consideration or a failure of consideration. The significant witnesses to the facts regarding these simple facts are James C. Sun. Esq., who authored the letters to MPAA and the mediator regarding Ms. Oshita and Mr. Bogert's lack of authority, and Ms. Oshita and Mr. Bogert, all of whom are located within this district (see the Declaration of Brian D. Boydston filed herewith).

These factors are clearly more significant than those raised by MPAA, and, unlike the MPAA-asserted factors, remain relevant to the Amended Complaint. Specifically, that the mediator was located in the District of Columbia and the negotiations took place there (number 4 above) is irrelevant since the mediator is not a witness to *whether* Ms. Oshita and Mr. Bogert lacked authority. Rather, the mediator's testimony regarding the negotiations over the Agreement itself have little relevance,

---

[6]Note, although MPAA suggests that the Librarian or the mediator might be called to testify as to the Agreement's formation (Moving Papers, page 11, lines 3-6), nothing in the Amended Complaint raises any such issue: rather, it takes the Agreement "as written", obviating any need for testimony on its formation.

8

regardless of where they occurred, as to whether or not Ms. Oshita and Mr. Bogert were authorized to negotiate the Agreement, or whether the MPAA was on notice that they lacked such authority.

Similarly, the fact that the MPAA and the Librarian executed the Agreement in the District of Columbia (number 5 above) has nothing to do with the issue of Ms. Oshita and Mr. Bogert's lack of authority, or any other issue raised by the Amended Complaint. The fact that the Librarian is located in the District of Columbia is irrelevant since he is not a party and is not a witness as to the communications between Lisa Galaz' counsel and the MPAA regarding Ms. Oshita and Mr. Bogert's lack of authority (number 6 above). The fact that the MPAA maintains offices in the District of Columbia and that those offices directed the negotiations are not significant given the fact that the MPAA's principle place of business is in this District and the negotiations themselves are irrelevant to IPG's claims (number 6 above). Finally, the fact that the District of Columbia was where IPG filed its withdrawal of its notices of its intent to participate in the various royalty proceedings has nothing to do with the issues herein.

**2. The Agreement is not Governed by Federal Common Law**

MPAA argues that this matter is governed by Federal Common Law because the Librarian is a party to a the Agreement. However, as stated, the Amended Complaint removes any claims regarding acts by the Librarian. Therefore, the Librarian need not be a party hereto and there is no basis upon which Federal Common Law should be applied over California state law.[7]

**3. The Cost of Litigation will not be Increased if This Case is not Transferred**

As set forth above, the Librarian and the mediator will not need to be witnesses in this action since the Amended Complaint raises no issues regarding the acts of the Librarian or the negotiation of

---

[7] Also, the choice of law provision in the Agreement selecting the law of the District of Columbia is not applicable to determination whether or not the Agreement was valid in the first place. (See Will-Drill Resources, Inc. v. Samson Resources Co., 352 F.3d 211, 212, 218-219 (5th Cir. 2003) (courts must determine the gateway issues of the existence of an agreement before compelling specific provisions).

1  the Agreement. As a result, the costs of this case will not be increased by adjudicating it here. In fact,
2  the relevant witnesses, Mr. Sun, Ms. Oshita and Mr. Bogert, are located in this District, which means
3  that transferring this case to the District of Columbia would increase costs.

4  **4. Equity Warrants that the Litigation take place in the Forum where Plaintiffs regularly conduct**
5  **business**

6  As set forth in the Amended Complaint, this action involves an agreement that MPAA entered into following express written notice that the alleged representatives of IPG had no authority to act on behalf of IPG. That the MPAA, at its own peril, elected to enter into the Agreement after these express warnings, warrants that the MPAA be required to appear in the jurisdiction of IPG's choosing (and one in which the action could clearly be brought) and defend the fact that it ignored the warnings it was provided. Allowing MPAA to require the legitimately authorized representatives of IPG to travel to Washington, D.C., after they took all of the actions necessary to forewarn MPAA of the illegitimacy of the Agreement, and after the MPAA failed to inform the legitimate representatives of IPG of the Agreement's existence, is counterintuitive and rewards the MPAA for its misconduct.

## CONCLUSION

Based on the foregoing, MPAA's motion should be denied.

Dated: June 30, 2008                PICK & BOYDSTON, LLP

By _____
Brian D. Boydston
Attorneys for Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC

PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
(213) 624-1996
(213) 624-9073 facsimile

Attorneys for Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV08-3701 FMC (MANx)<br><br>DECLARATION OF BRIAN D. BOYDSTON IN SUPPORT OF OPPOSITION OF PLAINTIFFS TO MOTION TO TRANSFER<br><br>Hearing Date: July 14, 2008<br>Time:         10:00 a.m.<br>Courtroom:    750 Roybal Federal Building |

DECLARATION OF BRIAN D. BOYDSTON

I, Brian D. Boydston, declare as follows:

1.  I am over 18 years of age, a partner of Pick & Boydston, LLP, the attorney of record for plaintiffs in the above referenced action and am personally familiar with the facts stated herein and, if called upon could competently testify thereto.

