Case 1:08-cv-01470-PLF   Document 16   Filed 06/30/2008   Page 1 of 11

**EXHIBIT B**

PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
(213) 624-1996
(213) 624-9073 facsimile

Attorneys for Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,

  Plaintiffs,

v.

MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California, and DOES 1 through 10, inclusive,

  Defendants.

CASE NO. 2:08-CV-2201-FMC (MANx)

1st AMENDED COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

  Plaintiffs WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, WORLDWIDE SUBSIDY GROUP, LLC a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC (hereinafter collectively referred to as

1

"IPG")[1], as and for their Amended Complaint alleges as follows:

## THE AGREEMENT

1.  This action concerns an agreement purportedly entered into between Defendant MOTION PICTURE ASSOCIATION OF AMERICA, INC. ("MPAA"), and Plaintiff IPG. Specifically, on March 31, 2004, MPAA and individuals claiming to represent IPG entered into two separate agreements entitled "Settlement Agreement-Part I", and "Settlement Agreement-Part II" (collectively "the Agreement"). The Agreement concerned a dispute between MPAA and IPG regarding the distribution of copyright royalties from the United States Copyright Office's 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds. The Agreement purportedly resolved that dispute.

2.  Specifically, Settlement Agreement-Part I provides that MPAA will pay IPG a specifically stated sum of money for IPG claims pursuant to "Phase II" of the 1997 Cable Royalty Funds upon execution of Settlement Agreement-Part I, and additional sums to be calculated later for IPG claims on 1997 Satellite Royalty Funds and 1998 and 1999

---

[1] In May of 1998, ARTIST COLLECTIONS GROUP, LLC was formed in Los Angeles, California. In March of 1999, WORLDWIDE SUBSIDY GROUP, LLC was formed in Helotes, Texas. On March 12, 2001, WORLDWIDE SUBSIDY GROUP, LLC filed an Assumed Name Certificate in Bexar County, Texas, whereby it represented that it would do business as INDEPENDENT PRODUCERS GROUP. On November 15, 2002, ARTIST COLLECTIONS GROUP, LLC filed a Certificate of Amendment with the California Secretary of State, changing its name to WORLDWIDE SUBSIDY GROUP, LLC.

Cable and Satellite Royalty Funds. Settlement Agreement-Part I also contains a confidentiality clause, an arbitration agreement, and a choice of law provision regarding the law of the District of Columbia.

3. Settlement Agreement-Part II provides that IPG will withdraw its notices of intent to participate in the proceeding to distribute the 1997, 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds and that the parties would move to dismiss two appeals to the United States Court of Appeals for the District of Columbia Circuit. It also contained a choice of law provision regarding the law of the District of Columbia, but did not contain a confidentiality clause, or an arbitration agreement. Those appeals were made from rulings by the Librarian of Congress ("the Librarian") with regard to the distributions of 1997 Cable Royalty Funds (no distribution has yet taken place for 1998 and 1999 Cable Royalties, or 1997, 1998 or 1999 Satellite Royalty Finds). Since the Librarian was technically a party to those Appeals, the Librarian was also a party to Settlement Agreement-Part II.

4. In sum, Settlement Agreement-Part I set forth what and in what manner IPG would be paid money by MPAA and Settlement Agreement-Part II stated that IPG would drop its own independent royalty claims and appeals.

## LACK OF AUTHORITY

5. However, prior to the execution of the Agreement, and during its negotiation, MPAA was notified by counsel for Lisa Galaz, a member of IPG, that the member of IPG with whom MPAA was negotiating, Marian Oshita, and the attorney that Ms. Oshita had retained, Jeffrey Bogert, Esq., were not authorized to enter an agreement with MPAA on behalf

3


1  of IPG. Specifically, on November 3, 2003, James C. Sun, Esq. of Pick
2  & Boydston, LLP, acting as counsel for Lisa Galaz, wrote to Gregory
3  O. Olaniran, Esq. and Michael Tucci, Esq., of Stinson Morrison Hecker,
4  LLP, counsel for MPAA and explicitly stated that neither Marian Oshita
5  nor Jeffrey Bogert had the authority to bind IPG to any settlement
6  agreement. Specifically, Mr. Sun's letter states:

> "Any acts undertaken by Ms. Oshita or by Ms. Oshita through IPG's counsel of record, Jeffrey Bogert, which acts are not authorized by [Lisa Katona Galaz], are ineffective to bind IPG if the person(s) with whom Ms. Oshita and/or Mr. Bogert is/are dealing with have knowledge of this lack of authority. [Texas Civil Statutes, Title 32, Article 2.21.D.(1)-(2)] By way of this letter, I am placing you on notice that Ms. Oshita and Mr. Bogert lack the authority to unilaterally bind IPG to any settlement agreement in this matter."

