KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MARC E. MAYER (SBN 190969)
mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

GREGORY O. OLANIRAN (*pro hac vice*)
LUCY HOLMES PLOVNICK (*pro hac vice*)
STINSON MORRISON HECKER LLP
1150 18th Street NW, Suite 800
Washington, D.C. 20036-3816
Telephone:  (202) 785-9100
Facsimile:  (202) 785-9163

Attorneys for Defendant
MOTION PICTURE ASSOCIATION OF
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP; WORLDWIDE SUBSIDY GROUP, LLC, a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  CV08-3701 FMC (MANx)<br><br>The Honorable Florence-Marie Cooper<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT MOTION PICTURE ASSOCIATION OF AMERICA, INC TO DISMISS**<br><br>DATE:     July 14, 2008<br>TIME:     10:00 a.m.<br>CTRM:   750 Roybal Building |

Mitchell
Silberberg &
Knupp LLP

1889282.1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................. 1

II.  THE COURT SHOULD RULE ON IPG'S AMENDED COMPLAINT .................................................................................................. 2

III. IPG'S AMENDED COMPLAINT SHOULD BE DISMISSED. .................. 4

   A.  IPG's Amended Complaint Fails To Join A Necessary And Indispensable Party. .................................................................. 4

   B.  IPG's Amended Complaint Is Outside The Statute of Limitations. ................................................................................... 7

   C.  IPG Does Not Refute The Argument That Its Claim for Declaratory Relief Is Not Supported By Documents It Has Proffered. ............................................................................... 9

IV.  CONCLUSION ................................................................................... 11

Mitchell Silberberg & Knupp LLP
1889282.1

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Boyle v. United Tech. Corp.,
 487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ................................... 8

Dawavendewa v. Salt River Project Agr. Imp. And Power Dist.,
 276 F.3d 1150 (9th Cir. 2002) ............................................................................ 4, 7

Eaton v. Siemens,
 2007 WL 1500724 (E.D. Cal. May 23, 2007) ....................................................... 6

Galaz v. Oshita,
 2006 WL 1461134 (Cal App. 2 Dist. May 30, 2006) ......................................... 11

Jones v. AT &T,
 2008 WL 902292 (N.D. Cal. March 31, 2008) ..................................................... 6

Jordan v. City of Philadelphia,
 66 F. Supp. 2d 638 (E.D. Pa. 1999) ...................................................................... 2

Mack v. S. Bay Beet Distribs., Inc.,
 798 F.2d 1279 (9th Cir. 1986) .............................................................................. 6

Milsap v. U-Haul Truck Rental Co.,
 2006 WL 3797731 (D. Ariz,. Dec. 20, 2006) ....................................................... 2

Northrop Corp. v. McDonnell Douglas Corp.,
 705 F.2d 1030 (9th Cir. 1983) ........................................................................... 4, 7

Riddle v. Mondragon,
 83 F.3d 1197 (10th Cir. 1982) .............................................................................. 5

Robinson v. California,
 2005 WL 1561524 (E.D. Cal. June 29, 2005) ...................................................... 2

Steckman v. Hart Brewing, Inc.,
 143 F.3d 1293 (9th Cir. 1998) .............................................................................. 5

W. Mining Council v. Watt,
 643 F.2d 618 (9th Cir. 1981) ................................................................................ 5

Mitchell
Silberberg &
Knupp LLP

1889282.1

## TABLE OF AUTHORITIES cont'd

**Page(s)**

**STATUTES**

D.C. Code 1973 § 12-301(7)-(8) .................................................................................................. 7

**PROCEDURAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 8, 11

Federal Rule of Civil Procedure 12(b)(7) ................................................................................. 7

Federal Rule of Civil Procedure 19(a)(1) ............................................................................. 4, 5

**OTHER AUTHORITIES**

6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
§ 1476 (2d ed. 2007) ................................................................................................. 3

Schwarzer, Tashima & Wagstaffe, <u>California Practice Guide: Federal
Procedure Before Trial</u> § 9:262 (Rutter Group 2007) ............................................. 3

Defendant Motion Picture Association of America, Inc. ("MPAA") hereby submits its Reply Memorandum in Support of its Motion to Dismiss the instant cause of action filed by Plaintiffs Worldwide Subsidy Group, LLC, a Texas Limited Liability Company, dba Independent Producers Group and Worldwide Subsidy Group, LLC, a California Limited Liability Company, formerly named Artist Collections Group, LLC (hereinafter collectively referred to as "IPG").

