KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MARC E. MAYER (SBN 190969)
mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREGORY O. OLANIRAN (*pro hac vice*)
LUCY HOLMES PLOVNICK (*pro hac vice*)
STINSON MORRISON HECKER LLP
1150 18th Street NW, Suite 800
Washington, D.C. 20036-3816
Telephone: (202) 785-9100
Facsimile: (202) 785-9163

Attorneys for Defendant
MOTION PICTURE ASSOCIATION OF
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP; WORLDWIDE SUBSIDY GROUP, LLC, a California Limited Liability Company, formerly named ARTIST COLLECTIONS GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York Corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV08-3701 FMC (MANx)<br><br>The Honorable Florence-Marie Cooper<br><br>**SECOND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT MOTION PICTURE ASSOCIATION OF AMERICA, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE: July 14, 2008<br>TIME: 10:00 A.M.<br>CTRM.: 750 Roybal Building |

Mitchell Silberberg & Knupp LLP
1889163.1

1   Pursuant to Federal Rule of Evidence, Rule 201, Defendant Motion Picture
2   Association of America, Inc. ("MPAA"), requests that this Court take judicial
3   notice of the following document:
4   Attached hereto as Exhibit A is a true and correct copy of the United States
5   Copyright Office Victim Impact Statement in <u>United States v. Raul C. Galaz</u>,
6   Criminal Docket No. 02-cr-00230 (dated September 13, 2002).
7   Good cause exists for the Court to grant this Second Request for Judicial
8   Notice.  Fed. R. Evid. 201(b)(2) provides that "a judicially noticed fact must be
9   one not subject to reasonable dispute in that it is…capable of accurate and ready
10  determination by resort to sources whose accuracy cannot reasonably be
11  questioned."  Courts routinely and uniformly take judicial notice of legal briefs and
12  memoranda publicly filed in other cases.  See <u>Holder v. Holder</u>, 305 F.3d 854, 866
13  (9th Cir. 2002) (judicial notice of state court of appeal opinion and briefs); <u>MGIC
14  Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986) (judicial notice of
15  motion to dismiss filed in another case; "we may take judicial notice of matters of
16  public record outside the pleadings"); <u>Egan v. Teets</u>, 251 F.2d 571, 578-79 (9th
17  Cir. 1957) (judicial notice of "record in the prior district court proceedings").
18  Exhibit A is a public court filing in the District of Columbia District Court.
19  As such, this document is "capable of ready determination by resort to sources
20  whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), and
21  properly is the subject of judicial notice.  MPAA, thus, respectfully requests that
22  this Court take judicial notice of Exhibit A.
23  //
24  //
25  //
26  //
27  //
28  //

Mitchell Silberberg & Knupp LLP

1889163.1

1

| | |
|---|---|
| DATED  July 7, 2008 | GREGORY O. OLANIRAN<br>LUCY HOLMES PLOVNICK<br>STINSON MORRISON HECKER LLP<br><br>KARIN G. PAGNANELLI<br>MARC E. MAYER<br>MITCHELL SILBERBERG & KNUPP LLP<br><br>By: _____/s/ Karin G. Pagnanelli_____<br>       KARIN G. PAGNANELLI<br>       Attorneys for Defendant<br>       MOTION PICTURE ASSOCIATION<br>       OF AMERICA, INC. |

Mitchell
Silberberg &
Knupp LLP

1889163.1

2

# EXHIBIT A

10/24/02  15:11 FAX 202 252 3423        COPYRIGHT OFFICE CARP                    ☒002



The Register of Copyrights
of the
United States of America

Library of Congress
Department 17
Washington, D.C. 20540

(202) 707-8350

September 13, 2002

The Honorable Henry H. Kennedy, Jr.
United States District Court for the
 District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:   United States v. Raul C. Galaz,
      Criminal No. 02-230

Dear Judge Kennedy:

    The United States Copyright Office ("the Office") thanks the Court for the opportunity to submit the following Victim Impact Statement.