2.  Attached hereto as Exhibit C is a true and correct copy of a print-out of a page from the web site for the State Bar of California which confirms that Jeffery Bogert practices law within this District.

1

---

wsgvmpaa9.p5.wpd    DECLARATION OF BRIAN D. BOYDSTON IN SUPPORT OF
                    OPPOSITION OF PLAINTIFFS TO MOTION TO TRANSFER

1  District.

2      3.    Attached hereto as Exhibit D is a redacted letter from counsel for Marian Oshita, which confirms her location in this District.

4      4.    Attached hereto as Exhibit E is a true and correct copy of a print-out of a page from the web site for the State Bar of California which confirms that James C. Sun practices law within this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 30, 2008, at Los Angeles, California.

                                             Brian D. Boydston

2

wsgvmpaa9.p5.wpd        DECLARATION OF BRIAN D. BOYDSTON IN SUPPORT OF OPPOSITION OF PLAINTIFFS TO MOTION TO TRANSFER

**EXHIBIT A**



# THE STATE BAR OF CALIFORNIA

Thursday, June 26, 2008 — State Bar Home

Home > Attorney Search > Attorney Profile

## ATTORNEY SEARCH

## Jeffrey Charles Bogert - #132778

### Current Status: Active

This member is active and may practice law in California.

See below for more details.

### Profile Information

| | | | |
|---|---|---|---|
| **Bar Number** | 132778 | | |
| **Address** | Law Ofc Jeffrey C Bogert<br>501 Colorado Ave #208<br>Santa Monica, CA, 90401 | **Phone Number** | (310) 395-5025 |
| | | **Fax Number** | (310) 395-5071 |
| | | **e-mail** | jcblaw1@aol.com |
| **District** | District 7 | **Undergraduate School** | Occidental Coll; Los Angeles CA |
| **County** | Los Angeles | **Law School** | McGeorge SOL Univ of the Pacific; CA |
| **Sections** | None | | |

### Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 12/11/1987 | Admitted to The State Bar of California |

**EXHIBIT B**

LAW OFFICES
# ROGERS & HARRIS

STANLEY ROGERS
MICHAEL HARRIS
JANE F. ROGERS (1935-1984)

RECEIVED
JUN 1 8 2008
BY:_____

654 N. SEPULVEDA BLVD., SUITE 1
LOS ANGELES, CALIFORNIA 90049-2070
TEL: (310) 471-3170
FAX: (310) 471-3276

New E-mail: rogersharris1@verizon.net

June 17, 2008

Brian D. Boydston, Esq.
**PICK & BOYDSTON**
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017-2463

    Re: <u>Marian Oshita</u>

Dear Mr. Boydston:

    1.    You have always had Ms. Oshita's address. All correspondence to her has always been received by her. Her address is: Marian Oshita, c/o Rogers & Harris, 654 North Sepulveda Boulevard, Suite 1, Los Angeles, California 90049.

Case 1:08-cv-01470-PLF    Document 14-3    Filed 06/30/2008    Page 5 of 6

**EXHIBIT C**



# THE STATE BAR OF CALIFORNIA

Thursday, June 26, 2008　　　　　　　　　　　　　　　　　　　　　　　　　State Bar Home

Home > Attorney Search > Attorney Profile

## ATTORNEY SEARCH

## James Chung-Haur Sun - #188714

### Current Status: Active

This member is active and may practice law in California.

See below for more details.

### Profile Information

| | | | |
|---|---|---|---|
| **Bar Number** | 188714 | | |
| **Address** | Pick & Boydston LLP<br>1000 Wilshire Blvd Ste 600<br>Los Angeles, CA, 90017 | **Phone Number** | (213) 624-1996 |
| | | **Fax Number** | (213) 624-9073 |
| | | **e-mail** | jaimesol@aol.com |
| **District** | District 7 | **Undergraduate School** | Univ of California at Los Angeles; CA |
| **County** | Los Angeles | **Law School** | Pepperdine Univ SOL; Malibu CA |
| **Sections** | None | | |

### Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 6/3/1997 | Admitted to The State Bar of California |

Explanation of member status

### Actions Affecting Eligibility to Practice Law

#### Disciplinary and Related Actions
This member has no public record of discipline.

#### Administrative Actions
This member has no public record of administrative actions.

Start New Search >

　　　　Contact Us　　Site Map　　Privacy Policy　　Notices　　© 2008 The State Bar of California