A copy of Mr. Sun's November 3, 2003 letter is attached hereto as Exhibit A.

6.  In addition, the mediator in the underlying dispute between MPAA and IPG, Deanne Siemer, with whom the Agreement was negotiated, was also placed on notice that Ms. Oshita and Mr. Bogert lacked authority to enter into a settlement agreement in the underlying matter. A copy of an August 8, 2003 letter from Mr. Sun to Ms. Siemer is attached hereto as Exhibit B.

7.  In the August 8, 2003 letter to Ms. Siemer, Mr. Sun explained that Ms. Oshita had only a 25% voting interest in IPG and that any other additional interest Ms. Oshita might have in IPG did not confer voting rights to Ms. Oshita beyond her 25% voting interest. Accordingly, and because Ms. Galaz had a greater voting interest in

4

IPG- 37.5%, Ms. Siemer was advised that, ". . .IPG cannot make any decisions or take any action with respect to the mediation. . .without Ms. Galaz's authorization."

8.  That Ms. Oshita only had a 25% membership or voting interest in IPG was confirmed by a jury in the Los Angeles Superior Court lawsuit filed by Ms. Galaz against Ms. Oshita and IPG entitled <u>Galaz v. Oshita, et al.</u> A copy of the Plaintiff's Judgment on Jury Verdict ("the Judgment") is attached hereto as Exhibit C. At page 6, lines 12-19 of the Judgment, the jury determined that Ms. Oshita had only an "economic interest" and not a "membership interest" in IPG beyond Ms. Oshita's initial 25% interest in IPG. Therefore, the jury confirmed that, at all times relevant to the purported Agreement between MPAA and IPG, Ms. Galaz had a greater membership interest in IPG than Ms. Oshita did.

9.  Despite being placed on notice that neither Ms. Oshita nor Mr. Bogert had the authority to enter into a settlement with MPAA, MPAA nevertheless chose, at its own risk, to disregard this lack of authority and purported to enter into the Agreement with Ms. Oshita and Mr. Bogert purporting to act on behalf of IPG. Because MPAA was notified that Ms. Galaz' consent was required to bind IPG to the Agreement, and MPAA then chose not to obtain Ms. Galaz's consent, the Agreement is void *ab initio* and is not binding upon IPG. Neither MPAA, nor Ms. Oshita or Mr. Bogert, ever informed Ms. Galaz of the terms of the Agreement until the MPAA responded to a subpoena issued by Ms. Galaz on the eve of trial with Ms. Oshita on December 4, 2004, by producing a copy of the Agreement.

10. Nevertheless, MPAA contends that the Agreement is valid and seeks to enforce it. Specifically, on April 9, 2008, counsel for MPAA

5

1  wrote to counsel for IPG and demanded that IPG withdraw any claims it
2  may have with regard to United States Copyright Office's 1998 and 1999
3  Cable Royalty Funds on the grounds that such claims were barred by the
4  terms of the Agreement. A copy of that letter is attached hereto as
5  Exhibit D.

6      11. Therefore, an actual controversy exits between MPAA and WSG
7  as to whether or not the Agreement is enforceable or void *ab initio*.

## GROUNDS FOR RESCISSION

    12. Settlement Agreement-Part I provided that within thirty days after its execution, IPG was to forward information to MPAA regarding its royalty claims, and then MPAA would evaluate them and state what amount of money it would pay IPG. If IPG disagreed with MPAA's conclusion, IPG could contest such conclusion through arbitration. However, Settlement Agreement-Part I was silent on what would occur if IPG failed to forward its information to MPAA with regard to its specific royalty claims.

    13. Ultimately, MPAA seized on this uncertainty in the Agreement when IPG failed to submit its information on its 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds within thirty days of the execution of the Agreement. Specifically, on December 1, 2004, counsel for MPAA rejected IPG's claims made pursuant to Settlement Agreement-Part I, on the grounds that IPG had submitted its information on those claims more than 30 days after the execution of Settlement Agreement-Part I. This was despite the fact that IPG had nevertheless withdrawn its notices of intent to participate in the proceeding to distribute the 1997,

1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds, as provided in Settlement Agreement-Part II.