## I.   INTRODUCTION

This action is an attempt by IPG to void or partially rescind an agreement executed by MPAA, IPG and the Librarian of Congress ("Librarian"), which addresses the parties' rights with regard to distribution of cable and satellite royalties collected by the U.S. Copyright Office ("Office") for 1997, 1998 and 1999 royalty years pursuant to a statutory licensing scheme (the agreement is hereinafter referred to as the "Contract").  See Amended Compl. at ¶¶ 1-4 and 21-29 and Olaniran Dec., Exh. A (Contract) at Part 1, p. 1, ¶ 1 and Part 2, p. 1, ¶ 2. MPAA moved to dismiss the action in part because IPG failed to (and, in any event cannot) join a necessary and indispensable party and because the action failed to state a claim upon which relief may be granted.  See Motion to Dismiss at pp. 6-19. Specifically, IPG's failure to join the Librarian is fatal because the Librarian is a party to the Contract.  See Amended Compl. at ¶ 3; Olaniran Dec., Exh. A (Contract) at Part 2, p. 1-3.  This action, moreover, is time-barred under federal common law, which must be applied here because the Librarian is a government agent.  See Motion to Dismiss at pp. 12-15.  Finally, IPG's claim for declaratory relief is not supported by the documents it has proffered.

After having an opportunity to review MPAA's Motion to Dismiss, IPG apparently has realized that its lawsuit is fatally deficient if the Librarian is not a party to the suit and if federal common law is properly applied.  IPG attempts to cure the deficiencies with the Amended Complaint, which extricates provisions

addressing the 1997 cable royalty year from IPG's list of contentions. See Amended Compl. at p. 8, ¶¶ 21-29 and p. 10, ¶¶ 1-4. Relying on this change in the Amended Complaint, and citing no legal authority whatsoever in its Opposition, IPG incredulously asks the Court to completely ignore the Librarian as a party to the Contract and assume that the Librarian had (and has) no interest in enforcing the other provisions in the Contract, particularly those respecting the remaining royalty years. See IPG Opposition at p. 6, lines 19-23 and p. 7, lines 3-8.

Regardless of IPG's sophistic reasoning, the Amended Complaint neither cures the fact that the Librarian is a party to the Contract and must be joined, nor bars the applicability of federal common law. Accordingly, dismissal of this lawsuit due to failure to join a necessary and indispensable party and failure to state a claim remains appropriate.

## II.   THE COURT SHOULD RULE ON IPG'S AMENDED COMPLAINT.

As a threshold matter, notwithstanding the filing of the Amended Complaint, the Court can and should rule on MPAA's Motion to Dismiss. Rather than require the parties to re-file a motion to dismiss that is still dispositive despite an amended pleading, federal courts regularly treat pending motions to dismiss as directed towards a nominally new complaint. See, e.g., Robinson v. California, 2005 WL 1561524, at *1 (E.D. Cal. June 29, 2005) (recognizing that when amendment "does not cure the deficiencies detailed in defendants' motion" to dismiss, court should treat the motion "as directed at plaintiff's amended complaint"); Milsap v. U-Haul Truck Rental Co., 2006 WL 3797731, at *2 (D. Ariz. Dec. 20, 2006) ("given the substantial similarity between the original and amended complaints, requiring [defendants] to serve another set of dismissal motions specifically directed at the amended complaint would be a waste of resources"); Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 641 (E.D. Pa. 1999) (treating motion to dismiss as addressing amended complaint "[s]ince Counts IV through XII of the amended

complaint "suffers from the same deficiencies that are addressed in defendants' motions to dismiss which were directed to [plaintiff's] original complaint").