    The Copyright Office is a service unit of the Library of Congress and has responsibility for administering the compulsory licenses established by title 17, United States Code, and the Copyright Arbitration Royalty Panels that set rates and terms and determine the distribution of royalties.

    A compulsory license is a statutory copyright licensing scheme whereby copyright owners are required to license their works to users at a government-fixed price and under government-set terms and conditions. Section 111 of title 17 of the United States Code allows a cable system to retransmit both radio and television broadcast programming to its subscribers who pay a fee for such service. Likewise, section 119 of title 17 of the United States Code allows a satellite carrier to retransmit television (but not radio) broadcast programming to satellite home dish owners for their private home viewing. Cable systems and satellite carriers are required to submit royalties to the Copyright Office for the carriage of each signal on a semiannual basis in accordance with prescribed statutory royalty rates. These royalties are distributed later to the copyright owners of the broadcast programming.

    The first step in the distribution process is that copyright owners claiming to be entitled to cable and satellite royalties are required to file with the Librarian of Congress ("Librarian") claims during the month of July each year for the previous calendar year's royalties. 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). Once the claims to the cable and satellite royalty funds have been filed with the Copyright Office, the Office examines each claim to determine the timeliness and legal sufficiency of the claim. However, the Office accepts the information provided in each claim as facially valid and, therefore, does not look behind the information provided in the claim.



Exhibit A

Page 3

-2-

The current filing system is founded on trust–trust that the copyright owners and the agents filing claims are providing the Office with truthful information and are authorized to file such claims. Thus, in order to ensure that copyright owners with legitimate claims are rightfully compensated, the system depends upon the honesty of those filing claims. Raul Galaz has broken that trust, and his criminal actions constitute an attack on the integrity of the entire royalty fee distribution process created by Congress.

As Mr. Galaz has admitted, he filed with the Copyright Office several false cable and satellite claims using various "false and fraudulent aliases and fictitious business entities" in order to receive cable and satellite royalties for several years to which he was not entitled. Factual Proffer, filed June 20, 2002, at 1-2. One such fictitious business entity was Tracee Productions. Mr. Galaz filed cable and satellite claims for the years 1994-1996 in the name of Tracee Productions claiming an ownership interest in the cable and satellite royalty funds for the program "Garfield and Friends." Id. at 1-3. As a result of his fraudulent submission of claims relating to "Garfield and Friends," Mr. Galaz "converted to his own benefit" over $328,000 of cable and satellite royalty funds. Id. at 3.

The Librarian can distribute only those royalties that are not in controversy. 17 U.S.C. §§ 111(d)(4)(B), 119(b)(4)(B). Thus, if copyright owners are able to agree on how the royalties are to be divided among themselves, the Librarian is authorized to distribute the funds. If, however, copyright owners are not able to reach a settlement regarding the division of the royalties, then the Librarian must convene a Copyright Arbitration Royalty Panel ("CARP") to determine the distribution of the royalties. Id. The CARP is comprised of three arbitrators who hear evidence from the copyright owners on how the royalties should be distributed. This is a more costly route, as both the Library's administrative costs and the arbitrators' fees are deducted from the funds to be distributed. 17 U.S.C. §§ 801(d), 802(h)(1). Therefore, settlement among the copyright owners is desirable because it avoids the considerable costs of a proceeding before a CARP.

The filing of false claims significantly decreases, if not totally eliminates, the possibility of settlement. When the legitimacy of a particular claimant is at issue, there is a controversy regarding the distribution of the funds, and a CARP must be empaneled to resolve the controversy. For example, as the Court is aware, Mr. Galaz was a participant in the recently concluded CARP proceeding to determine the distribution of 1997 cable royalty funds in the syndicated programming category. The need for this proceeding arose in part because there were questions surrounding the legitimacy of certain claims filed by Mr. Galaz. The Motion Picture Association of America ("MPAA") deemed it necessary to challenge Mr. Galaz's eligibility to file claims on behalf of certain copyright owners in a CARP proceeding. The CARP found that Mr. Galaz "made a number of unrealistic assertions about names of parties, companies, and organization names, and royalty claimant status." CARP Report, dated April 16, 2001, at 42. In fact, it is my understanding that Mr. Galaz has admitted that he testified falsely before the CARP in order to conceal his criminal actions.