14. As a result, no consideration existed for IPG's withdrawal pursuant to Settlement Agreement-Part II of its notices of intent to participate in the proceeding to distribute the 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

15. Alternatively, the uncertainty of what would occur should IPG fail to submit its information on its 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds within thirty days of the execution of the Agreement, resulted in a failure of consideration for IPG's withdrawal pursuant to Settlement Agreement-Part II of its notices of intent to participate in the proceeding to distribute the 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

16. As a result, IPG seeks a rescission of Settlement Agreement-Part I and Settlement Agreement-Part II with regard to the 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds, based upon uncertainty, lack of consideration and failure of consideration. For a variety of reasons, not the least of which is the fact that it has already been distributed and could present a tangle of legal questions were it to be rescinded, IPG does not seek rescission of Settlement Agreement-Part I and Settlement Agreement-Part II with regard to the 1997 Cable Royalty Funds distribution and dismissal of appeals thereof.

wsgvmpaa9.p2.wpd    AMENDED COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

**PARTIES**

17. Plaintiff is informed and believes, and thereupon alleges, that MPAA is a New York Corporation doing business in Sherman Oaks, in the State of California.

18. Plaintiff WORLDWIDE SUBSIDY GROUP, LLC, is a Texas Limited Liability Company, doing business in the states of California and Texas as INDEPENDENT PRODUCERS GROUP with its principal place of business in the County of Bexar, in the State of Texas.

19. Plaintiff WORLDWIDE SUBSIDY GROUP, LLC, is a California Limited Liability Company, doing business in the states of California and Texas as INDEPENDENT PRODUCERS GROUP with its principal place of business in the County of Bexar, in the State of Texas.

20. IPG is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. IPG will amend this Complaint, by leave of Court if necessary, to allege their true names and capacities when ascertained.

**FIRST CAUSE OF ACTION**

**(For Declaratory Relief)**

**(Against all Defendants)**

21. IPG incorporates by reference herein the allegations of paragraphs 1 through 20 as set forth in full.

22. An actual controversy exists between IPG and MPAA regarding whether or not the Agreement is void.

23. A judicial declaration as to whether or not the Agreement is void is necessary and appropriate to enable the respective parties to enforce their rights with regard to United States Copyright

Office's 1998 and 1999 Cable Royalty Funds and the 1997, 1998 and 1999 Satellite Royalty Funds.

## SECOND CAUSE OF ACTION

### (For Rescission)

### (Against all Defendants)

24. IPG incorporates by reference herein the allegations of paragraphs 1 through 20 as set forth in full.

25. As set forth above, the Agreement is uncertain as to what would occur should IPG fail to submit its information on its 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds within thirty days of the execution of the Agreement.

26. In addition, given that uncertainty, Settlement Agreement-Part I and Settlement Agreement-Part II lack consideration for IPG's dismissal of its claims for 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds.

27. In addition, Settlement Agreement-Part I and Settlement Agreement-Part II suffer from a failure of consideration for IPG's withdrawal of its claims for 1998 and 1999 Cable Royalty Funds and its 1997, 1998 and 1999 Satellite Royalty Funds, since IPG has received nothing for those withdrawals.

28. IPG will suffer substantial financial prejudice and will be deprived the benefit of the bargain unless Settlement Agreement-Part I and Settlement Agreement-Part II are rescinded.

29. IPG intends that service of the summons and this amended complaint will serve as notice of rescission of Settlement Agreement-Part II and Settlement Agreement-Part II.

9

wsgvmpaa9.p2.wpd    AMENDED COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

WHEREFORE, IPG prays for judgment against Defendants as follows:

1. That the Court order that the Agreement was entered into without the consent of a majority in interest of the members of IPG, and is therefore void, except with regard to the 1997 Cable Royalty Funds distribution and dismissal of appeals thereof;

2. That the Court order that Settlement Agreement-Part I and Settlement Agreement-Part II are rescinded, except with regard to the 1997 Cable Royalty Funds distribution and dismissal of appeals thereof;

3. For costs of suit;

4. For such other and further relief as the Court may deem proper.

Dated: June 26 2008

PICK & BOYDSTON, LLP

By /s/
Brian D. Boydston
Attorneys for Plaintiffs
WORLDWIDE SUBSIDY GROUP, LLC
a Texas Limited Liability
Company, dba INDEPENDENT
PRODUCERS GROUP, WORLDWIDE
SUBSIDY GROUP, LLC