As more fully discussed below, none of the changes made by IPG in the Amended Complaint affect the dispositive legal conclusions in the Motion to Dismiss that IPG failed join a necessary and indispensable party and failed to state a claim upon which relief may be granted.  Indeed, IPG could not have believed that its Amended Complaint mooted MPAA's pending Motion to Dismiss because it filed its Opposition after it had already amended the Complaint and made no argument in the Amended Complaint that its revisions rendered the Motion to Dismiss moot.  What is more, sound judicial administration dictates treating the Motion to Dismiss as directed towards the Amended Complaint.  As Wright & Miller states, "[d]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.  If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.  To hold otherwise would be to exalt form over substance." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (2d ed. 2007); see also Schwarzer, Tashima & Wagstaffe, California Practice Guide:  Federal Procedure Before Trial § 9:262 (Rutter Group 2007) (recognizing that a court "may, however, proceed with [a motion to dismiss] if the amendment does not cure the defect").  Therefore, all of the arguments in MPAA's Motion to Dismiss – to which IPG fully responded in its Opposition – are equally applicable to the Amended Complaint.[1]

---

[1] MPAA also notes that IPG's paragraph numbering scheme remained consistent between the two complaints. With the exception of one citation, all references to the Complaint in the Motion to Dismiss can be applied directly to the Amended Complaint.  The only citation MPAA has identified which has changed is on p. 9 of the Motion to Dismiss at line 22 (the reference to Compl. at p. 9, ¶¶ 1-4 would now refer to Amended Compl. at p. 10, ¶¶ 1-4).

## III. IPG'S AMENDED COMPLAINT SHOULD BE DISMISSED.

### A. IPG's Amended Complaint Fails To Join A Necessary And Indispensable Party.

As MPAA discussed more fully in its Motion to Dismiss, at pp. 7-8, the Librarian is a necessary and indispensable party to this proceeding because, as a party to the Contract, it satisfies both tests articulated in Federal Rule of Civil Procedure 19(a)(1). First, complete relief cannot be afforded to the existing parties in this case without the Librarian's joinder, as the judgment would not address the Librarian's rights and obligations under the Contract or be binding on him, a nonparty. Dawavendewa v. Salt River Project Agr. Imp. And Power Dist., 276 F.3d 1150, 1156 (9th Cir. 2002). In addition, IPG concedes that even if it obtains the relief it seeks here, it would still have to instigate a second lawsuit against the Librarian to obtain full relief. See IPG Opposition at p. 8, lines 1-3. Thus, as IPG has acknowledged, a decision on the merits in this proceeding, without the joinder of the Librarian, would provide only "hollow" relief to IPG and MPAA. See Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983).

Second, because the Librarian is a party to the Contract, the disposition of this case without the Librarian's presence will impede the Librarian's ability to protect his rights under the Contract, which, contrary to IPG's allegations, extend beyond the 1997 cable royalties. There is no dispute that the Librarian is a party to the Contract. See Amended Compl. at ¶ 3; see also Olaniran Dec., Exh. A (Contract) at Part 2, p. 2. The Contract contains provisions pertaining, not only to the 1997 royalty year, but also to the 1998 and 1999 cable and the 1997, 1998, and 1999 satellite royalties. Olaniran Dec., Exh. A (Contract) at Part 2, p.1. Moreover, the Librarian has relied on the Contract to make final distributions of not only the 1997 cable royalties, but also final distributions of the 1997 and 1998 satellite royalties. See Motion to Dismiss at p. 4, lines 16-17, and p. 5, lines 1-2. The Librarian also fashioned reserve amounts for the other royalty years addressed by

the Contract in reliance on the Contract and IPG's withdrawals from those proceedings. See id. at p. 5, lines 2-12. Certainly, a determination by this Court which favors IPG on issues concerning the 1998 and 1999 cable and 1997, 1998 and 1999 satellite royalty years poses substantial risk to the Librarian's interests. Accordingly, the Librarian satisfies the Rule 19(a)(1) tests.