The end result is that Mr. Galaz's deceit increased the costs of the CARP proceeding because of the time the CARP spent determining the validity of Mr. Galaz's claims. Consequently, legitimate copyright owners have suffered a significant delay in receiving their royalties, and the royalties they ultimately receive will be reduced by the cost of that proceeding.



Exhibit A

Page 4

-3-

The ramifications of Mr. Galaz's crime extend beyond the 1997 cable distribution proceeding. Mr. Galaz, or entities in which he has an interest, have filed cable and satellite claims for the years 1998 through 2001. The Office cannot accept these claims at face value, as the Office has no confidence in the veracity of the information provided therein. Thus, before commencing proceedings to distribute those funds, the Office will need to investigate the veracity of the provided information. Such investigation will increase the Library's administrative costs and will delay the receipt of royalties by legitimate copyright owners.

In addition, the Office will need to reexamine the claims filing system as a whole to determine whether safeguards can be put into place to prevent such flouting of the system in the future. Such safeguards likely will lead to a more costly system, as the Office can no longer afford to accept each claim at face value. Any changes to the filing system which the Office implements likely will lead to more stringent filing requirements, thus making the filing of claims more onerous on all copyright owners. More stringent filing requirements may also increase the amount of time needed for the Office to process the claims, thus resulting in greater administrative expense.

Finally, the Office feels strongly that Mr. Galaz must serve significant jail time for his crime. His criminal actions have resulted in the obtaining by false pretenses of significant funds from the cable and satellite royalty pools deposited with the Copyright Office that should have gone to legitimate copyright owners. His actions have increased administrative costs and delayed the receipt of royalties by legitimate copyright owners.

Furthermore, the Office has reason to believe that Mr. Galaz is continuing to conduct business in the usual course. On the day before his plea hearing, Mr. Galaz was at the Office examining cable and satellite claims. In order to better ensure that Mr. Galaz does not again wreak havoc on the claims filing system and given the administrative costs associated with his future participation in distribution proceedings, the Office also requests that the Court ban Mr. Galaz or any entity in which he has an interest from filing with the Office future cable or satellite claims and from pursuing claims which he or such entities have already filed. The Office requests that such a ban be imposed as part of his sentence and/or as a condition of his supervised release. Such a ban would not infringe Mr. Galaz's rights, as he is not a copyright owner and merely acts as an agent for those copyright owners who have a valid claim. Nor would the rights of those copyright owners represented by him be compromised. Those copyright owners could either file or pursue their claims themselves or could seek new agents to file or pursue claims on their behalf.

To that end, the Office requests that the Court order Mr. Galaz to release all copyright owners with whom he has a contractual relationship from their obligation to have their claims filed or pursued by him or by any entity in which he has an interest. Pursuant to the mandate agreement posted on the website of the Independent Producers Group, such copyright owners have granted to Mr. Galaz the exclusive right to apply for and collect cable and satellite royalties on their behalf. Therefore, these copyright owners are contractually bound to use him or an entity in which he has an interest to act as their agent before the Office. Moreover, it is our understanding that he has every intention of enforcing these agreements and is currently pursuing legal action against copyright owners who, having learned of his fraudulent activities, seek to void their agreements and obtain new representation. Ordering Mr. Galaz



Exhibit A

Page 5

-4-

to release these copyright owners from their contractual obligation will allow them to pursue their claims without incurring the expense to void their contract with Mr. Galaz and will allow them to pursue their claims as they see fit. In addition, such an order would better ensure that Mr. Galaz derives no further financial benefit from this enterprise.

The Copyright Office takes a dim view of the filing of false claims. Accordingly, the Office requests that the Court impose a sentence commensurate with the gravity of Mr. Galaz's crime.

Respectfully submitted,

*Marybeth Peters*

Marybeth Peters
Register of Copyrights

Exhibit A
Page 6