IPG offers nothing to refute MPAA's argument that the Librarian satisfies these tests. IPG posits simply that by removing one issue from its cause of action – the one related to the 1997 cable royalty year – it has somehow eliminated the Librarian's signature from the Contract and his interest in the remainder of the Contract. IPG Opposition at p. 7, lines 3-8. In effect, IPG asks the Court to assume, in the Librarian's absence, that despite the plain language of the Contract, the Librarian's interest in the Contract was (and is) somehow limited only to the 1997 cable royalties. See IPG Opposition at p.7, lines 21-23.[2] IPG's conclusory allegation is not supported by facts, and is therefore not entitled to deference. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); see also Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1982). While IPG may torture the facts of this case to suit its fancy, no amount of maneuvering on IPG's part can change the fact that the Librarian is a party to the Contract and that his interests in the provisions of the Contract extend beyond those related to the 1997 royalty year. See Olaniran Dec., Exh. A (Contract) at Part 2, pp. 1-2.

Finally, as IPG should know, the provisions regarding the 1998 and 1999 cable and 1997, 1998, and 1999 satellite royalty years do not appear in the Contract fortuitously. Rather, they respond to the Librarian's own concerns

---

[2] IPG even makes the incredible allegation in the Amended Complaint that the Librarian was only "technically" a party to the Appellate Cases. Amended Compl. at ¶ 3. In fact, both Appellate cases were brought against the Librarian seeking to overturn the Agency Determination and were not proceedings between MPAA and IPG, as IPG incorrectly infers. See RJN Exh. B at p. 1.

following the fraud perpetrated on the Office[3] by IPG's principal, Raul Galaz. See RJN at Exhs. N, O, and P. In its victim impact statement filed in that criminal case, the Office recognized that Raul Galaz's crimes had far-reaching implications affecting subsequent royalty years:

> The ramifications of Mr. Galaz's crime <u>extend beyond the 1997 cable distribution proceeding</u>. Mr. Galaz, or entities in which he has an interest, have filed cable and satellite claims for the years 1998 through 2001. The Office cannot accept these claims at face value, as the Office has no confidence in the veracity of the information provided therein. Thus, before commencing proceedings to distribute these funds, the Office will need to investigate the veracity of the provided information. Such investigation will increase the Library's administrative costs and will delay the receipt of royalties by legitimate copyright owners.
>
> * * *
>
> Furthermore, the Office has reason to believe that Mr. Galaz is continuing to conduct business in the usual course. On the day before his plea hearing, Mr. Galaz was at the Office examining cable and satellite claims. In order to better ensure that Mr. Galaz does not again wreak havoc on the claims filing system and given the administrative costs associated with his future participation in distribution proceedings, <u>the Office also requests that the Court ban Mr. Galaz or any entity in which he has an interest from filing with the Office future cable or satellite claims and from pursuing claims which he or such entities have already filed</u>.

See Second RJN at Exh. A (Copyright Office Victim Impact Statement in <u>United States v. Raul C. Galaz</u>, Criminal Docket No. 02-cr-00230 (dated September 13, 2002)) (emphasis added).[4] Plainly, prior to executing the Contract, the Office considered Raul Galaz and IPG, in whom Raul Galaz had an interest, significant threats to the future of the compulsory license scheme. The Librarian's expressed

---

[3] The Office is a <u>department</u> within the Library of Congress, which is directed by the Librarian. <u>See</u> Motion to Dismiss at pp. 2-3.

[4] In considering a motion to dismiss, the Court is authorized to take judicial notice of public records. See <u>Jones v. AT &T</u>, 2008 WL 902292 at *2-*3 (N.D. Cal. March 31, 2008) (citing <u>Mack v. S. Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) and <u>Eaton v. Siemens</u>, 2007 WL 1500724 at 1, n.5 (E.D. Cal. May 23, 2007)).

concerns are instructive regarding the Contract's provisions regarding royalty years other than the 1997 cable royalty year.

As a party to the Contract, the Librarian should be presumed to have an interest in enforcing **all** of the provisions of the Contract, not merely those suggested by IPG. Neither the Contract itself, nor the record before the Court, suggests differently. Therefore, notwithstanding the Amended Complaint, the Librarian is a necessary and indispensable party to this case. See Dawavendewa, 276 F.3d at 1156-57; Northrop, 705 F.2d at 1044. Because the Amended Complaint fails to join the Librarian, and because joinder is, in any event, not possible absent a specific grant of sovereign immunity, see Motion to Dismiss at p. 9, IPG's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

### B.   IPG's Amended Complaint Is Outside The Statute of Limitations.

Under federal common law, which rightfully applies to this dispute, courts generally apply the statute of limitations of the most analogous action under the law of the state in which the cause of action arose. See Motion to Dismiss at p. 12, lines 20-28. Because the District of Columbia statute of limitations applies, see id. at p. 13, lines 7-24, the statute of limitations for this action is three years. See D.C. Code 1973 § 12-301(7)-(8).

At the outset, it is important to note that IPG has conceded that it became aware of the Contract no later than December 4, 2004, when MPAA provided the Contract to IPG's current counsel in response to a subpoena served on MPAA.[5] Amended Compl. at ¶ 9. Therefore, if the Court determines that the District of Columbia's three-year statue of limitations applies, the Amended Complaint

---

[5] MPAA still maintains that the IPG entities knew or should have known about the Contract no later than March 31, 2004, its date of execution. See Motion to Dismiss at pp. 14-15.

Mitchell Silberberg & Knupp LLP
1889282.1

7

should be dismissed as time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6).

In its unsuccessful attempt to avoid the application of federal common law, IPG again relies on the false notion that the Librarian is not a necessary party. IPG contends, first, that this cause of action is not governed by federal common law (and therefore not subject to the District of Columbia statute of limitations) because the Librarian is no longer a necessary party following the filing of the Amended Complaint. IPG Opposition at p.7, lines 21-22 and p. 8, lines 13-15. However, for the purpose of determining what statute of limitations applies, the question of whether the Librarian is a necessary party here is immaterial. Regardless of whether the Court determines that the Librarian is a necessary and indispensable party to this action, this action is governed by federal common law because, with the Librarian as a party to the Contract, it concerns a government contract. See Boyle v. United Tech. Corp., 487 U.S. 500, 504, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ("The obligations and rights of the United States under its contracts are governed exclusively by federal law."). And, in disputes regarding government contracts, federal common law replaces state law regardless of whether Congress has shown any intent to preempt the area. See id. The Amended Complaint seeks to void and rescind the Contract to which the Librarian, a government agent, is a party. See Motion to Dismiss at pp. 7-8. Because the application of federal common law hinges on the parties to the Contract, and not on the parties to the lawsuit, this argument must be rejected outright.

Next, IPG contends that due to its supposed elimination of the Librarian as a necessary party (via the Amended Complaint), its cause of action arose in California, rather than in the District of Columbia. See id. at p. 8, lines 13-22. This argument too is premised on failed logic. As discussed, supra, regardless of IPG's decision to remove its cause of action regarding the 1997 cable royalty year, the Librarian remains a party to the Contract and retains an interest in the Contract

Mitchell Silberberg & Knupp LLP

1889282.1

8

regarding IPG's withdrawal from the 1998 and 1999 cable and 1997, 1998, and 1999 satellite proceedings. See Amended Compl. at ¶ 3; see also Olaniran Dec., Exh. A (Contract), at Part 2, p. 2.

As stated, many factors support the assertion that the cause of action arose in the District of Columbia. The purpose of the Contract was to settle controversies between IPG, MPAA, and the Librarian that were pending before the United States Court of Appeals for the District of Columbia Circuit and the Office as to the 1997, 1998, and 1999 cable and satellite royalties. See Olaniran Dec., Exh. A (Contract) at Part 1, p. 1, ¶ 1 and Part 2, p. 2, ¶ 2. All of these open proceedings were pending in the District of Columbia. MPAA, IPG and the Librarian negotiated the Contract in the District of Columbia with the aid of a mediator based in the District of Columbia.[6] See Amended Compl. at ¶ 6 and Amended Compl. Exh. B at 1. The Contract also included a choice of law provision regarding the laws of the District of Columbia. See Amended Compl. at ¶¶ 2-3; see also Olaniran Dec., Exh. A (Contract), at Part 2, p. 7 at ¶ 10(d) and Part 2, p. 2 at ¶ 5(c). All of these factors establish that the cause of action arose in the District of Columbia. As a result, the Court should rule that IPG's cause of action is time-barred.

### C. IPG Does Not Refute The Argument That Its Claim for Declaratory Relief Is Not Supported By Documents It Has Proffered.

In its Motion to Dismiss, MPAA argues that the Contract (1) contradicts IPG's claim that MPAA was aware that Marian Oshita lacked authority to enter into the Contract on behalf of IPG and (2) that the court judgment on which IPG

---

[6] IPG makes an incongruous argument that, despite its reliance on correspondence with the mediator as a basis for its Amended Complaint, see Amended Compl. at ¶ 6 and Amended Compl. Exh. B, the mediator "is not a witness to the facts at issue here." IPG Opposition at p. 8, line 26. This argument unrelated to the question of where IPG's cause of action accrued.

relies does not support IPG's allegation that Marian Oshita lacked authority to enter into the Contract.  In response, IPG claims that Mr. Bogert's letter, which was attached to the Contract, is in some way insufficient because it fails to reference Ms. Galaz by name when it indicates that the Contract has been "duly authorized by all requisite corporate action."  IPG Opposition at p. 9, lines 7-21; see also Olaniran Dec., Exh. A (Contract) at Part 1, Attachment A.  However, the meaning of the language in Mr. Bogert's letter is clear, and MPAA is unaware what particular phraseology could more plainly indicate that Ms. Oshita, then President of IPG, and Mr. Bogert, IPG's counsel of record, had obtained all required internal corporate authorization necessary to effectuate the Contract on IPG's behalf.

Moreover, IPG ignores the fact that the Contract itself also required all signatories to attest that they had "received all consents, power and authority required to execute the Agreement."  Olaniran Dec., Exh. A (Contract) Part 1, p. 6 at ¶ 10(a).  Thus, through her execution of the document, Marian Oshita also made an affirmative representation to MPAA that she had received all internal consent necessary to bind IPG to the Contract.  Given these representations, MPAA properly relied that Ms. Oshita had obtained all consents required to sign the Contract on IPG's behalf, including that of Ms. Galaz.  Therefore, IPG has failed allege facts establishing that MPAA was on notice that Ms. Oshita and Mr. Bogert lacked authority to bind IPG on March 31, 2004, the date the Contract was entered.

IPG also fails to establish that the January 26, 2005 Judgment on Jury Verdict ("Judgment") supports its claims.  Contrary to IPG's Opposition, see IPG Opposition at p. 10, line 2, the Judgment fails to indicate at any point that it incorporates in its holding the answers to specific questions that were issued by the jury.[7]  The Judgment indicates unequivocally, however, that it is effective "from

---

[7] On the contrary, as the California appellate court recognized, the Superior Court's Judgment was independent from the jury's verdict, as it was issued

(…continued)

the date of entry," which is January 26, 2005. Amended Compl. at Exh. C, p. 9, line 3. Because the Judgment is not retroactive in its application, it does not state Marian Oshita's ownership interest or her authority to bind IPG on March 31, 2004, the date the Contract was executed. See Olaniran Dec., Exh. A (Contract) at Part 1, p. 1 and Part 2, p.1.

Taken together, IPG's affirmative assurance that all necessary internal consents had been obtained, and IPG's failed evidentiary support fail to support IPG's request for declaratory relief. As a result, the Court should dismiss IPG's claim for declaratory relief (Amended Complaint Count 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, and for the reasons articulated in MPAA's Motion to Dismiss, MPAA respectfully requests that this Court enter an order dismissing the instant action pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6).

DATED: July 7, 2008

GREGORY O. OLANIRAN
LUCY HOLMES PLOVNICK
STINSON MORRISON HECKER LLP

KARIN G. PAGNANELLI
MARC E. MAYER
MITCHELL SILBERBERG & KNUPP LLP

By: _____/s/ Karin G. Pagnanelli_____
KARIN G. PAGNANELLI
Attorneys for Defendant
MOTION PICTURE ASSOCIATION
OF AMERICA, INC.

---

(…continued)
following briefing by the parties regarding how the Superior Court's Judgment should resolve ownership issues within IPG that were not resolved by the verdict. See Galaz v. Oshita, 2006 WL 1461134 at *3-*4 (Cal App. 2 Dist., May 30, 2006).

Mitchell Silberberg & Knupp LLP
1889282.1